Milord A. Keshishian, SBN 197835
milord@milordlaw.com
Stephanie V. Trice, SBN 324944
stephanie@milordlaw.com
MILORD & ASSOCIATES, P.C.
10517 West Pico Boulevard
Los Angeles, California 90064
Tel: (310) 226-7878

Attorneys for Plaintiff
Beyond Blond Productions, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEYOND BLOND PRODUCTIONS, LLC, a California limited liability company;<br><br>Plaintiff,<br><br>vs.<br><br>EDWARD HELDMAN III, an individual; COMEDYMX, INC., a Nevada corporation; COMEDYMX, LLC, a Delaware limited liability company; and DOES 1-10;<br><br>Defendants. | Case No.: 2:20-cv-5581<br><br>**COMPLAINT FOR:**<br><br>1. **17 U.S.C. § 512(f) Misrepresentation**<br>2. **Declaration of Copyright Invalidity, Unenforceability, and Non-Infringement**<br>3. **Trademark Invalidity, Unenforceability, and Non-Infringement**<br>4. **Tortious Interference With Existing & Prospective Economic Advantage**<br>5. **Trade Libel/Product Disparagement**<br>6. **Section 17200 Unfair Competition**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff BEYOND BLOND PRODUCTIONS, LLC ("Beyond Blond") sues Defendants EDWARD HELDMAN III ("Heldman"), COMEDYMX, INC. ("Com-Inc."), and COMEDYMX, LLC ("Com-LLC"), collectively referred to as "ComedyMX," and DOES 1-10 and alleges:

## INTRODUCTION

ComedyMX has a history of issuing bad-faith Digital Millennium Copyright Act takedown notices over cartoon classics, works that are in the public domain, and sham intellectual property rights it does not possess. ComedyMX has previously been sued in this District for similar bad-faith takedown notices, and has even been sued for copyright infringement. Despite its unclean hands, ComedyMX has also sued other third-parties for issuing takedown notices against ComedyMX's distribution of public domain works. During the COVID-19 pandemic while consumers were sheltering at home and viewing Beyond Blond's compilation of public domain cartoon classics, ComedyMX devised another bad-faith DMCA takedown scheme to usurp Beyond Blond's viewers by forcing Amazon to disable six of Beyond Blond's videos. When called to task to prove ComedyMX's prenotification investigation of copyright infringement to support good faith takedown notices, ComedyMX's counsel could only muster up a false claim that its copyright registration covered its generic "cartoon classics" words displayed on the screen, which it also claimed to be its trademark despite being merely generic. Because Amazon refused to enable Beyond Blond's video content based on its counternotification, it is left with no other choice but seek the Court's intervention to prevent ComedyMX's knowingly material misrepresentation.

## THE PARTIES

1.     Plaintiff Beyond Blond is a California limited liability company having a principal place of business in Los Angeles, California.

2.     Defendant Heldman is an Arizona resident, but does business in and with the State of California and, in particular, within this District, including filing a currently

pending lawsuit against his former counsel for malpractice in an underlying case where Heldman was countersued for filing a false DMCA takedown notice, styled *Heldman v. Zerner*, Case 2:19-cv-08185-GW-PJW (C.D. Cal. 2019).  Heldman contracted with counsel in Pasadena, California to represent him, Com-Inc., and Com-LLC in the *Zerner* matter, subjecting himself to jurisdiction in this District.  At all relevant times, Heldman was the active driving force behind the improper conduct of the ComedyMX entities, including filing the false takedown notices.  In filing the false takedown notices, Heldman agreed to be bound by the jurisdiction of the district courts where Beyond Blond resides, i.e., the Central District of California, and he was the key decision maker in filing the false takedown notices in bad faith as they were objectively and subjectively baseless.  Heldman was also the driving force and decision maker in retaining Los Angeles, California based counsel to file, in this District, a false DMCA takedown claim in the case styled *ComedyMX LLC v. Broadbandtv Corp., et al.*, Case 2:20-cv-00260-SVW-JPR (C.D. Cal. 2020).  Heldman was also the driving force and decision maker in retaining Los Angeles, California based counsel to file, in this District, a trademark infringement claim in the case styled *ComedyMX LLC v. Weliver*, Case 2:20-cv-01947-RGK-PVC (C.D. Cal. 2020).

3.     Defendant Com-LLC is a Delaware limited liability company, and lists its principal place of business at a P.O. Box in New Jersey.  At all relevant times, Com-LLC conducted business in California and, specifically, in this District, including by being a party to all the litigation recited above.  In filing the false takedown notices, Com-LLC agreed to be bound by the jurisdiction of the district courts where Beyond Blond resides, i.e., the Central District of California.

4.     Defendant Com-Inc. is a Nevada corporation, and lists its principal place of business in Carson City, Nevada.  Heldman is listed as Com-Inc.'s president, secretary, treasurer, and director and is the active force behind all of its improper conduct.  At all relevant times, Com-Inc. conducted business in California and, specifically, in this District, including by being a party to the currently pending *Zerner* litigation recited

above and *ComedyMX, Inc. v. St. Clair, et al.*, Case 2:16-03249-AGR (C.D. Cal. 2016). In filing the false takedown notices, Com-Inc. agreed to be bound by the jurisdiction of the district courts where Beyond Blond resides, i.e. the Central District of California.

5.      Defendants DOES 1 through 10, inclusive, are other parties not yet identified who have contributed to the false DMCA takedown notice filings, or have engaged in one or more of the wrongful acts alleged herein.  The true names, whether corporate, individual, or otherwise of DOES 1 through 10, inclusive, are presently unknown to Beyond Blond, and therefore, are being sued by such fictitious names, and Beyond Blond will seek leave to amend this Complaint to include their true names and capacities when the same have been ascertained.

