1  Milord A. Keshishian, SBN 197835
   milord@milordlaw.com
2  Stephanie V. Trice, SBN 324944
   stephanie@milordlaw.com
3  MILORD & ASSOCIATES, P.C.
   10517 West Pico Boulevard
4  Los Angeles, California 90064
   Tel: (310) 226-7878
5
6  Attorneys for Plaintiff
   Beyond Blond Productions, LLC
7

8            **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10

11 BEYOND BLOND PRODUCTIONS, LLC,   CASE NO.:  2:20-cv-05581 DSF (GJSx)
   a California limited liability company;

12
                                    **BEYOND BLOND'S NOTICE OF**
13         Plaintiff,               **MOTION AND MOTION FOR**
                                    **PRELIMINARY INJUNCTION**
14         vs.

15                                  Honorable Dale S. Fischer
   EDWARD HELDMAN III, an individual;
16 COMEDYMX, INC., a Nevada corporation;   Date: August 10, 2020
   COMEDYMX, LLC, a Delaware limited   Time: 1:30 p.m.
17 liability company; and DOES 1-10;   Courtroom: 7D

18
           Defendants.
19

20

21

22

23

24

25

26

27

28

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

**TO THE HONORABLE COURT, DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on August 10, 2020 at 1:30 p.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at the First Street Courthouse, 350 W. 1st Street, Courtroom 7D, Los Angeles, CA 90012, before Honorable Dale S. Fisher, Plaintiff Beyond Blond, Inc. ("Beyond Blond") will and hereby moves the Court for a preliminary injunction against Edward Heldman III, ComedyMX, Inc., and ComedyMX, LLC (collectively "Defendants"), ordering Defendants to withdraw six takedown notices issued to Amazon, Inc. accusing Beyond Blond's six cartoon classics videos of infringement and to enjoin Defendants from issuing any further takedown notices for Beyond Blond's six cartoon classics videos.

This motion is based on the accompanying Memorandum of Points and Authorities, accompanying declarations of Michelle Justice and Milord A. Keshishian, Request for Judicial Notice, and all pleadings and papers file, and upon such other matters as may be presented to the Court at the time of the hearing.

Preliminary injunction motions are excluded from Local Rule 7-3's meet and confer requirement.


Dated:  July 13, 2020                    Respectfully submitted,

                                         MILORD & ASSOCIATES, P.C.

                                         /s/ Milord A. Keshishian
                                         Milord A. Keshishian
                                         Attorneys for Plaintiff
                                         BEYOND BLOND PRODUCTIONS, LLC

# TABLE OF CONTENTS

I.    **Introduction** ........................................................................................... 1

II.   **Statement of Facts** ................................................................................ 2

III.  **Preliminary Injunction Standard** ....................................................... 5

IV.   **The Facts and Law Clearly Favor Beyond Blond's Copyright Invalidity, Noninfringement, and Section 512(f) Claims** .................. 7

  A.  Defendants Are Unlikely to Succeed on the Merits of the Copyright Infringement Claim Because They Don't Own A Valid Copyright Registration in the Generic Cartoon Classics Design They Copied ....................................... 7

  B.  Assuming Copyright Registration is Valid, Defendants are Unlikely to Show Copying and Infringement ................................. 11

V.    **The Facts and the Law Clearly Favor Beyond Blond's Trademark Invalidity and Noninfringement Claim** ............................................ 12

  A.  Defendants' Cartoon Classics Term is Generic and Unprotectable and Defendants Cannot Succeed on the Merits ...................................... 13

    1.  Defendants' Use of the Generic Freestyle Script Font and Copying of Public Domain Clip Art Eyes Cannot Establish Rights in a Design Mark ............................................................... 14

  B.  Defendants' Cannot Meet Their Burden of Proving Trademark Infringement or Unfair Competition Under Section 43(a) ................ 16

    1.  Trademark Infringement ............................................................ 16

        a. Strength of the Mark ............................................................. 17

        b. Similarity of the Marks ......................................................... 17

        c. Proximity of the Services ...................................................... 19

        d. Actual Confusion .................................................................. 19

        e. Marketing Channels ............................................................. 20

        f. Defendants' Intent ................................................................ 20

        g. Consumer's Degree of Care .................................................. 20

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

h.  Likelihood of Expansion into the Area of Goods ............................ 21

i.  Balance of Likelihood of Confusion Factors ................................... 21

C.  Likelihood of Irreparable Harm ........................................................... 21

D.  Balance of Equities Favors Beyond Blond and Issuing an Injunction ............. 23

E.  Public Interest ........................................................................................... 23

F.  No Bond Is Warranted Because Defendants' Own No Copyright or Trademark Rights For Beyond Blond to Infringe ................................................... 24

VI.  **Conclusion** ................................................................................. 24

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

BEYOND BLOND'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Cases**                                                                Page(s)

*A & M Records v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir.2001) .................................................................. 7

*Abbott Labs. v. Sandoz, Inc.*,
  544 F.3d 1341 (Fed. Cir. 2008) ............................................................. 22

*Aliotti v. R. Dakin & Co.*,
  831 F.2d 898 (9th Cir. 1987) ................................................................. 10

*Amaretto Ranch Breedables v. Ozimals, Inc.*,
  2010 WL 5387774 (N.D. Cal. Dec. 21, 2010) ....................................... 23

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
  790 F. Supp. 2d 1024 (N.D. Cal. 2011) .......................................... 6, 22

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ................................................................. 17

*Amstar Corp. v. Domino's Pizza, Inc.*,
  615 F.2d 252 (5th Cir. 1980) ................................................................. 20

*Apple Computer Corp. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994) ........................................................... 11, 12

*Carter-Wallace, Inc. v. Procter & Gamble Co.*,
  434 F.2d 794 (9th Cir. 1970) ................................................................. 16

*CG Roxane LLC v. Fiji Water Co. LLC*,
  569 F. Supp. 2d 1019 (N.D. Cal. 2008) ................................................. 13

*Coca-Cola Co v. Overland Inc.*,
  692 F.2d 506 (9th Cir. 1969) ................................................................. 17

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  321 F.3d 878 (9th Cir. 2003) ................................................................. 24

*Design Furnishings, Inc. v. Zen Path, LLC*, No. 10-2765, 2010 U.S. Dist. LEXIS 135819
  (E.D. Cal. Dec. 23, 2010) ......................................................................... 6

*Design Furnishings, Inc. v. Zen Path, LLC*,
  2010 WL 5418893 (E.D. Cal. Dec. 23, 2010) ....................................... 24

*E & J Gallo Winery v. Gallo Cattle Co.*,
  967 F.2d 1280 (9th Cir. 1992) ............................................................... 17

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ................................................................................. 7

*Electropix v. Liberty Livewire Corp.*,
  178 F. Supp. 2d 1125 (CD. Cal. 2001) .................................................. 18

*Eltra Corp. v. Ringer*,
  579 F.2d 294 (4th Cir. 1978) ................................................................... 9

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

-v-

*Engelbrecht v. JP Morgan Chase Bank, N.A.*,
   2012 WL 10423236 (C.D. Cal. Feb. 23, 2012) .............................5, 6, 21, 22

*Ets-Hokin v. Skyy Spirits, Inc.*,
   225 F.3d 1068 (9th Cir. 2000) .................................................................8, 9

*Ets-Hokin v. Skyy Spirits, Inc.*,
   323 F.3d 763 (9th Cir. 2003) ....................................................................11

*Express, LLC v. Fetish Group, Inc.*,
   424 F. Supp. 2d 1211 (C.D. Cal. 2006) .......................................................8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) .....................................................................7, 8, 10

*Filipino Yellow Pages v. Asian Journal Publications, Inc.*,
   198 F.3d 1143 (9th Cir. 1999) ...................................................................13

