# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEYOND BLOND PRODUCTIONS, LLC,<br>    Plaintiff,<br><br>            v.<br><br>EDWARD HELDMAN III, et al.,<br>    Defendants. | CV 20-5581 DSF (GSJx)<br><br>Order GRANTING Plaintiff's Motion for a Preliminary Injunction (Dkt. 14) |

Plaintiff Beyond Blond Productions, LLC requests a preliminary injunction ordering Defendants Edward Heldman III, ComedyMX, Inc., and ComedyMX, LLC to withdraw six Digital Millennium Copyright Act (DMCA) takedown notices issued to non-party Amazon for Plaintiff's "cartoon classics" videos and refrain from issuing any further DMCA takedown notices.  Dkt. 14 (Mot.).[1]  Defendants oppose.  Dkt. 19 (Opp'n).  The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  For the reasons stated below, the motion is GRANTED.

## I. BACKGROUND

Plaintiff is a small business that "helps content owners leverage their music and video catalogs into new and different product offerings

---

[1] Plaintiff's reply brief exceeds 12 pages, which violates this Court's Standing Order.  Dkt. 10 (Standing Order) at 4.c. ("Replies shall not exceed 12 pages."). Further failures to comply with the Court's Orders may result in sanctions, including the striking of documents.

for digital distribution." Dkt. 14-1 (Justice Decl.) ¶ 2.  Plaintiff also "acquires and purchases public domain videos and cartoon classics, makes compilations of same, and lists the works on video streaming platforms."  Id. ¶ 4.  In late 2016 or early 2017, Plaintiff acquired, digitized, and edited cartoon classics from BetaSP tapes and the public domain, including Bugs Bunny, Popeye, and Mighty Mouse.  Id. ¶ 5.  Heldman is a member of ComedyMX, LLC and the Chief Operating Officer of ComedyMX, Inc.  Dkt. 19-2 (Heldman Decl.) ¶ 1.  Defendants "creat[e] copyrightable derivative works from public domain content . . . and licens[e] the derivative works through various means."  Id. ¶ 2.

Between February 2017 and May 2019, Plaintiff uploaded six cartoon classic compilations to Amazon's Prime Video Direct (Amazon Video).  Justice Decl. ¶ 7.  In March 2020, Heldman viewed these videos and submitted DMCA takedown notices to Amazon "on behalf of" ComedyMX, LLC, the owner of U.S. Copyright No. PAu00378644 (the '644 Registration) and U.S. Copyright No. PAu003801793 (the '793 Registration).  Heldman Decl. ¶¶ 2-3; see also Justice Decl. Ex. 1.  Plaintiff's president, Michelle Justice, declares that she was not aware of Defendants' videos until March 20, 2020 when she received notice from Amazon that Defendants had issued six DMCA takedown notices for Plaintiff's six videos.  Justice Decl. ¶ 10.  On March 31, 2020, Plaintiff filed counternotifications with Amazon, but Amazon responded that it would not restore Plaintiff's videos unless Defendants withdrew their takedown notices.  Id. ¶¶ 13-14 & Exs. 3, 4.  After Amazon rejected Plaintiff's appeal, id. ¶ 15, Plaintiff brought this action asserting claims against Defendants for Misrepresentation of Copyright Claims, 17 U.S.C. § 512(f), Declaration of Copyright and Trademark Invalidity, Unenforceability, and Non-Infringement, Tortious Interference with Existing and Prospective Economic Advantage, Trade Libel/Product Disparagement, and California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, Dkt. 1 (Compl.).  While this motion was pending, Defendants filed another takedown notice.  Dkt. 21-1 (Suppl. Justice Decl.) ¶ 13 & Ex. 19.  The next day, Plaintiff noticed that Amazon had independently taken down two additional videos.  Id. ¶ 14.

## II. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008). Although a plaintiff seeking a preliminary injunction must make a showing on each factor, the Ninth Circuit employs a "version of the sliding scale" approach where "a stronger showing of one element may offset a weaker showing of another." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-35 (9th Cir. 2011). Under this approach, a court may issue a preliminary injunction where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . , so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. at 1135 (internal quotation marks omitted). However, if a party seeks a mandatory injunction, "she must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (en banc). "[M]andatory injunctions should not issue in 'doubtful cases.'" Id. (quoting Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr., 636 F.3d 1150, 1160 (9th Cir. 2011)).