6.      Beyond Blond is informed and believes, and on that basis alleges, that at all times relevant to this action, each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment, and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged herein with full knowledge of each and every violation of Beyond Blond's rights and the damages to Beyond Blond proximately caused thereby.

## JURISDICTION AND VENUE

7.      This action arises under the laws of the United States and the Copyright Act of 1976 (17 U.S.C. § 101, *et seq.*) and Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125, and as such, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.  The state law claims arise from the same common nucleus of operative facts and transactions, such that they form part of the same case or controversy and Beyond Blond would ordinarily be expected to try them all in a single judicial proceeding.  Accordingly, this Court may exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.      The Court has personal jurisdiction because Defendants engaged in multiple

intentional acts of filing false DMCA takedown notices and engaging in Lanham Act unfair competition expressly aimed at California and this District, which have caused harm to Beyond Blond in this District.  Defendants, by filing false DMCA takedown notices, agreed to in the district courts of Beyond Blond's principal place of business. Defendants were fully aware of Beyond Blond's rights and its principal place of business within this District.  Defendants are subject to jurisdiction in this District because they transact substantial business in California and this District, including:

(a)    marketing, selling, and delivering a substantial amount of the videos at issue in the state of California and this District, thereby purposefully engaging businesses and consumers in California for their own commercial gain;

(b)    engaging distributors and retailers in this District to distribute the videos, including YouTube, and using Defendants' websites to direct consumers to distributors located in this District; and

(c)    engaging counsel in this District to file numerous lawsuits in this District.

9.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391(b), (c), and 1400(a) because Defendants conduct regular business in this District by advertising, selling, promoting, and directing videos to consumers in this District, filing and maintaining numerous lawsuits in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS COMMON TO ALL COUNTS

10.    Beyond Blond is a woman owned small business that nimbly and efficiently helps content owners leverage their music and video catalogs into new and different product offerings for digital distribution.

11.    Beyond Blond uses its established relationships with top digital providers, like Amazon and Google, to help conform the works to platform specifications, as well as

create targeting metadata and artwork for effective conversion rates.

12.   Beyond Blond, for its own business, also acquires and purchases public domain videos and cartoon classics, makes compilations of same, and lists the works on video streaming platforms, including Amazon.com's Prime Video Direct.

13.   Beginning in late 2016 and/or early 2017, Beyond Blond acquired BetaSP tapes and other sources of cartoon classics, including Bugs Bunny, Popeye, and Mighty Mouse, and began digitizing and editing the same with a deck captured to a computer. The cartoon classics compilations were then formatted to comply with Amazon Video streaming specifications.  The cartoon classics compilations where then uploaded to Amazon Video on the corresponding dates:

| | |
|---|---|
| Cartoon Classics #1 | February 17, 2017 |
| Cartoon Classics #2 | February 28, 2017 |
| Cartoon Classics #3 | April 14, 2017 |
| Cartoon Classics #4 | August 18, 2017 |
| Cartoon Classics #5 | February 16, 2018 |
| Cartoon Classics #6 | May 17, 2019 |

14.   Beyond Blond's quality digitization became popular with viewers seeking to watch cartoon classics and Beyond Blond began receiving substantial revenue from Amazon for customers streaming, renting, and purchasing videos.

15.   Defendants are Beyond Blond's direct competitors who create compilations of cartoon classics and stream the same on video hosting platforms.  Defendants' videos are of inferior quality and have received negative reviews, whereas Beyond Blond's videos have received positive reviews.

16.   Defendants, to unfairly compete with Beyond Blond, issued six baseless copyright takedown notices to Amazon to remove Beyond Blond's six cartoon classics videos on March 20, 2020.  Amazon took down the six videos, issuing the following case numbers:

| | |
|---|---|
| Cartoon Classics #1 | 6890999701 |
| Cartoon Classics #2 | 6891043541 |
| Cartoon Classics #3 | 6891006641 |
| Cartoon Classics #4 | 6890994521 |
| Cartoon Classics #5 | 6891030291 |
| Cartoon Classics #6 | 6891048961 |

17.     The takedown notices were objectively and subjectively meritless and in bad faith because the cartoon classics videos are in the public domain and could not have infringed Defendants' copyrights as they were independently compiled.

18.     On March 20, 2020, Beyond Blond contacted Defendant Heldman at the email address provided by Amazon as the intellectual property claimant.  Instead of responding, Defendant Heldman forwarded the email to his counsel who asked for Beyond Blond's counsel to contact him.

19.     On March 26, 2020, Beyond Blond's counsel responded to Defendants' counsel asking for the copyright registrations and deposit materials forming the basis of the takedown notices, in addition to Defendants' "pre-notification investigation report identifying (1) the protectible elements in [Defendants'] work, and (2) the substantial similarity in the protectible elements of the copyrighted works and [Beyond Blond's] accused works."  A true and correct copy of the correspondence is attached as Exhibit A.

20.     On March 26, 2020, Defendants' counsel responded, claiming that Defendants are the owner of a cartoon classics logo design trademark application, Application Serial No. 88/789,484 ("the '484 Application") filed six weeks earlier, and its logo design was also registered as a copyright under U.S. Copyright Reg. No. PAu003798644 ("the '644 Registration").  Counsel also threatened copyright and trademark infringement litigation if Beyond Blond did not cease use of the term cartoon classics.  A true and correct copy of the correspondence is attached as Exhibit B.

21.     On March 27, 2020, Beyond Blond's counsel responded pointing out the

meritless nature of Defendants' infringement position.