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com LLC*,
   139 S. Ct. 881 (2019) ...............................................................................8

*Freedom Holdings, Inc. v. Spitzer*,
   408 F.3d 112 (2d Cir. 2005) ......................................................................21

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) ......................................................................6

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) .............................................................17, 18

*Green Bullion Fin. Servs., LLC v. Money4Gold Holdings, Inc.*,
   639 F. Supp. 2d 1356 (S.D. Fla. 2009) ........................................................9

*Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*,
   736 F.3d 1239 (9th Cir. 2013) ...................................................................16

*Hill v. Xyquad, Inc.*,
   939 F.2d 627 (8th Cir. 1991) .....................................................................21

*Homer Laughlin China Co. v. Oman*,
   1991 WL 154540 (D.D.C. 1991) .................................................................9

*iCall, Inc. v. Tribair, Inc.*,
   2012 U.S. Dist. LEXIS 166695, (N.D. Cal. Nov. 21, 2012)...........................18

*In re Cordua Restaurants, Inc.*,
   823 F.3d 594 (Fed. Cir. 2016) ...................................................................15

*In Re Cosmetic Factory, Inc.*,
   220 U.S.P.Q. 1103 (TTAB 1983) ...............................................................14

*In Re Grande Cheese Co.*,
   2 U.S.P.Q.2d 1447 (TTAB 1986).................................................................15

*Indigo Room, Inc. v. City of Fort Myers*,
   710 F.3d 1294 (11th Cir. 2013) ...................................................................7

*Instant Media, Inc. v. Microsoft Corp.*,
   2007 U.S. Dist. LEXIS 61443, (N.D. Cal. Aug. 13, 2007) .............................20

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

-vi-

*John Muller & Co., Inc. v. N.Y. ArrowsSoccer Team, Inc.*,
 802 F.2d 989 (8th Cir. 1986) ........................................................................9
*King Taco Rest. v. Camacho*,
 2012 WL 12861184 (C.D. Cal. Aug. 9, 2012) ...................................19, 20
*Lenz v. Universal Music Corp.*,
 572 F. Supp. 2d 1150 (N.D. Cal. 2008) ......................................................24
*Living Ctr. of So. Cal., Inc. v. Maxwell–Jolly*,
 572 F.3d 644 (9th Cir. 2009) ......................................................................23
*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
 571 F.3d 873 (9th Cir. 2009) ........................................................................6
*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
 638 F.3d 1137 (9th Cir. 2011) ...............................................................20, 21
*Osmose, Inc. v. Viance*, LLC,
 612 F.3d 1298 (11th Cir. 2010) ..................................................................22
*Perfect 10, Inc. v. Amazon.com, Inc.*,
 508 F.3d 1146 (9th Cir.2007) .................................................................7, 12
*Playmakers, LLC v. ESPN, Inc.*,
 297 F. Supp. 2d 1277 (W.D. Wash. 2003) ..................................................17
*Polymer Technologies, Inc. v. Bridwell*,
 103 F.3d 970 (Fed. Cir. 1996) ....................................................................22
*Retail Servs., Inc. v. Freebies Publ'g*,
 364 F.3d 535 (4th Cir. 2004) ......................................................................13
*Rudolph Int'l, Inc. v. Realys, Inc.*,
 482 F.3d 1195 (9th Cir. 2007) ....................................................................12
*Satava v. Lowry*,
 323 F.3d 805 (9th Cir. 2003) ................................................................10, 11
*Settling Devotional Claimants v. Copyright Royalty Board*,
 797 F.3d 1106 (D.C. Cir. 2015) ...................................................................9
*Small Bus. Assistance Corp. v. Clear Channel Broad., Inc.*,
 210 F.3d 278 (6th Cir. 2000) ......................................................................19
*Soc'y of Fin. Examiners v. National Ass'n of Certified Fraud Examiners*,
 41 F.3d 223 (5th Cir. 1995) ........................................................................19
*Star Industries v. Bacardi & Co.*,
 412 F.3d 373 (2d Cir. 2005) .......................................................................14
*Stulbarg Int'l Sales Co. v. Brush & Co.*,
 240 F.3d 832 (9th Cir. 2001) ................................................................14, 21
*Surfvivor Media, Inc. v. Survivor Productions*,
 406 F.3d 625 (9th Cir. 2005) ......................................................................19
*All. for the Wild Rockies v. Cottrell*,
 632 F.3d 1127 (9th Cir. 2011) .................................................................5, 6

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

-vii-

*Tie Tech, Inc. v. Kinedyne Corp.*,
 296 F.3d 778 (9th Cir. 2002) ......................................................................... 13
*Time Inc. v. Petersen Pub. Co., LLC*,
 976 F. Supp. 263 (S.D.N.Y. 1997) .............................................................. 18
*Two Pesos, Inc. v. Taco Cabana, Inc.*,
 505 U.S. 763 (1992) ..................................................................................... 17
*Univ. of Texas v. Camenisch*,
 451 U.S. 390 (1981) ....................................................................................... 6
*Walczak v. EPL Prolong, Inc.*,
 198 F.3d 725 (9th Cir. 1999) ....................................................................... 24
*Walker v. Klein*,
 No. 97-1322-IEG (CGA), 1998 U.S. Dist. LEXIS 14397 (S.D. Cal. Apr. 3, 1998) ...... 18
*Wiley v. Am. Greetings Corp.*,
 762 F.2d 139 (1st Cir. 1985) ....................................................................... 14
*Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*,
 419 F.3d 925 (9th Cir. 2005) ....................................................................... 12

**Statutes**
17 U.S.C. § 411 .................................................................................................... 8
17 U.S.C. § 512 .................................................................................................... 7
17 U.S.C. § 512(f) ................................................................................................ 7

**Rules**
Fed. R. Civ. P. 65 ................................................................................................. 6

**Regulations**
37 C.F.R. § 201.10(b) .......................................................................................... 8
37 C.F.R. § 202.1(a) ............................................................................................ 8
37 C.F.R. § 202.1(e) ............................................................................................ 9
37 C.F.R. § 202.5 ................................................................................................. 9
37 C.F.R. § 202.3(b)(1)(ii) .................................................................................. 8

**Other Authorities**
J. Thomas McCarthy, 2 McCarthy on Trademarks & Unfair Competition (5th ed. Nov.
 2019) ................................................................................................... 17, 18

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

BEYOND BLOND'S MOTION FOR PRELIMINARY INJUNCTION

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

## I.    Introduction

It is irrefutable that the term "cartoon classics" is generic for older cartoons and cannot function as a trademark.  It is also black letter law that copyright doesn't protect short phrases or simple logos like cartoon classics, especially when it uses public domain off-the-shelf font and copied clipart eyes.  Defendants are readily familiar with the law – having been sued for infringement and issuing bad-faith takedown notices, yet issued six bad-faith takedown notices to Amazon to remove Beyond Blond's six cartoon classics videos.  Beyond Blond requested Defendants' pre-notification investigation evidence and legal basis for issuing the notices, Defendants did not have any.  Instead, Defendants baselessly claimed they owned a ***pending*** trademark application for a logo of "cartoon classics" in off-the-shelf font (as shown, below right) plus copied public domain clipart eyes (as shown, right), and baselessly claimed that their Performing Arts copyright registration covered the logo design – which is unprotectible as a matter of law and not covered by a PA registration.



Assuming Defendants can prove ownership, a simple comparison of the parties' two generic uses establishes the lack of substantial similarity or confusing similarity:



**BEYOND BLOND**                    **DEFENDANTS**

Beyond Blond's counsel sent Defendants' counsel a detailed legal analysis with facts establishing the unprotectible generic nature of the "cartoon classics" term under trademark law and copyright law, including the fact that a Performing Arts copyright registration would not extend to the logo.  Despite the law and evidence, Defendants refused to withdraw the six bad-faith takedown notices and threatened a lawsuit.