## III. DISCUSSION

### A. Whether the Law and Facts Clearly Favor Plaintiff's Position

Plaintiff contends it is likely to succeed on its first three causes of action for Declaration of Copyright Invalidity, Unenforceability, and Non-Infringement, Declaration of Trademark Invalidity, Unenforceability, and Non-Infringement, and Misrepresentation of Copyright Claims under 17 U.S.C. § 512(f). The Court finds Plaintiff is

likely to succeed on the declaratory relief claims and that the law and facts clearly favor Plaintiff's position on those claims.[2]

### 1. Declaration of Copyright Invalidity, Unenforceability, and Non-Infringement

Plaintiff seeks a declaration that the '644 Registration is invalid and unenforceable, Compl. ¶ 39, and that Plaintiff's six videos have "not infringed, do[] not infringe, and would not infringe, either directly or indirectly, any valid, enforceable and/or protectable expression in the '644 Registration," id. ¶ 40.[3]  In a declaratory judgment action, the burden of proving infringement remains with the rightsholder.  See Medtronic, Inc. v. Mirowski Family Ventures, LLC, 571 U.S. 191, 199 (2014) ("the burden of proving infringement should remain with the

---

[2] "A declaratory judgment can . . . be used as a predicate to further relief, including an injunction." Powell v. McCormack, 395 U.S. 486, 499 (1969); see also Rincon Band of Mission Indians v. Harris, 618 F.2d 569, 575 (9th Cir. 1980) ("the Declaratory Judgment Act . . . would empower the district court to grant supplemental relief, including injunctive relief").

[3] In addition to the '644 Registration, Defendants contend ComedyMX, LLC is the owner of three additional Copyright Registrations: PAu003801793, PAu003921426 and PAu003986151.  Mot. at 4 (citing Heldman Decl. Ex. 4).  However, given that these copyrights are not mentioned in the Complaint, their relevance to this motion is not clear.  Heldman does declare that he submitted the DMCA takedown notices based on his "good-faith belief" that Plaintiff infringed the works covered by the '644 Registration and the '793 Registration.  Heldman Decl. ¶ 3.  However, the '793 Registration is not relevant to Plaintiff's copyright non-infringement claim.  Therefore, the Court does not address Plaintiff's contention that these additional registrations are also invalid because "[a]lthough each registration is for an unpublished collection, the various cartoons listed in each application were previously published by Defendants . . . prior to the registration dates of the '151 and '793 Registrations." Dkt. 21 (Reply) at 2, 8-10.  Moreover, contrary to Defendants' assertion, two of the copyright registrations are owned by ComedyMX, Inc. and not ComedyMX, LLC.  Id. at 3-4.  Adding further to the confusion, the notices Plaintiff obtained state that they were filed on behalf of ComedyMX Inc., not ComedyMX, LLC.  See Justice Decl. Ex. 1.

4

patentee"); Marya v. Warner/Chappell Music, Inc., 131 F. Supp. 3d 975, 984 (C.D. Cal. 2015) ("just as in Medtronic, there is no reason to relieve the alleged owners of the intellectual property of the usual burden of proof just because they are nominally the defendants in this declaratory judgment action"); Williams v. Bridgeport Music, Inc., No. LA CV13-06004 JAK, 2014 WL 7877773, at *5 (C.D. Cal. Oct. 30, 2014) ("In an action seeking a declaration of non-infringement, the party who owns the work as to which infringement is claimed bears the burden"). Therefore, the burden is on Defendants to show copyright infringement.

"A plaintiff bringing a claim for copyright infringement must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Funky Films, Inc. v. Time Warner Entm't, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). As to the first element, "[a] copyright registration is 'prima facie evidence of the validity of the copyright and the facts stated in the certificate.'" United Fabrics Int'l, Inc. v. C&J Wear, Inc., 630 F.3d 1255, 1257 (9th Cir. 2011) (quoting 17 U.S.C. § 410(c)). "An accused infringer can rebut this presumption of validity" by "offer[ing] some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc., 122 F.3d 1211, 1217 (9th Cir. 1997). "[T]he second element has two distinct components: 'copying' and 'unlawful appropriation.'" Rentmeester v. Nike, Inc., 883 F.3d 1111, 1117 (9th Cir. 2018), cert. denied, 139 S. Ct. 1375 (2019). "By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying. The burden shifts to the defendant to rebut that presumption through proof of independent creation." Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486 (9th Cir. 2000).