    (a)    Beyond Blond informed Defendants that the '644 Registration is a performing arts copyright registration and only covers "(1) musical works, including any accompanying words; (2) dramatic works, including any accompanying music; (3) pantomimes and choreographic works; and (4) motion pictures and other audiovisual works."  It does not cover logos, and the purported cartoon classics logo was not listed as a protectible element on the '644 Registration.  Because Defendants failed to provide the registration certificate and the deposit material, Beyond Blond had to rely on the Copyright Office's search result page.

    (b)    Defendants were also provided with legal authority establishing that the words "cartoon classics" are generic and not protectable under copyright or trademark law and the addition of the eyes was not original and a mere copy of preexisting clip art.  Further, Defendants were informed that, assuming arguendo, they were entitled to copyright protection, the scope of copyright would be thin and weak and there is no similarity between Defendants' and Beyond Blond's use of cartoon classics in a generic manner.



**DEFENDANTS**



**BEYOND BLOND**

    (c)    Defendants were also informed that the term "cartoon classics" is generic and unprotectable as a trademark because it is used in the industry to refer to cartoon classics, a genre of older cartoons.

Defendants were also provided examples of the generic use of cartoon classics in the industry.  A true and correct copy of the March 27, 2020 correspondence is attached hereto as Exhibit C.

22.     Despite the evidence provided proving the baseless nature of Defendants' infringement claims to Amazon, Defendants refused to retract their takedown notices to Amazon.

23.     Beyond Blond filed counternotices requesting its six baselessly accused videos be restored, but Amazon refused to do so unless Defendants withdrew their notices of infringement.

24.     Beyond Blond spent almost two months in Amazon Legal purgatory appealing Amazon's position and finally received a response to its appeal on May 19, 2020 that the six videos would not be restored unless Defendant Heldman withdrew the six infringement notices or without a court order.  Defendants have refused to withdraw the baseless infringement takedown notices.

25.     Defendant Com-LLC filed the '484 Application at the USPTO on February 7, 2020 and was forced to disclaim any "EXCLUSIVE RIGHT TO USE 'CARTOON CLASSICS' APART FROM THE MARK **AS SHOWN**." (emphasis added).  Thus, Defendants were fully aware that they did not have the right to exclude others from using the generic cartoon classics term on competing products.

26.     Further Defendants also conceded that the "mark consists of the words 'CARTOON CLASSICS!' Appearing (sic) in a ***stylized font*** where the 'O's in 'CARTOON' appear as two stylized eyes."  (emphasis added).  Based on all these disclaimers, Defendants knew the generic term "cartoon classics" and the modification of the letter "O"s were not protectible, yet baselessly issued a takedown notice which is objectively and subjectively baseless because – assuming any protectible mark – the designs look nothing alike and confusion is unlikely.

27.     Amazon's "Report Infringement" page, https://www.amazon.com/report/infringement, allows the rights owner to select only one

type of intellectual property as the basis of infringement, even though an accused party may be infringing more than a single form of intellectual property.  Here, although Defendants are accusing Beyond Blond of infringing both its copyright and trademark, Amazon only allows one type of intellectual property to be selected.  On information and belief, Defendants may have selected "trademark concerns," despite lacking federal trademark registration, which would not have allowed them to also include the copyright infringement claim that counsel threatened involving the '644 Registration.  Thus, the "Report Infringement" claim to Amazon implicitly included a claim of infringement of the '644 Registration.

28.     Defendants' misconduct in their false and baseless takedown notices are a direct and proximate cause of damage to Beyond Blond because Amazon relied on those bad faith notices and disabled Beyond Blond's six videos and, on information and belief, issued strikes against Beyond Blond's account.  Thus, Beyond Blond has lost its revenue stream from viewers who rented, purchased, and/or streamed the six videos on Amazon's Video Direct platform.

29.     As a result, Beyond Blond faces devastating, irreparable harm to its business due to Defendants' misconduct.  There is an actual and justiciable controversy between the parties concerning infringement by Beyond Blond's use of the generic cartoon classics term on its videos of cartoon classics and Defendants' purported trademark rights and copyrights.

**FIRST CAUSE OF ACTION**

Misrepresentation of Copyright Claims Under the DMCA

(17 U.S.C. § 512(f))

30.     Plaintiff hereby reallege and incorporate the allegations in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31.     Section 512(f) of the Copyright Act provides, in relevant part, that "any person who knowingly materially misrepresents under this section . . . that material or

activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . ."

32.    Defendants' DMCA notices, submitted by Defendant Heldman, are false and were false at the time they were filed because Defendants falsely represented that they owned copyrights in the unprotectable logo for the generic cartoon classics term and knew that Beyond Blond could not be infringing the '644 Registration, which does not and cannot protect a logo.  Defendant Heldman, on behalf of all Defendants, represented in the DMCA notices, under penalty of perjury, that Beyond Blond's six videos infringed upon the work covered by Defendants' '644 Registration.

33.    On March 27, 2020, Defendants received notice in writing that the DMCA notices were false and in bad faith and that Defendants held no copyrights in the logo and that the copyrights were not and could not be infringed.  See Exhibit C.  Defendants were requested to withdraw the baseless and meritless notices of infringement to Amazon, but Defendants refused.

34.    At the time Defendants filed the DMCA takedown notices with Amazon.com, and certainly after they received the May 27, 2020 correspondence attached as Exhibit C, they could not have reasonably believed that they had any copyrights to the logo or that Beyond Blond infringed.

35.    By filing the DMCA notices with and refusing to withdraw the same from Amazon.com, Defendants knowingly misrepresented that Beyond Blond was infringing, in violation of 17 USC section 512(f), entitling Beyond Blond to damages for the removal or disabling of access to its six cartoon classics videos.