Amazon refused to restore the videos in response to Beyond Blond's counternotifications unless Defendants withdrew the infringement notifications. Defendants' refusal has forced Beyond Blond to seek the Court's intervention ordering Defendants to withdraw their meritless takedown notices. Because Beyond Blond can show that all the factors clearly favor its position, the Court should issue a preliminary injunction ordering withdrawal of the takedown notices and restoring all the videos, including their rankings, reviews, and commentary.

## II.    Statement of Facts

Beyond Blond is a woman owned small business that nimbly and efficiently helps content owners leverage their music and video catalogs into new and different product offerings for digital distribution. Declaration of Michelle Justice ("Justice Decl.") ¶ 2. Beyond Blond uses its established relationships with top digital providers, like Amazon and Google, to help conform the works to platform specifications, as well as create targeting metadata and artwork for effective conversion rates. *Id.* at ¶ 3. Beyond Blond, for its own business, also acquires and purchases public domain videos and cartoon classics, makes compilations of same, and lists the works on video streaming platforms, including Amazon.com's Prime Video Direct ("Amazon Video"). *Id.* at ¶ 4.

Beginning in late 2016 and/or early 2017, Beyond Blond acquired BetaSP tapes and other cartoon classics in the public domain, including Bugs Bunny, Popeye, and Mighty Mouse, and began digitizing and editing them with a deck captured to a computer. *Id.* at ¶ 5. The cartoon classics compilations were formatted to comply with Amazon Video streaming specifications. *Id.* at ¶ 6. The cartoon classics compilations were then uploaded to Amazon Video on the following corresponding dates:

| | |
|---|---|
| Cartoon Classics #1 | February 17, 2017 |
| Cartoon Classics #2 | February 28, 2017 |
| Cartoon Classics #3 | April 14, 2017 |
| Cartoon Classics #4 | August 18, 2017 |
| Cartoon Classics #5 | February 16, 2018 |
| Cartoon Classics #6 | May 17, 2019 |

*Id.* at ¶ 7 (collectively "Six Videos"). Beyond Blond's quality digitization received

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

excellent reviews by viewers and Beyond Blond received substantial revenue from Amazon via customers streaming, renting, and purchasing videos. *Id*. at ¶ 8.  Beyond Blond's first compilation had 4.5 stars on Amazon from viewers before it was improperly taken down. *Id*. at ¶ 9.  Beyond Blond was unaware of Defendants' videos before receiving notice from Amazon on March 20, 2020 that Defendants issued these six takedown notices:

| | |
|---|---|
| Cartoon Classics #1 | 6890999701 |
| Cartoon Classics #2 | 6891043541 |
| Cartoon Classics #3 | 6891006641 |
| Cartoon Classics #4 | 6890994521 |
| Cartoon Classics #5 | 6891030291 |
| Cartoon Classics #6 | 6891048961 |

Beyond Blond investigated Defendants' cartoon classics videos on YouTube and saw no similarities other than the generic compilation of public domain cartoon classics, but did notice the negative reviews because of the low quality of Defendants' videos. Id. at ¶ 11. On March 20, Beyond Blond emailed Defendant Heldman at the email address provided by Amazon, but received a response from Defendants' counsel asking for Beyond Blond's counsel to contact him.  Id. at ¶ 12.

On March 26, Beyond Blond's counsel responded to Defendants' counsel asking for the copyright registrations and deposit materials forming the basis of the takedown notices, along with Defendants' "pre-notification investigation report identifying (1) the protectible elements in [Defendants'] work, and (2) the substantial similarity in the protectible elements of the copyrighted works and [Beyond Blond's] accused works." Declaration of Milord A. Keshishian ("Keshishian Decl."), ¶ 4, Exh. A.  Defendants' counsel responded the same day, claiming that Defendants own a cartoon classics logo design in pending trademark Application Serial No. 88/789,484 ("the '484 Application") filed six weeks earlier, and its logo design was also registered as a copyright under U.S. Copyright Reg. No. PAu003798644 ("the '644 Registration"). *Id*. at ¶ 5, Exh. B. Counsel also threatened copyright and trademark infringement litigation if Beyond Blond

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

BEYOND BLOND'S MOTION FOR PRELIMINARY INJUNCTION

did not cease use of the term cartoon classics.  *Id*.

The next day, Beyond Blond's counsel responded pointing out the meritless nature of Defendants' copyright infringement allegations because (1) as a Performing Arts registration, the '644 Registration could not and does not cover a logo watermark on a video, (2) provided evidence that the alleged logo was copied from preexisting public domain clipart and font, and (3) the parties' designs were so dissimilar that a claim of infringement would fail – assuming Defendants could prove ownership of proper registration.  *Id*. at ¶ 6, Exh. C.  Beyond Blond's counsel also provided evidence that the trademark infringement claim was baseless because the term "cartoon classics" is generic for a genre of older cartoons and it could not function as a trademark.  *Id*.  Beyond Blond requested Defendants withdraw the takedown notices, and even offered to cease use of the eyes.  *Id*.

Despite the evidence and the law eviscerating Defendants' baseless position, Defendants refused to withdraw their takedown notices or threats of copyright and trademark litigation, forcing Beyond Blond to file counternotifications with Amazon on March 31, 2020.  Justice Decl. ¶ 13.  Amazon refused to restore the videos without Defendants' withdrawal of the infringement notifications and Beyond Blond appealed, spending a full two months in Amazon Legal purgatory until receiving a final refusal on May 19, 2020 to its appeals.  Justice Decl. at ¶ 14-15; Keshishian Decl. at ¶ 7.

Defendants refusal to withdraw the takedown notice is incomprehensible because it merely copied the public domain off-the-shelf Freestyle Script font and substituted the double "o"s with public domain clipart.  Justice Decl. at ¶¶ 16-19. Exhs. 6-7.  Thus, the stylization is insufficient to convert a generic term into a protectible source indicator, especially in view of numerous third-party uses of similar elements to identify cartoon classics generically long before Defendants' adoption thereof.  Keshishian Decl. ¶ 8.  Also, numerous third parties used "cartoon classics" generically long before Defendants.  *Id*. at 10, Exhs. D-H.  Indeed, Defendants themselves use "cartoon classics" generically on the video listings.  *Id*. at ¶ 11, Exh. I.  Moreover, the Trademark Examining Attorney

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

forced Defendants to disclaim any "exclusive right to use 'cartoon classics" apart from the mark as shown," thus Defendants conceded that the term is generic.  Request For Judicial Notice ("RFJN") ¶1, Exh. 1.  Defendants concealed, however, from the Examining Attorney their blatant copying of off-the-shelf Freestyle Font and clipart eyes, whereby the stylization could not convey a separate commercial impression in the industry.  Justice Decl. ¶ 20, Keshishian Decl. 9-11.

Defendants' takedown notices are thus baseless and issued in bad faith to prevent lawful competition.  Defendants' abuse of Amazons' takedown procedure merely requires clicks on a form and provides an end run around Rule 65 to receive an indefinite extrajudicial injunction without showing likelihood of success on the merits, irreparable harm, balancing of the equities, or the public interest.  The safe harbor provisions are intended to protect online service providers from legitimate claims of infringement, not to allow Defendants to abuse the system to obtain de facto injunctions without a judicial determination or due process.  Based on the evidence and law presented, Defendants cannot carry their burden of establishing copyright and trademark ownership or infringement and the extrajudicial injunction cannot stand.  The Court should not condone Defendants' repeat behavior and should reverse the irreparable harm they have caused Beyond Blond.