Plaintiff contends that the '644 Registration is invalid and unenforceable, and that Plaintiff's videos are non-infringing for three primary reasons: 1) the '644 Registration cannot, and does not, protect Defendants' cartoons classic logo, 2) Plaintiff did not access Defendants'

works, and 3) the works are not substantially similar. Compl. ¶¶ 39-40.[4]

Plaintiff does not contend that the '644 Registration is invalid on its face, but rather that it "cannot extend to [Defendants'] purported trademark in the 'cartoon classics' term and copied eye design." Mot. at 8. First, the '644 Registration is a Performing Arts (PA) copyright registration that covers a "Motion Picture" consisting of an "unpublished collection." Heldman Decl. Ex. 4 at 1. Plaintiff contends that PA copyright registration cannot and does not extend to Defendant's "cartoon classics" design because PA registrations cover "[w]orks of the performing arts" such as "Musical works . . .; dramatic works . . .; pantomimes and choreographic works; and motion pictures and other audiovisual works," not logos, and "the '644 Registration does not even list the purported trademark design as protected material under the 'Contents' heading." Mot. at 8 (citing 37 CFR § 202.3(b)(1)(ii)). The '644 Registration clearly does not cover the "cartoon classics" design logo.

That Defendants obtained a copyright in their motion pictures does not equate to protection of design logos contained in those videos. See Secret of the Islands, Inc v. Hymans Seafood Co. Inc., No. 2-17-CV-00342, 2018 WL 1566706, at *4 (D.S.C. Mar. 30, 2018) ("A copyright in an image does not equal trademark protection in the products in that image"); see also Warner Bros. Entm't v. X One X Prods., 840 F.3d 971,

---

[4] Specifically, Plaintiff alleges that the '644 Registration is invalid and unenforceable because "the copyright does not protect the cartoons classic logo," the logo "consists of common geometric shapes[] [and] unprotectable eyes from the public domain," and the logo "is not copyrightable subject matter." Compl. ¶ 39. And Plaintiff's videos do not infringe the '644 Registration because: "(1) Counter-Defendant has not alleged access; (2) the '644 Registration does not cover a logo; (3) common geometric shapes[] and eyes from the public domain and pre-existing third party artwork are not protectable; and (4) [Plaintiff's] accused six videos and cartoon classics depiction are neither substantially similar nor virtually identical to protectable elements in the '644 Registration." Compl. ¶ 40.

980 (8th Cir. 2016) (copyright protection extends to "copy[ing] the film itself," while trademark protection applies to product marketing "employ[ing] iconic film characters' pictures to associate the products with [plaintiff's] films").

Second, "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; [and] mere variations of typographic ornamentation, lettering or coloring" are "not subject to copyright," 37 C.F.R. § 202.1(a), and "distinctiveness in typographic ornamentation will not ordinarily qualify otherwise noncopyrightable material for copyright protection," Alberto-Culver Co. v. Andrea Dumon, Inc., 466 F.2d 705, 711 (7th Cir. 1972); see also Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1080-81 (9th Cir. 2000) ("'textual matter' is not [copyrightable] – at least not unless the text 'aid[s] or augment[s]' an accompanying graphical illustration." (second and third alterations in original) (quoting 1 NIMMER § 2.08[G][2], at 2-136)); Green Bullion Fin. Servs., LLC v. Money4Gold Holdings, Inc., 639 F. Supp. 2d 1356, 1361-62 (S.D. Fla. 2009) (although defendant "obviously pilfer[ed] the words and stylized font and colors of the 'Cash4Gold' mark, . . . these items alone cannot make out a claim for copyright infringement"). Although "[i]t is true, of course, that a *combination* of unprotectable elements may qualify for copyright protection," "it is not true that *any* combination of unprotectable elements automatically qualifies for copyright protection." Satava v. Lowry, 323 F.3d 805, 811 (9th Cir. 2003). "[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." Id. Here, Plaintiff's undisputed testimony shows that Defendants' "cartoon classics" logo uses "public domain off-the[-]shelf Freestyle Script type face" and "public domain and generic clipart eyes." Justice Decl. ¶¶ 18-19 & Exs. 6-7. The law and facts clearly favor the conclusion that this combination of two unprotectable elements is not sufficiently numerous or original to constitute original work entitled to copyright protection. This provides further evidence that the cartoon classics logo is not a protectible element of the works covered by the '644 Registration.

Therefore, the Court agrees that the '644 Registration does not provide copyright protection to the "cartoon classics" logo displayed in Defendants' videos.