36.    As a result of Defendants' wrongful conduct as herein alleged, Beyond Blond has been damaged in a sum, the exact amount of which is unknown to Beyond at this time, and Beyond Blond will provide same during the pendency of this matter when ascertained.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### SECOND CAUSE OF ACTION

(Declaration of Copyright Invalidity, Unenforceability and Non-Infringement)

37.    Plaintiff hereby reallege and incorporate the allegations in paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38.    There is an actual, substantial, and continuing justiciable controversy between Beyond Blond and Defendants regarding the validity, enforceability, and non-infringement of the '644 Registration and Beyond Blond's ability to use and display the six videos along with the term cartoon classics.

39.    Beyond Blond alleges that the '644 Registration is invalid and unenforceable because the copyright does not protect the cartoons classic logo, consists of common geometric shapes, unprotectable eyes from the public domain, and is not copyrightable subject matter.  And Beyond Blond is entitled to a judicial declaration that the '644 Registration is invalid, unenforceable, and not infringed.

40.    Beyond Blond is entitled to a judicial determination that Beyond Blond's six videos and use of cartoon classics to make available for distribution and viewing of its accused six videos and the depiction cartoon classics has not infringed, does not infringe, and would not infringe, either directly or indirectly, any valid, enforceable and/or protectable expression in the '644 Registration because (1) Counter-Defendant has not alleged access; (2) the '644 Registration does not cover a logo; (3) common geometric shapes, and eyes from the public domain and pre-existing third party artwork are not protectable; and (4) Beyond Blond's accused six videos and cartoon classics depiction are neither substantially similar nor virtually identical to protectable elements in the '644 Registration.  Thus, Defendants allegations of copyright infringement are a sham and in bad faith.

### THIRD CAUSE OF ACTION

(Trademark Non-Infringement, Invalidity and Unenforceability)

41.    Plaintiff hereby reallege and incorporate the allegations in paragraphs 1-29

and 37-40 of this Complaint as if fully set forth herein.

42.     Beyond Blond seeks declaratory relief from this Court to prevent Defendants from hindering competition by monopolizing commonplace and generic term and generic design for their own exclusive use.

43.     Not only did Defendants concede that cartoon classics is generic in their trademark application by disclaiming the exclusive right to use same apart from the specific font design, but their own listings for the cartoon classics on Defendants' YouTube.com channel establishes the term is generic:



44.     Looney Tunes is a registered trademark of Warner Bros. Entertainment, Inc. and "cartoon classics" is the generic term for Warner's older cartoons that are mostly in the public domain.  Defendants' use of "cartoon classics" is thus generic for the genre of cartoons it has compiled when generically identifying the video as "Looney Tunes Cartoon Classics."

45.     Long prior to Defendants illicit attempt to monopolize the generic term "cartoon classics" with a generic design, many third parties adopted and used that term alone or with cartoonish designs in a generic sense.  Because the dominant portion of

Defendants use of cartoon classics is the term itself, the entirety of its use is generic.

46.     Defendants accused Beyond Blond of infringing Defendants' alleged common law trademark rights in the term cartoon classics plus design based on Beyond Blond's use of the generic term cartoon classics in conjunction with common, generic and widespread use of cartoon eyes.

47.     Defendants use of the generic term cartoon classics in combination with cartoon eyes for the "oo" letters in cartoon does not constitute trademark use and is not a source identifier.

48.     As can be discerned from the screenshot above, Defendants use the related 8thmandvd.com® trademark to indicate source and the cartoon classics generic term to inform viewers of the type of video shown, i.e., cartoon classics.  8thManDVD.com was registered with the USPTO on October 11, 2016 and awarded Registration No. 5,059,117.  8thManDVD.com owns Defendants' YouTube channel where competing videos are streamed, and the registered trademark 8thManDVD.com is shown in conjunction with Defendants' term "cartoon classics" plus designs.  Because the 8thManDVD.com registered trademark is related to the pending '484 Application, Beyond Blond requests that this Court order the Defendants to abandon the '484 Application and any and all applications to register any mark with the words cartoon classics, or anything confusingly similar thereto per 15 U.S.C. §1119, which provides courts jurisdiction to "otherwise rectify the register with respect to the registrations of any party to the action."

49.     Therefore, Defendants cannot claim exclusive rights to use the generic term cartoon classics alone or in combination with a simple design that is ubiquitous and generic in the industry.

50.     Because of the generic nature of the "cartoon classics" term and generic design, and the different styles in which the generic terms are presented and used, Beyond Blond does not and cannot infringe Defendants' nonexistent trademark rights in the generic cartoon classics term.

51.     Beyond Blond will be damaged by Defendants' continued assertion that it has trademark rights in the generic term cartoon classics plus design unless the Court declares it has no such rights and orders Defendants to abandon the '484 Application.

52.     Beyond Blond has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

**Tortious Interference with Existing and Prospective Economic Advantage**

53.     Beyond Blond restates and incorporates by reference the allegations in paragraphs 1-29 and 37-52 above.

54.     Beyond Blond has valid business expectancies with its e-commerce partners, customers and prospective customers of its products and services.  Beyond Blond had a reasonable probability of realizing financial benefit from those customers and prospective customers.

55.     Defendants were aware of Beyond Blond's business expectancies with its e-commerce partners, customers and prospective customers.

56.     Defendants have undertaken intentional acts and misrepresentations itemized above to disrupt the economic relationships between Beyond Blond and its e-commerce partners, customers and prospective customers.  All of the foregoing actions by Defendants were undertaken with the intention of causing third parties to do business with Defendants rather than with Beyond Blond, to induce said customers and prospective customers to purchase and watch Defendants' videos instead of purchasing and watching Beyond Blond's, thereby depriving Beyond Blond of the profits and other benefits to be derived from sales of its falsely accused six videos, and otherwise causing injury to Beyond Blond and its business.