## III.    Preliminary Injunction Standard

A preliminary injunction should be entered where plaintiff establishes: (1) likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) the balance of equities is in plaintiff's favor; and (4) the public interest would not be disserved by the issuance of a preliminary injunction.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  "Although a plaintiff seeking a preliminary injunction must make a showing on each factor, the Ninth Circuit employs a 'version of the sliding scale' approach where 'a stronger showing of one element may offset a weaker showing of another.'"  *Engelbrecht v. JP Morgan Chase Bank, N.A.,* No. CV 11-6809 DSF DTBX, 2012 WL 10423236, at *1 (C.D. Cal. Feb. 23, 2012) (quoting *Alliance*, 632. F.3d at

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

1131-35).  "Under this approach, a court may issue a preliminary injunction where there are serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff ..., so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  (quoting *Alliance*, 632. F.3d at 1135).  When a party seeks "[a] mandatory injunction [that] orders a responsible party to take action," then "[i]n general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citations and internal quotation marks omitted).

Courts have broad authority to tailor injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure, including ordering retraction of takedown notices via preliminary injunctions.  *See, e.g.*, *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1026 (N.D. Cal. 2011) (noting that the court had previously "issued a preliminary injunction requiring [defendant] to withdraw all DMCA Takedown Notifications…"); *Design Furnishings, Inc. v. Zen Path, LLC*, No. 10-2765, 2010 U.S. Dist. LEXIS 135819, at *31 (E.D. Cal. Dec. 23, 2010) (granting preliminary injunction barring defendant from issuing additional takedown notices with eBay).

Beyond Blond is entitled to a preliminary injunction ordering Defendants to withdraw their takedown notices to Amazon because Defendants cannot show ownership of any valid copyrights or trademarks over the generic cartoon classics term or the generic design, and Beyond Blond can show that the "law and facts clearly favor [its] position, not simply that [it] is likely to succeed."  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).  However, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."  *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Ordinarily, the copyright owner is the party seeking an injunction preventing infringement.  Here, however, Defendants obtained a *de facto* injunction by simply

checking boxes on Amazon's takedown notice procedure and effectively enjoined – in bad faith – the distribution and display of Beyond Blond's Six Videos. In *eBay*, the Supreme Court rejected an automatic injunction to a patent plaintiff and imported the four factor test identified above from the copyright realm to overturn an injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006). Defendants' abuse of Amazon's takedown notice system end-runs the traditional requirements for an injunction and effectively impounds virtual content without having to prove the four factor test for an injunction to issue. Because Defendants cannot meet their burdens of proving copyright and trademark ownership or infringement, an injunction should issue restoring the status quo by ordering Defendants to withdraw their meritless takedown notices issued to Amazon for Beyond Blond's Six Videos.

## IV.    The Facts and Law Clearly Favor Beyond Blond's Copyright Invalidity, Noninfringement, and Section 512(f) Claims

Forcing Beyond Blond to seek an injunction to restore the Six Videos does not shift Defendants' burden of proving copyright ownership and infringement. *A & M Records v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir.2001). "[T]he burdens at the preliminary injunction stage track the burdens at trial." *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1158 (9th Cir.2007).[1] The Defendants issued DMCA takedown notices to Amazon under 17 U.S.C. § 512, and Beyond Blond filed counternotifications and seeks damages under Section 512(f) because the notices were in bad faith.

### A.    Defendants Are Unlikely to Succeed on the Merits of the Copyright Infringement Claim Because They Don't Own A Valid Copyright Registration in the Generic Cartoon Classics Design They Copied

To present a *prima facie* case of direct copyright infringement, a copyright plaintiff must show: "(1) ownership of a valid copyright, and (2) copying [by Defendants] of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv.*

---

[1] Beyond Blond can seek a preliminary injunction select, and not all, causes of action. *Indigo Room, Inc. v. City of Fort Myers*, 710 F.3d 1294, 1298 (11th Cir. 2013).

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

*Co.*, 499 U.S. 340, 361 (1991).  To be protectable, each constituent element must possess "more than a *de minimis* quantum of creativity." *Id*. at 363.  Defendants' "Performing Arts" or "PA" copyright registration cannot extend to their purported trademark in the "cartoon classics" term and copied eye design.  37 CFR § 202.3(b)(1)(ii) covers "PA" class of registration and provides:

> Class PA:  Works of the performing arts.  This class includes all published and unpublished works prepared for the purpose of being performed directly before an audience or indirectly by means of a device or process.  Examples: Musical works, including any accompanying words; dramatic works, including any accompanying music; pantomimes and choreographic works; and motion pictures and other audiovisual works.

Indeed, the '644 Registration does not even list the purported trademark design as protected material under the "Contents" heading, nor could it.  RFJN ¶ 2, Exh. 2.  "Why would those aspects of the claimed copyright have earned a presumption of validity if they were not represented in the registration application?"  *Express, LLC v. Fetish Group, Inc.*, 424 F. Supp. 2d 1211, 1219 (C.D. Cal. 2006).  Thus, Defendants must now prove copyright ownership in the public domain "cartoon classics" term and copied clipart eyes design, which they can't do, thus failing the ownership prong and ability to maintain a copyright infringement action.  17 U.S.C. § 411; *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com LLC*, 139 S. Ct. 881 (2019) (copyright registration required to sue).

Copyrights cannot be used to protect trademarks.  "Words and short phrases such as names, titles, and slogans" are not subject to copyright protection.  37 C.F.R. § 202.1(a).  "A claim to copyright cannot be registered in a print or label consisting solely of trademark subject matter . . . registration of a claim to copyright does not give the claimant rights available by trademark registrations at the Patent and Trademark Office." 37 C.F.R. § 201.10(b).  Copyright registration does not extend to Defendants' generic use of the cartoon classics term and public domain clipart eye design.  "Brand names, trade names, slogans, and other short phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

1068, 1081 n. 14 (9th Cir. 2000) (citations omitted).

In *Green Bullion*, the court refused to grant preliminary injunction for copyright infringement of a website because even though the defendants "obviously pilfer[ed] the words and stylized font and colors of the 'Cash4Gold' mark, [ ] these items alone cannot make out a claim for copyright infringement," i.e., no copyright protection in logo design. *Green Bullion Fin. Servs., LLC v. Money4Gold Holdings, Inc.*, 639 F. Supp. 2d 1356, 1361–62 (S.D. Fla. 2009).

The Copyright Office Review Board[2] refused registration of Major League Soccer's stylized Los Angeles Football Club design artwork, where the "A" in the logo included a modified wing replacing the horizontal bar as depicted to the right, because 37 C.F.R. § 202.1(e) prohibits registration of "familiar symbols or designs," "mere variations of typographic ornamentation, lettering, or coloring," and "[t]ypeface as typeface."  RFJN ¶ 3, Exh. 3, citing *Eltra Corp. v. Ringer,* 579 F.2d 294, 298 (4th Cir. 1978) ("typeface has never been considered entitled to copyright").  Although not controlling, a court's review of decisions by the Review Board is "highly deferential."  *Settling Devotional Claimants v. Copyright Royalty Board,* 797 F.3d 1106, 1114 (D.C. Cir. 2015).  Similarly, Defendants' red typeface of "cartoon classics" is prohibited from copyright protection because it uses the public domain and unprotectable Freestyle Script typeface.  The Board also found that the angled geometric shapes depicting a wing in place of the horizontal bar in the letter "A" and "common and familiar shield design, an organization name, and letters with unprotectable ornamentation lack the requisite amount of creativity to warrant copyright protections."  RFJN ¶3, Exh. 3, citing *Homer Laughlin China Co. v. Oman*, No. 90 Civ. 3160, 1991 WL 154540 (D.D.C. 1991), and *John Muller & Co., Inc. v. N.Y. ArrowsSoccer Team, Inc.*, 802 F.2d 989 (8th Cir. 1986).  Here, Defendants' copying of the public domain clipart eyes with geometric ovals in a common cartoonish design to

---

2  If a copyright application is refused registration, reconsideration can be requested, and if the refusal is maintained, then a second reconsideration before the Copyright Office Review Board.  37 C.F.R. § 202.5.