Defendants do not address these arguments directly. Instead, Defendants lump together the design logo claims with claims of other alleged infringement.[5] See Opp'n at 6 (the '644 Registration also includes "color correction, added watermarks and title cards in addition to the creation and application of the Cartoon Classics! Copyrighted Design Logo."); id. (in addition to the logo, "there is clear evidence of direct copying of the works, including original elements of the work." (citing Dkt. 19-1 (Wood Decl.) ¶¶ 6-10 & Exs. 1-3 and Heldman Decl. ¶¶3-7 & Exs. 4, 6-7)). Specifically, Heldman declares that he "believe[s] [] that [Plaintiff] copied ComedyMX LLC's copyrighted works." Heldman Decl. ¶ 8. His belief is based on the following: 1) Plaintiff's video of the cartoon "Pigs in a Polka" did not contain a title card although most of Plaintiff's videos did contain the original title card, and Defendants' video of the same cartoon had a title card with its "8thManDVD.com" trademark prominently displayed, id. ¶ 6; 2) Plaintiff's video of the Popeye cartoon "Ancient Fistory" is cropped in a way that "appears to correspond exactly with the removal of the '8thManDVD.com' watermark" in Defendants' video of that cartoon, id. ¶ 7; and 3) Plaintiff "appears to be infringing third party copyrighted content as well" because Plaintiff's video of the cartoon "the Impatient Patient" appears to come not from the black and white version that is in the public domain, but the colorized version copyrighted by Warner Bros, id. ¶ 8. Similarly, Keith Wood, who has worked as a contractor

---

[5] Defendants' feigned indignation in contending that "Plaintiff improperly focuses solely on ComedyMX LLC's CARTOON CLASSICS! logo as not being entitled to copyright protection," Opp'n at 5-6, is not well taken. When Plaintiff's counsel asked Defendants' counsel for the reasons supporting the takedown notices, Defendants' counsel responded that "BB Productions is using our client's CARTOON CLASSICS trademark and logo design without authorization to promote similar goods and services on the website Amazon.com." Dkt. 15-2 (Keshishian Decl. Ex. B). It did not mention any other basis, so it is not clear why Plaintiff's focus on the logo is "improper."

8

for ComedyMX, LLC, opined that 1) Plaintiff's frame in "Ancient Fistory" "exactly crops out ComedyMX LLC's watermark" and "jitters in the same places/times" as Defendants' version; and 2) Plaintiff's "Pigs in a Polka" cuts out Defendants' watermark, contains identical colors to Defendants' version, does not jitter at all, and lacks a title card even though most other cartoons contained the title card.  Wood Decl. ¶¶ 3, 5-8, 10.

Justice convincingly explains each of these purported discrepancies.  First, there are public domain videos of Ancient Fistory and Pigs in a Polka cropped the same way as Plaintiff's video.  Suppl. Justice Decl. ¶¶ 3, 10.  In fact, the Pigs in a Polka video "was sourced digitally from Public Domain sources" and the Ancient Fistory video was obtained from her BetaSP tape collection.  Id. ¶¶ 6, 12.  Additionally, Wood's overlay is inaccurate; a proper overlay would show that had Plaintiff used Defendants' cartoon, the watermark would not have been completely cropped out.  Id.  Justice also declares that Wood's overlay of Pigs in a Polka is inaccurate and provides affirmative testimony that her original source file did not contain any watermarks, and if she had used Defendants' cartoons, the watermark would not have been completely cropped out.  Id. ¶ 4.  Justice also notes that to the extent the jitter is identical, that could also be caused by both parties obtaining the same public domain footage.  Id. ¶ 5.  Finally, Justice explains that Plaintiff's Pigs in a Polka cartoon does not include the title card because the original image contained music and therefore required a synchronization license, which Plaintiff did not have.  Id. ¶ 8.  Additionally, Justice affirmatively declares that she was not aware of Defendants' videos until March 20, 2020 when she received notice from Amazon that Defendants had issued the takedown notices.  Justice Decl. ¶ 10.

Plaintiff has shown that the facts and the law clearly favor the position that the '644 Registration does not protect the cartoon classics logo.  Plaintiff has also rebutted the evidence provided by Defendant purporting to show direct copying of the potential protectible elements of the '644 Registration, and met its burden of showing that the facts clearly favor its independent creation.  Therefore, the Court finds that

9

the facts and the law clearly favor Plaintiff's position that it is entitled to a declaration that its videos do not infringe the '644 Registration.

### 2. Declaration of Trademark Invalidity, Unenforceability, and Non-Infringement

The Ninth Circuit "recognize[s] four categories of terms with regard to potential trademark protection: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful terms." Elliott v. Google, Inc., 860 F.3d 1151, 1155 (9th Cir. 2017) (citing Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc., 198 F.3d 1143, 1146 (9th Cir. 1999)). On the one end of the spectrum, "[g]eneric terms are not protectable because they do not identify the source of a product." Id. Descriptive terms enjoy trademark protection only if they acquire "secondary meaning," which means that they "become distinctive of the trademark applicant's goods in commerce." Rudolph Int'l, Inc. v. Realys, Inc., 482 F.3d 1195, 1197-98 (9th Cir. 2007) (quoting Filipino Yellow Pages, 198 F.3d at 1147). "Marks that are suggestive, arbitrary or fanciful can be protected without demonstrating secondary meaning." Id. at 1198. Where "the disputed term has not been federally registered, and the defendant asserts genericness as a defense, the burden shifts to the plaintiff to show that the mark is nongeneric." Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927 (9th Cir. 2005).