57.     At the time Defendants made these material misrepresentations and continued to maintain false and baseless claims of infringement, they knew or should have known the statements were false and the actions groundless because (a) Defendants had no copyrights in the generic word cartoon classics and even adding geometric shapes

into the "oo" letters in cartoon would not qualify for copyright protection as a matter of law; and (b) Defendants did not have any trademark rights in the generic term cartoon classics because of their own generic use thereof, the parties use of the generic term was not similar, and the addition of ubiquitous geometric eye shapes in place of the "oo" letters in cartoon was neither protectable nor a source indicator.

58.    By sending baseless takedown notices to Amazon, Defendants intentionally disrupted Beyond Blond's established, economic business relationship and prospective business relationships and advantage.  Defendants' expressions were intended to discourage e-commerce partners from selling and existing and prospective customers from buying Beyond Blond's products, causing business reputational and economic harm to Beyond Blond.

59.    Beyond Blond is entitled to an award of damages, including an amount up to three times the amount found as actual damages, attorney fees and costs as a result of Defendants' unlawful actions.  Moreover, Beyond Blond will continue to suffer damages as a result of Defendants' unlawful actions unless they, their officers, agents, servants, employees, attorneys and all persons acting in concert with Defendants are preliminarily and permanently enjoined from continuing such actions and appropriate corrective advertising is awarded.

60.    Defendants' conduct is and has been willful, wanton, malicious, oppressive, and in conscious disregard of Beyond Blond's rights, justifying the imposition of punitive and exemplary damages under California Civil Code §3294.

61.    Defendants threaten to, and unless restrained will disrupt further business with e-commerce partners, existing and potential customers and distributors of Beyond Blond's products, and/or will further interfere with other existing and potential customers and distributors of Beyond Blond's products, for which damages would not afford adequate relief, in that they would not completely compensate Beyond Blond for the injury to Beyond Blond's business reputation and good will.

**FIFTH CAUSE OF ACTION**

**Trade Libel/Product Disparagement**

**(Against All Defendants)**

62.     Beyond Blond restates and incorporates by reference the allegations in paragraphs 1-29 and 37-61 above.

63.     Beyond Blond's products previously enjoyed a good reputation in the community.  Those products were disparaged by Defendants' false assertions stated above when Defendants knew that they did not have any copyrights or any trademark rights in the generic term cartoon classics and such misrepresentations were in bad faith.

64.     Defendants' assertions were published willfully, without justification, and without privilege to at least one third party through written and verbal communications.

65.     Defendants made these statements with knowledge of the statements' falsity or with reckless disregard of the statements' truth or falsity.

66.     A reasonable person would have foreseen that, under the circumstances, Defendants' statements would harm Beyond Blond and damage its relationships with e-commerce partners, existing and prospective customers, and Defendants made these statements with the purpose of inducing e-commerce partners, existing and prospective customers of Beyond Blond to refrain from purchasing, renting, and streaming Beyond Blond's products and doing business with Beyond Blond.

67.     Defendants' false and disparaging statements directly and proximately caused e-commerce partners, existing and prospective customers of Beyond Blond to cease conducting business with Beyond Blond, not to purchase, lease, and stream Beyond Blond's products, and Beyond Blond has thereby suffered damages in an amount to be proven at trial.

68.     Defendant's publications are ongoing, in that they continue to be published to Beyond Blond's e-commerce partners, customers and prospective customers because Defendants will not withdraw their baseless takedown notices that were issued in bad faith.

69.     Money damages will not make Beyond Blond whole for the injury occasioned by these continuing statements.  Unless enjoined by this Court, these false and damaging statements will continue.

70.     Defendants' conduct is and has been willful, wanton, malicious, oppressive, and in conscious disregard of Beyond Blond rights, justifying the imposition of punitive and exemplary damages under California Civil Code §3294.

## SIXTH CAUSE OF ACTION

### Statutory Unfair Competition, Cal. Bus. & Prof. Code § 17200

71.     Beyond Blond restates and incorporates by reference the allegations in paragraphs 1-29 and 37-70 above.

72.     Defendants' distribution and dissemination of communications with literally false and misleading statements to Beyond Blond's e-commerce partners, customers and prospective customers constitutes unlawful and unfair business acts and unfair competition in violation of § 17200 et. seq. of the California Business and Professions Code.  Defendants' communications in bad faith have also resulted in a loss of Beyond Blond's professional services as customers are not exposed to Beyond Blond's work and cannot engage Beyond Blond to provide its services.

104.   Beyond Blond is informed and believes and thereon alleges that unless restrained by this Court, Defendants will continue the aforesaid unlawful and unfair business acts, and pecuniary compensation will not afford Beyond Blond adequate relief for the damage to its business in the public perception.

## PRAYER FOR RELIEF

WHEREFORE Beyond Blond prays for judgment against Defendants, and each of them, as follows:

A.     That judgment be entered in favor of Beyond Blond and against Defendants;

B.     The Court enter a declaratory judgment that:

      i.    the '644 Registration is invalid and unenforceable, the copyright is not infringed, and the notice was sent in bad faith under 17 U.S.C. § 512(f);

      ii.    the '644 Registration does not and cannot provide copyright registration for Defendants' logo, shown above, as a matter of law;

      iii.    Defendants have no right to claim exclusive trademark rights in the term "cartoon classics" either alone or in combination with a cartoon design substituted for the "oo" letters in cartoon;

      iv.    Defendants have no right to interfere with Beyond Blond's use of the generic cartoon classics term, including as shown in the design format above;

      v.    Beyond Blond has not infringed any of Defendants' trademark rights;