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

replace the double "o" letters and standard typeface spelling out the public domain term "cartoon classics" lacks the requisite amount of creativity to warrant copyright protection.

Defendants' copying of public domain clip art eyes – which commonly occur in nature – in place of the double "o" letters does not make the term copyright eligible. "These ideas, first expressed by nature [e.g. eyes], are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them." *Satava v. Lowry,* 323 F.3d 805, 811 (9th Cir. 2003). Designs that are "standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." *Id.,* at 810; *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) ("No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from the idea of such dolls."). Substituting "standard, stock, or common" cartoonish eyes instead of the double "o" in "cartoon" cannot be used to prevent others from using this idea. Indeed, this concept was used by others for many years before Defendants' first use date. RFJN ¶¶ 6-13, Exh. 6-13.

Further, to be protectable, any copyrighted expression must be "original." *Feist,* 499 U.S. at 345. "Original, as the term is used in copyright, means only that the work was independently created by the author ... and that it possesses at least some minimal degree of creativity." *Id.* Here, a simple search of stock cartoon eyes immediately defeats Defendants' claim of originality because they merely copied preexisting clipart along with copying the public domain Freestyle Script font. Keshishian Decl. ¶ 14, Exh. K; Justice Decl. ¶ 19, Exh. 7. Moreover, mere depictions of eyes are not copyrightable. The Board affirmed the Registration Program's denial of copyright registration to K'NEX Ltd. Partnership Group's "Bug Eyes" depicted to the right: "a single piece of plastic molded into the shape of a pair of eyes with eyelids, a basic black pupil design, and a basic white sclera design are not individually subject to copyright protection." RFJN ¶ 4, Exh. 4. The Board held the combination of public domain elements are unprotectable because "[n]o

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

1    copyright protection may be afforded to the idea of such naturally occurring features,

2    such as eyes, or to the elements of expression that naturally follow from the idea of such

3    features."  RFJN ¶ 4, Exh. 4, citing *Satava*, 323 F.3d at 811.

4         Defendants' cartoon classics design is not entitled to copyright protection and they

5    cannot maintain an infringement action without a valid copyright registration, thereby

6    their takedown notice violated Section 512(f) because of the knowing misrepresentation

7    to Amazon that Beyond Blond's Six Videos infringed the '644 Registration."

8    **B.    Assuming Copyright Registration is Valid, Defendants are Unlikely to**

9         **Show Copying and Infringement**

10        The irrefutable dissimilarity in the expressive text, all block capital letters by

11   Beyond Blond modifying CoopFlaired font, where the term cartoon is stacked on top of

12   the term classics, and eyes modified from Shutterstock, versus capitalization of the first

13   letters only by Defendants using Freestyle Script font, where the term "cartoon classics"

14   is on the same level line, and directly copied eyes clipart, establishes Beyond Blond's

15   independent creation of its generic use of cartoon classics.  Justice Decl. ¶¶ 18-19 and 21-

16   23.  Defendants cannot own the idea of using "cartoon classics" to identify their videos as

17   cartoon classics and the generic concept of replacing the double "o" letters with eyes.

18   When the subject matter of expression is limited, as in the term cartoon classics with

19   eyes, "similarity is inevitable, given the shared concept, or idea."  *Ets-Hokin v. Skyy*

20   *Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) (photographing the same bottle led to

21   similarity given the shared concept or idea).  In such situations, the unoriginal elements –

22   Defendants off the shelf Freestyle Script font and clipart eyes – must be subtracted and

23   they are "left with only a "thin" copyright, which protects only against virtual identical

24   copying.  As the Ninth Circuit observed in Apple, "[w]hen the range of protectable

25   expression is narrow, the appropriate standard for illicit copying is virtual identity."  *Id.*

26   at 765-66 (quoting *Apple Computer Corp. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir.

27   1994)).

28        Because copyright "protection extends only to those components of a work that are

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

-11-

original to the author," Defendants' design lacks any originality because they used off-the-shelf Freestyle Script font and copied clipart eyes. *Apple Computer,* 35 F.3d at 1445. Thus, nothing in Defendants' cartoon classics term can be considered protectable elements. Given numerous third party uses of the generic cartoon classics term along with eyes substituted for the double "o" letters, Defendants do not have any credible copyrights. On Defendants' best day, therefore, the evidence suggests that they may only be able to establish entitlement to only thin copyright protection. Even if entitled to thin copyright protection, Defendants cannot credibly argue Beyond Blond's cartoon classics term is virtually identical. *Apple Computer,* 35 F.3d at 1439, 1442. Thus, assuming Defendants' cartoon classics is entitled to copyright protection, Defendants cannot show copyright infringement.

## V. The Facts and the Law Clearly Favor Beyond Blond's Trademark Invalidity and Noninfringement Claim

Defendants continue to bear the burden to show ownership of a valid and protectible unregistered mark and infringement, which they cannot do, thus an order should issue compelling withdrawal of their baseless takedown notices to Amazon. "Where, as here, an allegedly valid trademark has not been registered with the PTO, the [trademark claimant] bears the burden of persuasion that the mark is not generic." *Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1198 (9th Cir. 2007) (citation omitted); *Perfect 10, Inc.* 508 F.3d at 1158 ("[T]he burdens at the preliminary injunction stage track the burdens at trial."). Defendants can easily check boxes on Amazon's takedown form and harm Beyond Blond by falsely claiming infringement, but before this Court, Defendants cannot meet their "burden of proof as to validity and protectability of an unregistered mark," including their burden to "establish that the mark [is] not generic.". *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.,* 419 F.3d 925, 926-27 (9th Cir. 2005). Defendants cannot meet their burden because the term "cartoon classics" is generic, uses generic public domain Freestyle Script font, and public domain clipart eyes substituted for the double "o". Justice Decl. ¶¶ 18-19. Thus, the Court should grant preliminary

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

injunction ordering Defendants to withdraw their bad-faith takedown notices to Amazon for Beyond Blond's Six Videos, including restoring their rankings and customer reviews.

**A.      Defendants' Cartoon Classics Term is Generic and Unprotectable and Defendants Cannot Succeed on the Merits**

Before a party can assert a trademark infringement claim, it must first prove it has a mark.  "Validity of the trademark is a threshold question since '[a] necessary concomitant to proving infringement is, of course, having a valid trademark; there can be no infringement of an invalid mark.'"  *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1025 (N.D. Cal. 2008) (quoting *Tie Tech, Inc. v. Kinedyne Corp.,* 296 F.3d 778, 783 (9th Cir. 2002)).  To determine whether a term is generic and therefore unprotectable, the "who-are-you/what-are-you" test is used, where a valid trademark answers the first question by identifying the manufacturer/producer, whereas a generic name answers the latter because it is the common name for the product, i.e., cartoon classics for older cartoons.  *Filipino Yellow Pages v. Asian Journal Publications, Inc.,* 198 F.3d 1143, 1147 (9th Cir. 1999) ("[I]f the primary significance of the trademark is to describe the *type of product* rather than the *producer,* the trademark is a generic term and cannot be a valid trademark.") (emphasis in original).  "From a policy standpoint, of course, *if a business were permitted to appropriate a generic word as its trademark, it would be difficult for competitors to market their own brands of the same product.* Imagine being forbidden to describe a Chevrolet as a 'car' or an 'automobile' because Ford or Chrysler or Volvo had trademarked these generic words."  *Retail Servs., Inc. v. Freebies Publ'g,* 364 F.3d 535, 538 (4th Cir. 2004) (quotation marks and citation omitted).  Defendants cannot refute the law and prevent Beyond Blond's right to use the term cartoon classics to distribute, display, and sell cartoon classics.