Here, Defendants have applied for trademark protection of their cartoon classics logo, U.S. Trademark Serial No. 88/789,484 ('484 Application), but the mark has not yet been registered, although it was published in the Trademark Official Gazette on June 16, 2020. Heldman Decl. ¶ 9 & Ex. 5. Therefore, it is Defendants' burden to show that their mark is not generic. To determine whether a mark is generic, courts use the "who-are-you/what-are-you" test. Yellow Cab, 419 F.3d at 929. A mark is generic if it answers the question "what are you." Id. Here, based on use in the industry and Defendants' own use, see Dkt. 15 (Keshishian Decl.) ¶¶ 10-11; Dkts. 15-4 through 15-9 (Keshishian Decl. Exs. D-I), "cartoon classics" appears to answer the question "what are you" and is therefore a generic term and not a

10

protectible mark, Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 840 (9th Cir. 2001) (affirming district court finding of likelihood of success on claim of genericness where "the terms 'Firesafe' and 'Fire Safe' are widely used by third parties in the safe industry," "competitors use the term 'fire safe' to refer to a type or category of safe," and the defendant "itself had used the term in a generic sense"). Additionally, the '484 Application was amended to state that "[n]o claim is made to the exclusive right to use 'CARTOON CLASSICS' apart from the mark as shown." Dkt. 14-2 (RJN) Ex. 1 at 7.[6] This fact supports Plaintiff's position that the phrase "cartoon classics" is, by itself, generic and not protectible. Defendants do not meaningfully dispute that the term itself is not generic.

However, a "design, when used in connection with a word mark in such a way as to create in the minds of the consuming public a commercial impression, separate and apart from the word mark itself, may be protected as a separate mark." Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 613 (9th Cir. 1989) (citing McCarthy on Trademarks and Unfair Competition § 7:8 at 200). "Similarly, although color, per se, is generally not capable of trademark protection, it may be an essential element of a protected arrangement of colors, symbols, or words." Id. (citing McCarthy § 7:8 at 214). Therefore, where "a logo has attained trademark significance independent of the words . . .[,] adoption of a confusingly similar format would constitute trademark infringement." Id.; see also In Re Grande Cheese Co., 2 U.S.P.Q.2d 1447 (T.T.A.B. 1986)[7] ("where the unregistrable portions of a mark are presented in a distinctive display, the unregistrable portions may be disclaimed and yet the mark as a whole may be registrable"); In Re Cosmetic Factory, Inc., 220 U.S.P.Q. (BNA) ¶ 1103 (T.T.A.B. Sept. 30,

---

[6] The Court GRANTS Plaintiff's unopposed request for judicial notice of records issued by the United States Patent and Trademark Office (USPTO) and the Copyright Office. Fed. R. Evid. 201(b).

[7] "Decisions of the Patent Trademark Office Trademark Trial and Appeal Board are not binding but are to be given great weight." Lahoti v. Vericheck, Inc., 636 F.3d 501, 506 n.1 (9th Cir. 2011).

1983) ("In order for a term otherwise unregistrable to be capable of distinguishing an applicant's goods, the presentation of the term must be sufficiently striking, unique or distinctive so as to overcome its inherent incapacity and render the mark capable of serving as a source indicator."). A trademark "in [a] distinctive style does not entitle [the mark owner] to prevent a competitor from using the generic word . . . as part of a different trademark." Time Inc. v. Petersen Pub. Co., 976 F. Supp. 263, 264 (S.D.N.Y. 1997).

Plaintiff contends Defendants' design "fails to create a commercial impression apart from the generic term itself and remains unprotectable," Mot. at 14, and cites Grande Cheese as involving "much more elaborate designs of generic words," id. at 15. In Grande Cheese, the Trademark Trial and Appeal Board affirmed the denial of a trademark with the words "Mozarella" and "Italian Cheeses" arranged with two boxes because "the background display [wa]s [not] sufficiently unique or distinctive to warrant registrability" where it "would [not] be perceived as anything more than a mere background design for the display of the words presented." 2 U.S.P.Q.2d 1447. However, that the USPTO published Defendants' mark in the Trademark Official Gazette on June 16, 2020, Heldman Decl. Ex. 5, indicates that the USPTO disagrees with Plaintiff's position. Plaintiff contends that "a Trademark Examiner's decision is entitled to little weight in court proceedings." Mot. at 16 (citing Carter-Wallace, Inc. v. Procter & Gamble Co., 434 F.2d 794, 802 (9th Cir. 1970)). However, Carter-Wallace held only that a "determination made by the Patent Office *under the circumstances just noted* must be regarded as inconclusive since made at its lowest administrative level and in light of the inconsistent position taken by plaintiff." 434 F.2d at 802 (emphasis). Plaintiff also contends that "[t]he Examiner was . . . misled because Defendants withheld evidence that the stylized 'cartoon classics' term consists of public domain and generic Freestyle Script font and merely copied clipart eyes." Mot. at 16. But Plaintiff cites no evidence of what Defendants told the Examiner or what evidence the Examiner had. Ultimately, the Court need not determine whether Defendants' logo is