C.    That Defendant be ordered to abandon the '484 Application;

D.    That Defendant be ordered to immediately withdraw the takedown notices sent to Amazon and be enjoined from issuing any takedown notices to Beyond Blond's e-commerce partners alleging infringement of Defendants' purported trademark rights in the term cartoon classics and any copyright registrations purportedly covering same;

E.    That on the Cal. Bus. & Prof. Code §§ 17200 causes of action, for an order requiring the Defendants to restore any money or property that Defendants may have acquired as a result of any act or practice constituting unfair competition, and an order requiring Defendants to disgorge any profits that they acquired as a result of their unfair competition;

F.    That on the trade libel/product disparagement cause of action, Beyond Blond be awarded damages, punitive damages, and injunctive relief barring further trade libel and product disparagement;

G.    That on the tortious interference with prospective economic advantage cause of action, Beyond Blond be awarded actual damages according to proof at trial, punitive damages, and injunctive relief;

H.    For an order finding that an award of pre and post-judgment interest is necessary to fully compensate Beyond Blond for the damage it has sustained;

I.    For an order awarding to Beyond Blond all of its costs, including its attorneys' fees incurred in prosecuting this action, including under 15 U.S.C. § 1117 and 17 U.S.C. §512(f);

J.    For an order requiring Defendants to provide notice to the public and to all customers and others with whom Defendants have been in contact, by means of letter or advertisement, as appropriate, notifying such persons of this lawsuit, and the injunctive decree rendered hereunder, and paying for corrective advertisements;

K.    For an order awarding to Beyond such other and further relief as the Court may deem just and proper.

Dated:  June 23, 2020                              Respectfully submitted,

**MILORD & ASSOCIATES, P.C.**

/s/ Milord A. Keshishian
Milord A. Keshishian
Attorneys for Plaintiff
Beyond Blond Productions, LLC

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, through their attorneys of record, hereby demand trial by Jury.

Dated:  June 23, 2020

Respectfully submitted,

**MILORD & ASSOCIATES, P.C.**

<u>/s/ Milord A. Keshishian</u>
Milord A. Keshishian
Attorneys for Plaintiff
Beyond Blond Productions, LLC

EXHIBIT A

**From:** Milord Keshishian <milord@milordlaw.com>
**Sent:** Thursday, March 26, 2020 11:29 AM
**To:** Ben T. Lila <blila@mandourlaw.com>
**Cc:** Stephanie Trice <stephanie@milordlaw.com>; Lorie Mallari <lorie@milordlaw.com>; Kimberly Wolfe <kimberly@milordlaw.com>
**Subject:** ComedyMX Takedown Notices re Michelle Justice
**Importance:** High

Dear Mr. Lila:

Your correspondence below has been forwarded to us for response.  We are counsel for Ms. Justice, please forward all further communications to our attention.  Ms. Justice takes all allegations of valid copyright infringement seriously and to evaluate the same. please provide by **5:00 p.m. on March 27, 2020** the copyright registrations and deposit material for the following takedown notices sent by your client to Amazon:

| | |
|---|---|
| CASE 6890999701 | Cartoon Classics - Vol. 1: 25 Favorite Cartoons - 3 Hours |
| CASE 6891043541 | Cartoon Classics - Vol. 2: 25 Favorite Cartoons - 3 Hours |
| CASE 6891006641 | Cartoon Classics - Vol. 3: 25 Favorite Cartoons - 3 Hours |
| CASE 6890994521 | Cartoon Classics - Vol. 4: 25 Favorite Cartoons - 3 Hours |
| CASE 6891030291 | Cartoon Classics - Vol. 5: 25 Favorite Cartoons - 3 Hours |
| CASE 6891048961 | Cartoon Classics - Vol. 6: 25 Favorite Cartoons - 3 Hours |

In addition, by **5:00 p.m. on March 27, 2020**, we expect to receive your client's pre-notification investigation report identifying (1) the protectible elements in your client's work, and (2) the substantial similarity in the protectible elements of the copyrighted works and our client's accused works.

If we do not receive the requested information by said time and date, that will confirm your client's lack of due diligence before issuing take down notice and entitle us to file counter-notifications with Amazon.  We look forward to immediate receipt of the requested information, which your client must have assembled prior to issuing the takedown notices.

If you should have any additional questions or comments, please contact us.

Sincerely,

Milord A. Keshishian

Milord & Associates, PC
Patent, Trademark & Copyright Law
10517 West Pico Blvd.
Los Angeles, CA 90064
Tel  310-226-7878
www.milordlaw.com

***********************CONFIDENTIALITY NOTICE************************

The information contained in this electronic message and attachments, if any, are intended solely for the personal and confidential use of the designated recipient. This message may be an attorney-client communication and as such is privileged and confidential. No waiver of this privilege is intended by the inadvertent transmittal of such communication to any persons or company other than the intended recipient. If the reader of this message is not the intended recipient, please take notice that you have received this document in error, and that any review, dissemination, replication, or distribution of this message is strictly prohibited. If you have received this communication in error, please permanently delete this message and attachments, if any.

EXHIBIT B

**From:** Ben T. Lila <blila@mandourlaw.com>
**Sent:** Thursday, March 26, 2020 7:10 PM
**To:** Milord Keshishian <milord@milordlaw.com>
**Cc:** Stephanie Trice <stephanie@milordlaw.com>; Lorie Mallari <lorie@milordlaw.com>; Kimberly Wolfe <kimberly@milordlaw.com>; Joseph A. Mandour <jmandour@mandourlaw.com>
**Subject:** RE: BB Productions Infringement (ComedyMX/6249.02-006)

Milord:

We represent ComedyMX LLC ("ComedyMX"), owner of U.S. Trademark Serial No. 88/789,484 for CARTOON CLASSICS! (+Design).  ComedyMX is also the owner of all copyright rights associated with its original stylized logo design that is the subject of multiple copyright registrations, including U.S. Copyright No.  PAu003798644.  *See* attached.  ComedyMX has used the trademark and copyright logo design continuously in interstate commerce on certain goods and services including, but not limited to, entertainment services.