Defendants must admit "cartoon classics" is generic for cartoon classics because they use the term generically to say "what" videos they show on YouTube, including for example, "Looney Tunes cartoon classics" and "8thManDVD cartoon classics 2016 intro."  Keshishian Decl. ¶ 11, Exh. I.  Looney Tunes and 8thManDVD are the

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

trademarks indicating source, i.e., "who," and "cartoon classics" is the generic "what." Also, numerous third parties have used the term cartoon classics in a generic manner to identify their display and distribution of cartoon classics.  Keshishian Decl. ¶ 10, Exhs. D-H.  In *Stulbarg*, the Ninth Circuit affirmed the district court's finding that the term "fire safe" is generic because third parties and trademark claimant "itself had used the term in a generic sense" to refer to a type or category of fire-resistant safes.  *Stulbarg Int'l Sales Co. v. Brush & Co.*, 240 F.3d 832, 840 (9th Cir. 2001).  Thus, it is irrefutable that "cartoon classics" is generic when used to refer to types or categories of cartoons.

1.   **Defendants' Use of the Generic Freestyle Script Font and Copying of Public Domain Clip Art Eyes Cannot Establish Rights in a Design Mark**

Defendants' use of the public domain Freestyle Script font for the generic cartoon classics term and eyes from public domain clipart fails to create a commercial impression apart from the generic term itself and remains unprotectable.  "In order for a term otherwise unregistrable to be capable of distinguishing an applicant's goods, the presentation of the term must be sufficiently striking, unique or distinctive so as to overcome its inherent incapacity and render the mark capable of serving as a source indicator."  *In Re Cosmetic Factory, Inc.*, 220 U.S.P.Q. 1103, 1103 (TTAB 1983).  In *Star Industries v. Bacardi & Co.*, the Second Circuit noted that "'[c]ommon basic shapes' or letters are, as a matter of law," cannot function as a trademark unless "the design is not commonplace but rather unique or unusual in the relevant market."  *Star Industries v. Bacardi & Co.*, 412 F.3d 373, 382 (2d Cir. 2005).  In *Wiley v. Am. Greetings Corp.*, the First Circuit determined that a red heart shape on a teddy bear was "an ordinary geometric shape" because it "carrie[d] no distinctive message of origin to the consumer, ... given the heart shape's widespread use as decoration for any number of products put out by many different companies."  *Wiley v. Am. Greetings Corp.*, 762 F.2d 139, 142 (1st Cir. 1985).  Defendants' use of off-the-shelf generic font and copying of clipart eyes used by many others disqualifies the purported logo for trademark protection, especially when

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

the dominant part is also generic for the goods and services.

Indeed, much more elaborate designs of generic words than Defendants' use of public domain fonts and eyes have been refused trademark registration because they failed to create a separate commercial impression.  In *In Re Grande Cheese Co.*, the trademark Examining Attorney refused registration of applicant's numerous stylized designs incorporating the generic terms "MOZZARELLA" and "ITALIAN CHEESES" as shown in one design to the right for use on cheese product.  *In Re Grande Cheese Co.*, 2 U.S.P.Q.2d 1447 (TTAB 1986).



The Board affirmed the Examining Attorney's refusal to register the generic terms and design because "the lettering style of 'MOZZARELLA' and 'ITALIAN CHEESES' is not inherently distinctive, such that it creates a separate commercial impression over and above that made by the generic words themselves.  "We believe that whatever impact the style of the lettering may have is lost in the significance which the 'marks' have as highly descriptive or generic notations and we believe that the 'marks,' considered in their entireties, create only a single commercial impression, that is, that of a highly descriptive or generic notation." *Id.* at 1448.

In *In re Cordua Restaurants, Inc.*, the Federal Circuit reviewed the Board's decision refusing registration of the stylized *Churrascos* term for use in connection with "Bar and restaurant services; Catering," because the term "churrascos" is generic and "refer[s] to beef or grilled meat more generally" and the term "identifies a key characteristic or feature of the restaurant services, namely, the type of restaurant." *In re Cordua Restaurants, Inc.*, 823 F.3d 594, 598 (Fed. Cir. 2016).  In affirming the Board's decision, the Federal Circuit concluded that the term was generic when applied to the restaurant services and "[t]he stylized nature of the mark cannot save it from ineligibility as generic" because the stylization did "not create a separate commercial impression over and above the made by the generic term." *Id.* at 606.

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

-15-

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

## 2. The Trademark Examiner's Decision is Undermined By Defendants' Concealment of the Generic Public Domain Font and Copying of Clipart Eyes Design

Defendant will predictably argue that the Trademark Examiner, after Defendants disclaimed and thereby admitted "classic cartoons" was generic, allowed the application to be published for opposition. The Ninth Circuit, however, determined that a Trademark Examiner's decision is entitled to little weight in court proceedings. *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794 (9th Cir. 1970). The court reasoned "[a]ny such determination made by the Patent Office under the circumstances just noted must be regarded as inconclusive since made at its lowest administrative level...The determination by the Patent Office is rendered less persuasive still by the fact that the Patent Office did not have before it the great mass of evidence which the parties have since presented to both the District Court and this court in support of their claims." *Id*. at 802. The Examiner was also misled because Defendants' withheld evidence that the stylized "cartoon classics" term consists of public domain and generic Freestyle Script font and merely copied clipart eyes. Thus, the combination cannot create a separate commercial impression and the Examiner's findings are therefore undermined and unreliable.

## B. Defendants' Cannot Meet Their Burden of Proving Trademark Infringement or Unfair Competition Under Section 43(a)

The Court should issue an injunction because Defendants are unlikely to succeed on the merits of their trademark infringement claim for an unregistered alleged mark.

### 1. Trademark Infringement

To state a claim for trademark infringement, a plaintiff must allege: (1) ownership of a valid, protectable mark; and (2) that the alleged infringer is using a confusingly similar mark. *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013). In determining likelihood of confusion, courts in this Circuit look to the *Sleekcraft* factors, which include: (1) strength of plaintiff's trademarks; (2)

proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) types of goods and consumer's degree of care; (7) defendants' intent; and (8) likelihood of expansion into the area of goods.  *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).  "This list of factors . . . is neither exhaustive nor exclusive.  Rather, the factors are intended to guide the court in assessing the basic question of likelihood of confusion."  *E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992).

As stated above, Defendants do not own a federal registration and are not entitled to a presumption of validity, instead, they must prove that their alleged mark is not generic and is protectable.  *See Coca-Cola Co v. Overland Inc.*, 692 F.2d 506, 509 (9th Cir. 1969).

### a.    Strength of the Mark

The "strength" of the trademark is evaluated in terms of its conceptual strength and commercial strength.  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000) (citation omitted).  The conceptual strength of a mark is determined on a scale from generic (afforded no protection), through descriptive (entitled to no protection absent a showing of secondary meaning) and suggestive (entitled to moderate protection), to arbitrary or fanciful (entitled to maximum protection).  *Id.*; *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  As shown above, Defendants' "cartoon classics" term and design is generic, copied from the public domain, and afforded no protection.  "The concepts of 'generic name' and 'trademark' are mutually exclusive" because a generic term "can never function as a mark to identify and distinguish the products of only one seller" and the name of a thing cannot identify a source.  J. Thomas McCarthy, *2 McCarthy on Trademarks & Unfair Competition* ("McCarthy on Trademarks") § 12:1 (5th ed. Nov. 2019).