12

entitled to trademark protection, because even if it were, Plaintiff's logo is not infringing.

To establish trademark infringement, the purported trademark owner "must show that it is '(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark.'" Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc., 736 F.3d 1239, 1247 (9th Cir. 2013) (quoting Grocery Outlet Inc. v. Albertson's Inc., 497 F.3d 949, 951 (9th Cir. 2007) (per curiam)). Assuming, without concluding, that Defendants have a valid, protectable mark, the law and facts clearly favor the conclusion that Plaintiff's logo is not "confusingly similar" to Defendants' mark. To determine whether two marks are confusingly similar, courts in the Ninth Circuit apply the eight Sleekcraft factors, which are "neither exhaustive nor exclusive":

> (1) strength of the allegedly infringed mark; (2) proximity or relatedness of the goods; (3) similarity of the sight, sound, and meaning of the marks; (4) evidence of actual confusion; (5) degree to which the marketing channels converge; (6) type of the goods and degree of care consumers are likely to exercise in purchasing them; (7) intent of the defendant in selecting the allegedly infringing mark; and (8) likelihood that the parties will expand their product lines.

E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1290 (9th Cir. 1992) (citing AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-54 (9th Cir.1979)). "Similarity of the marks 'has always been considered a critical question in the likelihood-of-confusion analysis.'" JL Beverage Co., LLC v. Jim Beam Brands Co., 828 F.3d 1098, 1109 (9th Cir. 2016) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000)). The Ninth Circuit applies three "detailed axioms to guide this comparison: first, the marks must be considered in their entirety and as they appear in the marketplace . . . ; second, similarity is adjudged in terms of appearance, sound, and meaning . . . ; and third, similarities are weighed more heavily than differences." GoTo.com, 202 F.3d at 1206 (citations omitted).

Plaintiff contends that, to the extent Defendants' mark is protectible, "they can only prevent exact copying of the stylization," Mot. at 18 (citing McCarthy on Trademarks § 12:40), and in any event that parties' logos are "so irrefutably dissimilar that infringement cannot be found," id. (citing McCarthy on Trademarks § 11:30). Plaintiff contends, therefore, that in applying the first axiom, considering the marks "in their entirety and as they appear in the marketplace," "it is not improper to discount the similarity of descriptive or generic parts of conflicting marks." Id. (citing iCall, Inc. v. Tribair, Inc., No. C-12-2406 EMC, 2012 WL 5878389, at *7 (N.D. Cal. Nov. 21, 2012)). This, according to Plaintiff, leaves only the differences. The Court agrees. Defendants contends that Plaintiff's focus on use of the term "Cartoon Classics" ignores "the distinctive eye components of [Defendants'] mark . . . that plaintiff, out of the myriad of available options, has copied intentionally." Opp'n at 7. Defendants further contend that "it is readily apparent that the marks are confusingly similar" in that they "look and sound confusingly similar if not identical." Id. at 8 (citing Heldman Decl. ¶ 10). Defendants do not otherwise address any of the case law or examples cited by Plaintiff.

As shown below, both marks include the generic phrase "cartoon classics" and have substituted the two "o's" in "cartoon" with eyes. However, Plaintiff provides evidence that substituting the two "o's" in "cartoon" is common and is contained in many (now abandoned or canceled) marks. See RJN Exs. 6-12.[8] Therefore, contrary to Defendants' contention, mere inclusion of eyes is not a distinctive element of Defendants' mark. Moreover, the marks here contain different colors, different fonts, different capitalization and punctuation, different arrangement, and different eye styles. See Justice Decl. ¶ 23. The Court concludes that the visual appearance of the marks on the whole, as used in the marketplace, is noticeably different, particularly given that the actual words "cartoon classics" is

---

[8] The Court GRANTS Plaintiff's unopposed request for judicial notice of records made available by the USPTO. Fed. R. Evid. 201(b).

generic, not protectible, and specifically excluded from Defendants' trademark application.