We have observed that BB Productions is using our client's CARTOON CLASSICS trademark and logo design without authorization to promote similar goods and services on the website Amazon.com.  BB Production's use of CARTOON CLASSICS is likely to cause confusion in violation of trademark and other unfair competition laws including, but not limited to, the Lanham Act (15 U.S.C. § 1051, *et seq.*).  BB Production's use is likely to lead the public to believe that its products and services are licensed by, sponsored by, or otherwise affiliated with ComedyMX which is not the case.  Also, the unauthorized copying of our client's logo design constitutes copyright infringement under the Copyright Act (17 U.S.C. § 101, *et. seq.*).

We demand that BB Productions immediately cease and desist all use of CARTOON CLASSICS and our client's copyrighted design, including without limitation, on Amazon.com, in videos and on any other website.  Should BB Productions not immediately address our client's concerns, we will pursue all available remedies.  Please contact me in writing by **April 6, 2020** to confirm that your client has complied with the above.

The demands asserted herein are with full reservation of all rights and remedies that our client may possess including, but not limited to, past and continuing profits, actual damages, treble damages, attorneys' fees, claims of dilution and the right to injunction.


Best Regards,
Ben


Ben T. Lila, Esq.
Mandour & Associates, APC - Intellectual Property Law
12121 Wilshire Boulevard, Suite 810
Los Angeles, California 90025
T: 310-656-3900
**********************************************************************
CONFIDENTIAL COMMUNICATION: This message is for the sole use of the
intended recipient and may contain confidential and privileged information. Any unauthorized
review or distribution is prohibited. If you are not the intended recipient, please contact the sender
by reply email and destroy all copies of the original message.
**********************************************************************

**Cartoon Classics!**

EXHIBIT C

**From:** Milord Keshishian
**Sent:** Friday, March 27, 2020 7:48 PM
**To:** Ben T. Lila <blila@mandourlaw.com>
**Cc:** Stephanie Trice <stephanie@milordlaw.com>; Lorie Mallari <lorie@milordlaw.com>; Kimberly Wolfe <kimberly@milordlaw.com>; Joseph A. Mandour <jmandour@mandourlaw.com>
**Subject:** RE: BB Productions Infringement (ComedyMX/6249.02-006)

Dear Ben:

While I appreciate your quick response, the failure to provide our requested information confirms that ComedyMX's takedown notices are in bad faith.  I understand that you were probably handcuffed because ComedyMX simply lacks copyright protection to issue the takedown notices, but would have appreciated your forthright offer to immediately withdraw the baseless Digital Millennium Copyright Act takedown notices.  Please be advised of your Rule 11 obligations moving forward in this matter.

My correspondence specifically requested ComedyMX's pre-notification investigation analysis identifying the copyright registrations and (1) the protectible elements in your client's work, and (2) the substantial similarity in the protectible elements of the copyrighted works and our client's accused works.  Although, your correspondence references out of hand U.S. Copyright registration No. PAu003798644, ComedyMX failed to provide the deposit material as requested, let alone identify the protectible elements and the alleged substantial similarity therewith.  Instead, we are delivered a misrepresentation that the "Cartoon Classics" logo is copyrighted in the '644 registration.  As you should be aware, a performing arts copyright registration only covers "(1) musical works, including any accompanying words; (2) dramatic works, including any accompanying music; (3) pantomimes and choreographic works; and (4) motion pictures and other audiovisual works."  Form PA.  The Copyright Office printout, attached hereto, for the '644 registration confirms that the logo is not listed as a protectible element, nor could it as a matter of law.

The use of the '644 performing arts registration to claim copyright registration ownership in the generic term "Cartoon Classics" is meritless because short phrases are not copyrightable.  37 C.F.R. 202.1(a); *Bernal v. Paradigm Talent & Literary Agency,* 788 F.Supp.2d 1043, 1072 (C.D.Cal.2010) (short phrases such as "I miss you," "He's so funny," "Stay away from this neighborhood," and "Mmm. That's it" were "ordinary, common expressions that [were] not copyrightable"); see also *Ets–Hokin v. Skyy Spirits, Inc.,* 225 F.3d 1068, 1081 (9th Cir.2000) ("Brand names, trade names, slogans, and other short phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed").  Thus, even inserting pupils and irises into the double "o" letters in cartoons does not rise to the level of protectible expression to be copyrightable because eyes appear in nature and are not afforded copyright protection.  "These ideas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them." *Satava v. Lowry,* 323 F.3d 805, 811 (9th Cir. 2003).  It is axiomatic that designs that are "standard, stock, or common to a particular subject matter or medium are not protectable under copyright

law." *Id.,* at 810; *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) ("No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from the idea of such dolls."). Further, any copyrighted expression must be "original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). "Original, as the term is used in copyright, means only that the work was independently created by the author ... and that it possesses at least some minimal degree of creativity." *Id*. Here, a simple search of stock cartoon eyes immediately defeat ComedyMX's claim of originality, even assuming arguendo the eyes are protectible, because ComedyMX merely copied preexisting clip art.