### b.    Similarity of the Marks

Similarity of marks is the "most important factor in any likelihood of confusion analysis," as "without similarity there can be no confusion."  *Playmakers, LLC v. ESPN,*

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

*Inc.,* 297 F. Supp. 2d 1277, 1282 (W.D. Wash. 2003) aff'd, 376 F.3d 894 (9th Cir. 2004); *Electropix v. Liberty Livewire Corp.*, 178 F. Supp. 2d 1125, 1131 (CD. Cal. 2001) (similarity is a "critical" element to a finding of confusion). In evaluating the similarity between the marks, this Circuit relies upon "axioms to guide this comparison: first, the marks must be considered in their entirety and as they appear in the marketplace; second, similarity is adjudged in terms of appearance, sound, and meaning; and third, similarities are weighed more heavily than differences." *GoTo.com, Inc.*, 202 F.3d at 1206 (internal citations omitted).

Stylized unregistered marks of generic words and generic stylization are not protectable, and assuming they are protectible, they can only prevent exact copying of the stylization. "The only exclusive right from such a 'picture' registration is the use of that ***exact 'picture'*** which happens to spell out a generic name of the goods." McCarthy on Trademarks § 12:40 (emphasis added). Here, the parties' respective use of the generic "cartoon classic" term is so irrefutably dissimilar that infringement cannot be found. "But such a picture registration is not infringed by use of the exact same words in a significantly different letter style or display." McCarthy on Trademarks, § 11:30; see *Time Inc. v. Petersen Pub. Co., LLC*, 976 F. Supp. 263, 264 (S.D.N.Y. 1997) (stylized TEEN registration could not prevent un-stylized TEEN PEOPLE for same goods); *Walker v. Klein*, No. 97-1322-IEG (CGA), 1998 U.S. Dist. LEXIS 14397, *10-11 (S.D. Cal. Apr. 3, 1998) (rights in stylized EARLY LITERACY mark do not extend to others' un-stylized use). Indeed, Professor McCarthy warned against Defendants' exact misconduct and overreach because they have "an inflated notion of the scope of their exclusive rights and assert them against competitors as if they owned the generic name…" *Id*. When all generic components of Defendants "cartoon classics" design are discounted, there is nothing left to compare with Beyond Blond's use, because "as a preliminary to comparing marks in their entireties, it is not improper to discount the similarity of descriptive or generic parts of conflicting marks." *iCall, Inc. v. Tribair, Inc.*, 2012 U.S. Dist. LEXIS 166695, *22, (N.D. Cal. Nov. 21, 2012) (citation omitted). The

-18-

dissimilarity factor favors Beyond Blond because it does not use the term as a watermark on its videos, uses completely different typeface, does not use red font with the words appearing on a single line, it uses all capital letters, and does not have eyebrows over the eyes.

### c.     Proximity of the Services

The parties do operate in the entertainment industry and provide cartoon classics to viewers, but because Defendants are improperly trying to monopolize a generic term, no trier of fact would be confused by the parties' respective generic uses thereof, especially when Defendants' always use their 8thManDVD.com trademark – to indicate source – directly above the generic cartoon classics term.  Keshishian Decl. ¶ 12, Exh. I. Considering Beyond Blond's cartoon classics are available for a fee on Amazon, while Defendants freely stream their cartoon classics videos on YouTube, the services and videos are not proximal.  Thus, this factor is either neutral or weighs in favor of Beyond Blond.  *King Taco Rest. v. Camacho*, No. SACV1200933CJCANX, 2012 WL 12861184, at *2 (C.D. Cal. Aug. 9, 2012) ("'proximity of the goods factor' points heavily in favor of [accused infringer] because [the parties] operate in completely different geographic areas").

### d.     Actual Confusion

"Evidence of actual confusion by consumers is strong evidence of likelihood of confusion." *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 633 (9th Cir. 2005).  There has been no evidence of actual confusion, but any confusion is of no moment when generic marks are concerned.  "Even total confusion, however, is irrelevant if 'CFE' constitutes a 'generic' mark." *Soc'y of Fin. Examiners v. National Ass'n of Certified Fraud Examiners,* 41 F.3d 223, 225 (5th Cir. 1995); *Small Bus. Assistance Corp. v. Clear Channel Broad., Inc.,* 210 F.3d 278 (6th Cir. 2000) ("[A] trademark infringement finding thus cannot be based on the use of a generic term [] This is true even if consumers are confused by a competitor's use of a generic term").  Thus, this factor weighs in Beyond Blond's favor.

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

### e.      Marketing Channels

The parties use different marketing channels because Beyond Blond's videos are distributed for a fee through Amazon's platform, whereas Defendants offer free views on YouTube.  *King Taco Rest,* 2012 WL 12861184, at *2 (marketing channels different because parties are in different regions).  Thus, this factor weighs in Beyond Blond's favor.

### f.      Defendants' Intent

Beyond Blond was unaware of Defendants' YouTube videos, but would not want to be linked to Defendants' low-quality videos and consumer reviews.  Beyond Blond cannot have an intent to adopt a trademark that does not exist because it is merely using cartoon classics as a generic term to refer to its cartoon classics videos, just like Defendants.  *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980) ("Bad faith in the adoption and use of a trademark normally involves the imitation of packaging material, use of identical code numbers, adopting of similar distribution methods or other efforts by a party to 'pass off' its product as that of another.").  Beyond Blond's use of an irrefutably dissimilar design for its cartoon classics generic reference to its videos establishes this factor in its favor.

### g.      Consumer's Degree of Care

Consumers exercise a higher degree of care when paying for Beyond Blond's videos versus watching Defendants videos for free on YouTube and can discern between the parties' respective videos, especially when Defendants watermark their actual 8thManDVD.com trademark above the generic "cartoon classics" term.  *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1153 (9th Cir. 2011) (rejecting "that Internet users on the whole exercise a low degree of care"); *Instant Media, Inc. v. Microsoft Corp.,* 2007 U.S. Dist. LEXIS 61443, at *26-28, 43-44 (N.D. Cal. Aug. 13, 2007) (cannot presume customers use less care with free products on the Internet).  Thus, this factor also favors Beyond Blond.

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

### h.     Likelihood of Expansion into the Area of Goods

"Where two companies are direct competitors, this factor is unimportant." *Network Automation*, 638 F.3d at 1153.  Defendants' 8thManDVD.com account was created on YouTube on November 24, 2013, but they allege they first started using cartoon classics on May 18, 2015, and have not and are unlikely to expand to Amazon video.  This factor is either neutral as unimportant or supports Beyond Blond.

### i.     Balance of Likelihood of Confusion Factors

On balance, the factors weigh in favor of Beyond Blond and against a finding of likelihood of confusion.  Thus, Defendants are unlikely to succeed on their trademark infringement and unfair competition claim in their unregistered generic "cartoon classics" term.

## C.     Likelihood of Irreparable Harm

Defendants would be unable to meet the irreparable harm requirement to obtain an injunction in court, but obtained a *de facto* injunction from Amazon by simply checking boxes on a form.  Defendants' only harm, if they can prove infringement – which they cannot – would be monetary damages, which is insufficient prove irreparable harm. *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction."). Conversely, Beyond Blond's intangible injuries like reputation, advertising efforts, loss of customers, ranking and reviews, termination as a repeat offender, or goodwill can constitute irreparable harm.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 838 (9th Cir. 2001) (affirming injunctive relief to restore status quo to allow "the immediate release of its goods to avoid irreparable harm stemming from lost contracts and customers, and harm to its business reputation and goodwill.").  "When the status quo is one of business activity and the alternative of 'rest' causes irreparable harm, we have favored the activity."  *Hill v. Xyquad, Inc.*, 939 F.2d 627, 631 (8th Cir. 1991).