 

        BEYOND BLOND                      DEFENDANTS

As to the other Sleekraft factors, the strength of the mark is weak because it has been explicitly limited to "the mark as shown." Heldman Decl. Ex. 5. Although both logos are used on old cartoons to be sold or streamed on the internet, Plaintiff sells its videos on Amazon, while Defendants offer their videos on YouTube for free. See id. ¶ 2.[9] The Ninth Circuit has held that "arguments that Web users exercise a great deal of care before clicking on hyperlinks are unconvincing," GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1209 (9th Cir. 2000), but this factor weighs slightly differently here where Amazon charges a fee for its videos while YouTube users can watch videos for free. There is no evidence that Plaintiff intended to confuse consumers when it created its logo, and Plaintiff has provided testimony that it was unaware of Defendants' logo, independently designed its own logo, and in any event would not want to associate itself with Defendants because its product is higher quality. Justice Decl. ¶¶ 8-11, 21-22.[10] Neither side has presented any evidence of actual confusion, marketing channels, other than the fact that the

---

[9] Although Defendants do not challenge this distinction, Plaintiff's Reply shows that at least some of Defendants' videos are or were available for sale on Amazon. See Reply at 2 (cartoons were previously published by Defendants "for rent or purchase on Amazon"); id. at 8-9 ("Defendants also published and offered for sale videos that included *Pigs in a Polka* on their website and for rental and sale on Amazon in at least 2015 and 2016.").

[10] The Court has already concluded that Defendants' evidence that Plaintiff "has viewed and copied ComedyMX LLC's videos using the trademark at issue," Opp'n at 8, was adequately refuted by Plaintiff's evidence.

parties show their videos on different websites, or likelihood of expansion. Overall, the factors favor Plaintiff's position that its logo is not confusingly similar to Defendants' logo.

Therefore, the Court finds the facts and the law clearly favor Plaintiff's position that it is entitled to a declaration that its videos do not infringe Defendants' trademark.

### 3. Section 512(f)

Plaintiff does not address its Section 512(f) claim separately from its copyright claim and Defendants do not address this claim at all. Because the Court has found Plaintiff is likely to succeed on its copyright and trademark declaratory relief claims, the Court need not consider Plaintiff's likelihood of success on its Section 512(f) claim at this time. See Morgan Stanley Smith Barney LLC v. Jacobs, No. 2:19-cv-04540-ODW (JCx), 2019 WL 2341654, at *2 (C.D. Cal. June 3, 2019) ("Plaintiff is not required to demonstrate it is likely to prevail on all of its claims for the issuance of a preliminary injunction.")

### B. Irreparable Harm

Plaintiff has established a likelihood of irreparable harm if Defendants do not withdraw their takedown notifications. Plaintiff contends that it has suffered and will continue to suffer injuries such as "reputation, advertising efforts, loss of customers, ranking and reviews, termination as a repeat offender, [and] goodwill." Mot. at 21. Currently, when a customer searches Amazon for "cartoon classics," Plaintiff's listing appears but with a notification that the video is currently unavailable and that directs customers to Plaintiff's competitors. Justice Decl. ¶ 25. Additionally, Amazon has removed Plaintiff's other videos from recommendations. Id. ¶ 26. While this motion was pending, Defendants filed another takedown notice causing Amazon to independently take down two additional videos. Suppl. Justice Decl. ¶¶ 13-14 & Ex. 19. Reputational harm and loss of goodwill can be irreparable harm. See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir.1991). So can threatened loss of prospective customers. See Stuhlbarg, 240

16

F.3d at 841. Defendants' contrary contention that "[P]laintiff's motion fails to explain why monetary damages would be inadequate," Opp'n at 9, simply ignores Plaintiff's argument and evidence. Therefore, the Court finds a likelihood of irreparable harm to Plaintiff.

### C. Balance of Hardships

The balance of hardships also tips in favor of Plaintiff. If the injunction is not issued, Plaintiff will suffer irreparable harm to its business as described above. On the contrary, if Defendant withdraws its takedown notices and Plaintiff is allowed to make its videos available as it did before, Defendants can obtain money damages from Plaintiff if Plaintiff is in fact infringing Defendants' copyrights or trademark. Defendants do not dispute this fact.

Defendants instead contend that "plaintiff's false representations that its videos are in the public domain could mislead the public to copy and reproduce the infringing videos *ad nauseum*." Opp'n at 10. First, Plaintiff has not represented that its videos are in the public domain, but only that it obtained the underlying content from the public domain. And in any event, even if the preliminary injunction led others to further infringe on Defendants' rights, Defendants have not argued that infringement by others could not be resolved through money damages.