ComedyMX even copied the shape and placement of the eyebrows. Assuming ComedyMX did actually have a copyright registration and did not copy the eyes from preexisting clip art, ComedyMX's expression of the generic term "Cartoon Classics" is not substantially similar to the accused expression, as demonstrated by the side by side comparison below:



But ComedyMX has a greater burden here than substantial similarity because eyes occur in nature and any infringement, assuming ComedyMX has any protectible rights, must be proven by verbatim copying. Where a design incorporates stock or commonplace images, it is entitled to, at most, a very "thin" or "weak" copyright – assuming ComedyMX is entitled to any protection. *Satava,* 323 F.3d at 812 ("thin" copyright in jellyfish design); *Franklin Mint Corp. v. Nat'l Wildlife Art Exchange,* 575 F.2d 62, 65 (3d Cir. 1978) ("weak" copyright in common elements of bird design). In those circumstances, only virtually identical copying is prohibited. *Satava,* 323 F.3d at 812 ("thin copyright... protects against only virtually identical copying"); *see also Sid & Marty Krofft Television Prods., Inc. v. McDonalds Corp.,* 562 F.2d 1157,

1168 (9th Cir. 1977) (where limited number of ways to express concept, "there will be protection against nothing other than identical copying of the work").

Thus, the only conclusion that can be drawn based on ComdyMX's lack of copyright registration in its generic logo is the DMCA copyright takedown notices were in bad faith and must immediately be withdrawn.

Your reference to the trademark application ComedyMX filed last month, which is not yet registered, does not save ComedyMX from its bad faith DMCA copyright takedown notice.  Amazon does not allow takedown notices for unregistered trademarks, thus there was no trademark notification filed by ComedyMX.  Moreover, the term "cartoon classics" is generic and refers to classic cartoons and was used as such by Walt Disney Cartoon Classics series from 1983 to 1986.  It has also been used by numerous others, predating ComedyMX's alleged first use date of 2015.  See September 11, 2008 Wired article titled "10 Cartoon Classics to Share with your Kids" as merely one example of many.  "A generic term cannot be registered as a trademark because such a term cannot function as an indication of source." *BellSouth Corp. v. DataNational Corp.*, 60 F.3d 1565, 1569 (Fed. Cir. 1995).  Thus, despite the addition of the eyes, the mark is generic and the nascent application will not mature to registration because even if the U.S. Patent and Trademark Office does not refuse registration, our client will certainly file an opposition thereto.

Despite your valiant efforts to protect ComedyMX, our detailed analysis provides authority and proof of ComedyMX's bad faith.  But in an effort to resolve this matter expeditiously, ComedyMX will agree to immediately withdraw its DMCA notification of infringement issued to Amazon, in return our client agrees to not depiction of eyes in the term "cartoon."  Please advise by no later than **5:00 p.m. on March 30, 2020** if ComedyMX has immediately withdrawn the six takedown notices issued to Amazon.

Sincerely,

Milord A. Keshishian

Milord & Associates, PC
Patent, Trademark & Copyright Law
10517 West Pico Blvd.
Los Angeles, CA 90064
Tel  (310) 226-7878
Fax (310) 226-7879
www.milordlaw.com

************************CONFIDENTIALITY NOTICE************************

The information contained in this electronic message and attachments, if any, are intended solely for the personal and confidential use of the designated recipient. This message may be an attorney-client communication and as such is privileged and confidential. No waiver of this privilege is intended by the inadvertent transmittal of such communication to any persons or company other than the intended recipient. If the reader of this message is not the intended recipient, please take notice that you have received this document in error, and that any review, dissemination, replication, or distribution of this

message is strictly prohibited. If you have received this communication in error, please permanently delete this message and attachments, if any.



**Copyright**
United States Copyright Office

<span style="color:darkred">**Library buildings are closed to the public until further notice, but the U.S.
Copyright Office Catalog is available. More.**</span>

| Help | Search | History | Titles | Start Over |

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = PAu003798644
Search Results: Displaying 1 of 1 entries

◄ previous    next ►

Labeled View

***8thManDVD Copyright Video 1, et al.***

| | |
|---:|:---|
| **Type of Work:** | Motion Picture |
| **Registration Number / Date:** | PAu003798644 / 2016-01-26 |
| **Application Title:** | 8thManDVD Copyright Video 1, et al. |
| **Title:** | 8thManDVD Copyright Video 1, et al. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | ComedyMX LLC. Address: P.O. Box 896, Pine Brook, NJ, 07058, United States. |
| **Date of Creation:** | 2016 |
| **Authorship on Application:** | ComedyMX LLC, employer for hire; Citizenship: United States. Authorship: entire motion picture. |
| **Rights and Permissions:** | ComedyMX LLC, P.O. Box 896, Pine Brook, NJ, 07058, United States |
| **Copyright Note:** | Basis for Registration: Unpublished collection. |
| **Contents:** | 8thManDVD Copyright Video 1. |
| | 8thManDVD Copyright Video 2. |
| | 8thManDVD Copyright Video 3. |
| | 8thManDVD Copyright Video 4. |
| | 8thManDVD Copyright Video 5. |
| | 8thManDVD Copyright Video 6. |
| | 8thManDVD Intro Video 1. |
| | 8thManDVD Intro Video 2. |
| | 8thManDVD Intro Video 3. |
| | 8thManDVD Intro Video 4. |
| | 8thManDVD Intro Video 5. |
| | 8thManDVD Intro Video 6. |
| | 8thManDVD Title Card 1. |
| | 8thManDVD Title Card 2. |
| | 8thManDVD Title Card 3. |

8thManDVD Title Card 4.

8thManDVD Title Card 5.

8thManDVD Title Card 6.

8thManDVD Title Card 7.

8thManDVD Title Card 8.

8thManDVD Title Card 9.

8thManDVD Title Card 10.

8thManDVD Title Card 11.

8thManDVD Title Card 12.

**Names:** ComedyMX LLC



| Save, Print and Email (**Help Page**) | | |
|---|---|---|
| Select Download Format | Full Record | Format for Print/Save |
| Enter your email address: | | Email |

Help   Search   History   Titles   Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page