In *Engelbrecht*, this Court granted a preliminary injunction ordering defendant to cease negative credit reports against plaintiff as they threatened his employment and

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

possibility of obtaining alternate employment.  *Engelbrecht v. JP Morgan Chase Bank, N.A.*, No. CV 11-6809-DSF-DTBX, 2012 WL 10423236 (C.D. Cal. Feb. 23, 2012).  This Court concluded that plaintiff had established irreparable harm when the "prospect of extended unemployment – and the consequent challenge to secure day-to-day necessities such as food and shelter – far exceed a temporary, and ultimately recoverable, monetary injury, and therefore constitute irreparable harm."  *Id.* at *3.  Similarly, Beyond Blond's loss of goodwill, Amazon rankings, possible account termination, customer reviews, and lost customers during similar economic COVID-19 turmoil similarly represents irreparable harm warranting an injunction restoring the Six Videos and the status quo.  *Amaretto Ranch,* 790 F. Supp. 2d at 1026 (N.D. Cal. 2011) (noting that the court had previously "issued a preliminary injunction requiring [defendant] to withdraw all DMCA Takedown Notifications…").

A search on Amazon for "cartoon classics" results in the display of Beyond Blond's listing for Volume 1 with a notice that "This video is currently unavailable to watch in your location."  Justice Decl., ¶ 25.  Amazon's algorithm then directs the potential customer to other videos from different companies, instead of listing Beyond Blond's five other related videos.  *Id.* at 25-26.  Loss of "goodwill and market position" constitutes irreparable harm.  *Osmose, Inc. v. Viance*, LLC, 612 F.3d 1298, 1320 (11th Cir. 2010).  Beyond Blond not only lost that sale and goodwill, but also the customer's ancillary purchase of another volume of its other videos, which lost opportunities constitute irreparable harm.  *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008) ("loss of market opportunities cannot be quantified or adequately compensated, and is evidence of irreparable harm) (citing *Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996).  The six takedown notices also adversely affect Beyond Blond's standing with Amazon resulting in possible termination as a repeat infringer under its Conditions of Use: "We respond quickly to the concerns of rights owners about any alleged infringement, and we terminate repeat infringers in appropriate circumstances."  Justice Decl. ¶ 27; Keshishian Decl. ¶ 13, Exh. J.

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

Defendants are also aware that loss of rankings and reviews cause irreparable harm, because in their malpractice lawsuit against former counsel the allege he allowed YouTube to restore prior reviews and rankings of a former victim of Defendants' bad faith takedown notice.  RFJN ¶ 5, Exh. 5; Justice Decl. ¶ 28.  Thus, irreparable harm to Beyond Blond will continue without the Court's intervention ordering withdrawal of the Amazon takedown notices, while Defendants cannot prove irreparable harm because they can obtain monetary damages if they can prove infringement.

### D.      Balance of Equities Favors Beyond Blond and Issuing an Injunction

The injunctive relief sought here is limited in scope, in that it restores the status quo by reversing Defendants' *de facto* injunction preventing sales and views of Beyond Blond's six videos.  In issuing an injunction ordering withdrawal of takedown notices, the *Amaretto* court reasoned the balancing of equities and hardships favored plaintiff because if "the injunction is not issued Plaintiff will suffer harm to its business that could be severe enough to impact its ability to continue as a going concern.  On the contrary, if Plaintiff is allowed to continue to market and sell its products as it currently does, Defendant can obtain money damages from Plaintiff if Plaintiff is in fact infringing Defendant's copyright."  *Amaretto Ranch Breedables v. Ozimals, Inc.*, No. C 10-05696 CRB, 2010 WL 5387774, at *3 (N.D. Cal. Dec. 21, 2010).  Thus, the balance of equities favors the granting of a preliminary injunction ordering withdrawal of the takedown notices to Amazon for the Six Videos, whereby if Defendants can prove its dubious infringement claims, it is compensable through damages.

### E.      Public Interest

The public interest portion of the preliminary injunction test asks, "whether there exists some critical public interest that would be injured by the grant of preliminary relief."  *Independent. Living Ctr. of So. Cal., Inc. v. Maxwell–Jolly,* 572 F.3d 644, 659 (9th Cir. 2009) (citation omitted).  Defendants cannot identify a single public interest that would be harmed by restoring Beyond Blond's Six Videos.  But, "the unnecessary

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

removal of non-infringing material causes significant injury to the public" because they cannot access the works.  *Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150, 1156 (N.D. Cal. 2008).  The public interest would also be served by quelling nonsensical takedown notices to indiscriminately shutdown a fairly competing business instead of meeting the proper burden for a preliminary injunction to prevent infringement.  *Design Furnishings, Inc. v. Zen Path, LLC*, 2010 WL 5418893, at *8 (E.D. Cal. Dec. 23, 2010) ("the public interest is in fact benefitted by granting a preliminary injunction, because absent eBay's policies, designed to avoid eBay's liability for intellectual property infringement, it would be the claimed copyright holder who would bear the burden of proving the copyright infringement.").

**F.    No Bond Is Warranted Because Defendants' Own No Copyright or Trademark Rights For Beyond Blond to Infringe**

The court has "wide discretion in setting the amount of the bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills,* 321 F.3d 878, 882 (9th Cir. 2003).  In setting the bond, the court must consider evidence of the "potential financial ramifications of entering a preliminary injunction." *Walczak v. EPL Prolong, Inc.,* 198 F.3d 725, 733 (9th Cir. 1999).  Granting the preliminary injunction ordering withdrawal of the meritless takedown notices to Amazon will cause no harm to Defendants.  It will merely restore and preserve the status quo and prevent Defendants from extrajudicially interfering with Beyond Blond's lawfully competing business, and afford the right to Defendants to prove their case in court.  Thus, the bond should be set at zero.

**VI.   Conclusion**

Amazon's takedown procedure is not intended to be abused by Defendants to prevent lawful competition on dubious trademark and copyright infringement claims. Having forced Beyond Blond to Court, Defendants must now prove their baseless allegations – instead of checking off boxes – to prevent this Court's preliminary

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

injunction restoring the status quo.

Issuance of an injunction is proper here because the evidence and the law clearly favors Beyond Blond's position because: (1) Defendants are unlikely to succeed on the merits of their trademark and copyright infringement allegations, as they have neither a valid copyright or trademark to enforce and there is no substantial or confusing similarity between the parties' respective uses of the generic cartoon classics term; (2) Defendants cannot show irreparable harm if Beyond Blond's Six Videos are restored on Amazon Video because they can recover monetary damages, but Beyond Blond has shown irreparable harm unless the Court issues an injunction ordering Defendants to withdraw the baseless takedown notices; (3) the balance of equities favors Beyond Blond as the injunction seeks to reestablish the status quo by eliminating the meritless extrajudicial de facto injunction; and (4) the public is best served by the issuance of an injunction because it will prevent baseless copyright and trademark infringement takedown notices and abuse of the procedure.

Thus, the Court should grant Beyond Blond's motion for a preliminary injunction ordering the Defendants to withdraw all of their takedown notices to Amazon and requesting that the Six Videos be restored as they existed prior to March 20, 2020, including all the rankings, reviews, and customer commentary.

Dated:  July 13, 2020               Respectfully submitted,

                                    **MILORD & ASSOCIATES, P.C.**


                                    By:  /s/ Milord A. Keshishian
                                    Milord A. Keshishian
                                    Attorneys for Plaintiff
                                    BEYOND BLOND PRODUCTIONS, LLC

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878