### D. Public Interest

Defendants contend that "allowing plaintiff to resume infringement of ComedyMX LLC's trademark would likely cause consumer confusion." Opp'n at 9-10. However, the Court has concluded that the two logos are not confusingly similar and are not likely to cause consumer confusion. Defendants also contend that "[i]t is not in the public interest or in the interest of equity to allow [P]laintiff to resume infringing the copyrighted works and trademark of ComedyMX LLC." Opp'n at 10. However, the Court has concluded that the law and facts clearly favor Plaintiff's claims of non-infringement.

17

On the other hand, as recognized in Design Furnishings, "the public interest is in fact benefitted by granting a TRO, because absent [Amazon's] policies, designed to avoid [Amazon's] liability for intellectual property infringement, it would be the claimed copyright holder who would bear the burden of proving the copyright infringement." 2010 WL 4321568, at *5. "To withhold a TRO would allow anyone to effectively shut down a competitor's business on [Amazon] simply by filing the notice that the [competitor's] product allegedly infringes on the complaining party's copyright. Id.

Moreover, the requested injunction here is consistent with the statutory scheme set up by the DMCA. Under that scheme, once a user whose content was removed provides a "counter-notification," the service provider retains its liability exemption only if it timely replaces the removed content, unless the person who provided the takedown notice informs the service provider that it has filed a copyright infringement action. Vernor v. Autodesk, Inc., 621 F.3d 1102, 1106 (9th Cir. 2010) (citing 17 U.S.C. § 512(g)). Although Amazon has not maintained its liability exemption by declining to replace Plaintiff's content even though Defendants had not initiated legal action, the Court finds it relevant that the balance struck by Congress encouraged rightsholders to bring any disputed copyright claims to court and not rely solely on DMCA notifications to pursue alleged infringers.

### E. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The district court retains discretion 'as to the amount of security required, *if any*.'" Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011) (quoting Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009)). Rule 65(c) requires "the party affected by the injunction" to "present[] evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount

18

of the bond." Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d 878, 883 (9th Cir. 2003).

Defendants request a bond of $300,000 representing "a statutory damages award for the copyrighted works" it alleges are being infringed. Opp'n at 5. Specifically, this includes the maximum award for willful infringement of two copyrights. Id. at 10 ("$150,000 each for, at least, its uses of the copyrighted derivative works of "Ancient Fistory" and "Pigs in a Polka"). However, Defendants are not suing for copyright infringement and have cited no cases supporting the position that defeating a declaratory relief action for non-infringement entitles them to statutory damages for infringement of those copyrights. Therefore, their damages from being wrongfully enjoined or restrained do not include statutory damages that they may otherwise be entitled to if they ultimately brought, and succeeded on, a claim for copyright infringement. Defendants have not provided any other evidence that they would suffer damages by issuance of the injunction, such as loss of estimated royalty payments. See Design Furnishings, 2010 WL 5418893, at *9 (requiring $100,000 bond based on estimated 50% royalty on $200,000 of annual profits). The "bond amount may be zero if there is no evidence the party will suffer damages from the injunction." Connecticut Gen., 321 F.3d at 882 (citing Gorbach v. Reno, 219 F.3d 1087, 1092 (9th Cir.2000)). Defendant has provided no evidence that a bond is needed, and therefore the Court exercises its discretion not to require one.

## IV. PRELIMINARY INJUNCTION

For the foregoing reasons, IT IS ORDERED that the request for a preliminary injunction is GRANTED as follows:

Within 15 days of this Order, Defendants shall notify Amazon that they are withdrawing, without prejudice to re-filing if they ultimately prevail in this lawsuit, their intellectual rights notices or takedown notices involving the following Amazon Case Numbers:

Cartoon Classics #1 6890999701

    Cartoon Classics #2 6891043541

    Cartoon Classics #3 6891006641

    Cartoon Classics #4 6890994521

    Cartoon Classics #5 6891030291

    Cartoon Classics #6 6891048961

    Patriotic Cartoon Classics 7205014561

The withdrawal request should 1) request that Amazon restore Plaintiff's videos with the same rankings, client reviews, and customer comments as prior to the takedown and 2) include a copy of this Order.

    IT IS FURTHER ORDERED that Defendants, and their respective officers, directors, employees, agents, subsidiaries, attorneys, and all persons in active concert or participation with Defendants, are preliminarily enjoined from issuing takedown notices concerning the seven videos described above or otherwise notifying Amazon that Defendants have copyrights or trademarks in the videos offered for sale by Plaintiff and that Plaintiff's sales violate those copyrights or trademarks.

    IT IS SO ORDERED.

Date: August 14, 2020            *Dale S. Fischer*
                                               Dale S. Fischer
                                               United States District Judge