UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEYOND BLOND PRODUCTIONS, LLC,<br>      Plaintiff,<br><br>      v.<br><br>EDWARD HELDMAN III, et al.,<br>      Defendants. | CV 20-5581 DSF (GSJx)<br><br>Order GRANTING Defendants' Motion to Strike (Dkt. 71) |

    Defendants Edward Heldman III, ComedyMX, Inc., and ComedyMX, LLC move, under California's anti-SLAPP statute, to strike the state law claims for tortious interference with existing and prospective economic advantage, trade libel, and unfair competition in the First Amended Complaint (FAC). Dkt. 71 (Mot.). Plaintiff Beyond Blond Productions, LLC opposes. Dkt. 77 (Opp'n).[1] The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the Motion is GRANTED.

---

[1] Beyond Blond did not call into the meet and confer conference line Defendants organized after the parties exchanged emails regarding this Motion. Dkt. 71-1 ¶ 8. Local Rule 7-3 notes counsel should attempt to confer in person before filing a motion. That is not currently possible due to COVID-19, but counsel are required to confer, at least telephonically, and to make a good faith effort to resolve the issues before resorting to motion practice. Beyond Blond's cursory email response, dkt. 71-1 Ex. H, was insufficient.

## I. BACKGROUND

Beyond Blond is a small business that "helps content owners leverage their music and video catalogs into new and different product offerings for digital distribution." Dkt. 32 (FAC) ¶ 12. Beyond Blond also "acquires and purchases public domain videos and cartoon classics, makes compilations of same, and lists the works on video streaming platforms." Id. ¶ 14. In late 2016 or early 2017, Beyond Blond acquired, digitized, and edited cartoon classics, including Bugs Bunny, Popeye, and Mighty Mouse. Id. ¶ 15. Defendants, similarly, "create compilations of cartoon classics and stream the same on video hosting platforms." Id. ¶ 17. Heldman controls ComedyMX, LLC and is the president, secretary, treasurer, and director of ComedyMX, Inc. See id. ¶¶ 2-4.

Between February 2017 and May 2019, Beyond Blond uploaded seven cartoon classic compilations to Amazon's Prime Video Direct. See id. ¶ 15.[2] On February 7, 2020, ComedyMX, LLC filed an application with the United States Patent & Trademark Office (USPTO) to trademark the phrase "CARTOON CLASSICS!" with its accompanying design. Dkt. 71-2 ¶ 2.[3] On February 21, 2020, Defendants' counsel submitted "a report of rights infringement to Amazon regarding cartoon compilation online stream-able videos uploaded to Amazon by Beyond Blond which prominently display ComedyMX, LLC's Mark." Id. ¶ 6; Ex. D.

Defendants' counsel claims the "trademark-based notice to Amazon" was "sent in anticipation of litigation if Beyond Blond did not cease and desist infringement of Comedy MX, LLC's trademark rights."

---

[2] One video was removed for inappropriate conduct, which the Court does not address.

[3] The mark was published for opposition on June 16, 2020, after which Beyond Blond initiated an opposition to the application. Id. ¶¶ 4-5. Beyond Blond moved to suspend the opposition pending the outcome of this action; the USPTO's Trademark Trial and Appeal Board granted the motion on November 18, 2020. Id. ¶ 5.

Id. ¶ 9. Amazon's response, also sent on February 21, 2020, noted it could not take action because Defendants did not provide a valid registration number for their trademark and stated it "do[es] not enforce pending applications or expired IP rights." Id. ¶ 8, Ex. F.

On February 29, 2020, Heldman "sent a written letter as a takedown notice to Amazon's email address not intended for takedown notices." Dkt. 77-1 (Keshishian Decl.) ¶ 3, Ex. 1. The email was a self-described takedown notice under the Digital Millennium Copyright Act (DMCA) and claimed Beyond Blond was infringing Defendants' copyright and trademark. Id. Ex. 1. On March 20, 2020, Amazon removed Beyond Blond's six cartoon classic videos based on Heldman's takedown notice. Dkt. 77-2 (Justice Decl.) ¶ 2, Ex. A. On March 21, 2020, Heldman emailed Warner Brothers' inhouse counsel Barry Goold, stating: "I have a legal dispute with this person that concerns using one of my trademarks." Keshishian Decl. Ex 2. Heldman wrote Beyond Blond used the Warner Brothers logo and "represents she handles distribution from you," so he "figured [he] would see if it's infringement." Id.

On March 26, 2020, Beyond Blond's counsel requested the good faith basis for issuing the takedown notices from Defendants, FAC Ex. A, and Defendants' counsel requested confirmation in writing by April 6 that Beyond Blond would "cease and desist all use of CARTOON CLASSICS and our client's copyrighted design," id. Ex. B. Defendants' counsel further stated if Beyond Blond did not "immediately address our client's concerns, we will pursue all available remedies. . . . The demands asserted herein are with full reservation of all rights and remedies that our client may possess." Id.

On March 30, 2020, Heldman sent another takedown notice to Amazon, containing nearly the same allegations as the earlier notice and identifying the same USPTO Application Number. Keshishian

3

Decl. ¶ 6, Ex. 3.[4] On March 31, 2020, Beyond Blond filed counter-notices requesting six of the videos be restored. FAC ¶ 27. On May 19, 2020, Amazon rejected the appeal and informed Beyond Blond its videos would not be restored unless Heldman withdrew his infringement notices or a court ordered the videos be reinstated. Id. ¶ 28.

Beyond Blond brought this action on June 23, 2020, asserting claims against Defendants for misrepresentation of copyright claims, 17 U.S.C. § 512(f); declaration of copyright and trademark invalidity, unenforceability, and non-infringement; trademark invalidity, unenforceability, and non-infringement; tortious interference with existing and prospective economic advantage; trade libel/product disparagement; and California's unfair competition law, Cal. Bus. & Prof. Code § 17200. Dkt. 1 at 1.

The next day, Heldman emailed Amazon, following up on the takedown notice from March 30, 2020. Keshishian Decl. ¶ 7, Ex. 4. Heldman stated "Please note that Comedy MX has received notice today that your partner BB Productions has filed a frivolous lawsuit against Comedy MX. Dur [sic] to that basis Comedy MX is forced to aggressively defend its IP and further seek damages against BB Productions." Id. Ex. 4.

On July 13, 2020, Beyond Blond moved for a preliminary injunction. Dkt. 14. Two days later, Heldman emailed antipiracy@warnerbros.com stating Beyond Blond was "selling and profiting off of a copyrighted WB cartoon and passing it off as [public domain]." Keshishian Decl. ¶ 8, Ex. 5. Heldman then forwarded that email to Goold, stating: "Can't you get this removed? I know for a fact she claims this is PD. I also am 99.9% confident she didn't license this one from studios." Id. Beyond Blond claims this cartoon had already

---

[4] The Court is unclear when Amazon reinstated the videos after the March 20, 2020 removal of the videos and how Defendants effectively got the videos removed with only pending trademark status.

4

been removed in 2017 by Amazon due to offensive content. Justice Decl. ¶ 4, Ex. B.

On August 14, 2020, the Court granted Beyond Blond's request for a preliminary injunction. Dkt. 25 (PI). The preliminary injunction instructed Defendants to withdraw their takedown notices for seven of Beyond Blond's videos. Id. at 19-20. It further stated Defendants were enjoined from "issuing takedown notices concerning the seven videos described above or otherwise notifying Amazon that Defendants have copyrights or trademarks in the videos offered for sale by Plaintiff and that Plaintiff's sales violate those copyrights or trademarks." Id. at 20.

Defendants withdrew their takedown notices from Amazon on August 28, 2020. Keshishian Decl. ¶ 10, Ex. 6. The same day, Heldman again emailed Goold, asking who handles Amazon takedown notices and stating two of Beyond Blond's cartoons contained Warner Brothers copyrighted cartoons. Id. ¶ 11, Ex. 7. Warner Brothers sent takedown notices to Amazon for three videos on September 1, 2020. Justice Decl. ¶ 5, Exs. C-E. Heldman again emailed Goold on September 4, 2020, stating he noticed three of Beyond Blond's videos were down and asking if he could confirm they were Warner Brothers' copyrighted content. Keshishian Decl. ¶ 12, Ex. 8. Heldman stated he "know[s] this [lawsuit] doesn't directly concern WB," but he did not think he should have to pay damages to Beyond Blond if the videos contained copyrighted material. Id.

Based on the Warner Brothers' takedown notices issued before Amazon had processed Defendants' takedown withdrawals, Amazon suspended Beyond Blond's account on September 14, 2020, stating: "This is the second time you have been suspended. The third time, your account will be terminated." Justice Decl. ¶ 6, Ex. F.

## II. LEGAL STANDARD

Anti-SLAPP motions are subject to a two-step analysis with shifting burdens. First, the moving Defendants must make a prima facie showing that Beyond Blond's claims arise from an "act in furtherance of [their] right of petition or free speech." Cal. Civ. Proc.

Code § 425.16(e); Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 595 (9th Cir. 2010). Defendants must meet their burden by demonstrating that the act underlying the challenged claims fits into one of the four categories of California Code of Civil Procedure section 425.16(e).

If Defendants make this prima facie showing, the burden shifts to Beyond Blond to demonstrate "a probability of prevailing on the challenged claims." Mindys Cosmetics, 611 F.3d at 595 (quoting Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1110 (9th Cir. 2003)). "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute – i.e., that arises from protected speech or petitioning *and* lacks even minimal merit – is a SLAPP, subject to being stricken under the statute." Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 820 (2011) (quoting Navellier v. Sletten, 29 Cal. 4th 82, 89 (2002)).

### III. DISCUSSION

#### A. Evidentiary Objections

Defendants object to Beyond Blond's evidence submitted with its opposition, including portions of Milord A. Keshishian's declaration and accompanying exhibits and portions of Michelle Justice's declaration and accompanying exhibits. Dkt. 78-3. Defendants take issue with portions of the declarations that allegedly assert legal conclusions and are improper opinion testimony. The Court has not relied on the declarations but has instead analyzed the underlying exhibits. Defendants also object to some evidence as irrelevant and one statement as confusing. See e.g. id. at 10 (asserting the statement "[a]s a result, the Beyond Blond's Amazon account was suspended for weeks" was irrelevant and confusing because "weeks" was not quantified). The Court has not considered facts that are irrelevant and did not rely on the suspension of Beyond Blond's account for any issue in this Order.

Defendants object to certain documents, asserting Keshishian and Justice lack personal knowledge, the document lacks a proper foundation, the document contains hearsay, or the document has not been properly authenticated. But "evidence may be considered at the anti-SLAPP motion stage if it is *reasonably possible* the evidence set

6

out in supporting affidavits, declarations or their equivalent will be admissible at trial." Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co., 6 Cal. 5th 931, 947 (2019) (emphasis added). All of the documents here could be authenticated by Amazon custodians, are admissible as statements by a party opponent, or are admissible in the form of testimony from a witness. Defendants have pointed to no evidence that could not meet the required standard. The Court overrules Defendants' objections.

### B. First Prong: Arising from a Protected Activity

"The California Court of Appeal has interpreted the anti-SLAPP statute's 'arising from' language to mean that a claim is based on whatever conduct constitutes the 'specific act[ ] of wrongdoing' that gives rise to the claim." Jordan-Benel v. Universal City Studios, Inc., 859 F.3d 1184, 1190 (9th Cir. 2017) (alteration in original) (quoting Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP, 133 Cal. App. 4th 658, 671 (2005)). "Put another way, a court focuses its anti-SLAPP analysis on the specific conduct that the claim is challenging." Id. (citing Wang v. Wal-Mart Real Estate Bus. Tr., 153 Cal. App. 4th 790, 809 (2007)).

   1. The Gravamen of Beyond Blond's Claims

To determine the gravamen of Beyond Blond's claims, the Court "must examine the allegedly wrongful conduct itself, without particular heed to the form of action within which it has been framed." Peregrine Funding, 133 Cal. App. 4th at 671. "The first prong of the anti-SLAPP analysis involves two related inquiries: (1) whether the Complaint alleges activity protected by section 425.16 and (2) whether the cause or causes of action alleged arise from those activities." Contreras v. Dowling, 5 Cal. App. 5th 394, 408 (2016). In making this determination, "the court is not limited to examining the allegations of the complaint alone but rather considers the pleadings and the factual material submitted in connection with the special motion to strike." Id.

The Court finds the gravamen of Beyond Blond's claims is that Defendants allegedly falsely represented to others that Beyond Blond

7

infringed their copyright and trademark, leading to the suspension of Beyond Blond's Amazon account. This occurred through communications to two main parties: takedown notices issued to Amazon, FAC ¶ 18, and emails sent to Warner Brothers, who then contacted Amazon, Opp'n at 15. There are other actions that occurred, such as Defendants' filing of a trademark application, but the Court focuses on these two sets of communications for the state law claims as the apparent "direct and proximate cause of damage to Beyond Blond because Amazon relied on those bad faith notices and disabled Beyond Blond's seven videos and, on information and belief, issued strikes against Beyond Blond's account." FAC ¶ 33.

Having identified the underlying activities, the Court must decide whether the activities are protected under the anti-SLAPP statute. Defendants contend the communications to Amazon and Warner Brothers are protected under the second prong of section 425.16(e).

2. Protected Activity Made in Connection With an Issue Under Review by a Judicial Body

Protected activity includes statements or writings "made in connection with an issue under consideration or review by a . . . judicial body." Cal. Civ. Proc. Code § 425.16(e)(2). "[A] statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." Neville v. Chudacoff, 160 Cal. App. 4th 1255, 1266 (2008). This includes statements made to "persons who are not parties or potential parties to litigation, provided such statements are made 'in connection with' pending or anticipated litigation." Id. at 1270.

In determining whether speech is protected, courts look to the litigation privilege as an aid in construing the scope of section 425.16(e)(2) because "the two statutes serve similar policy interests." Id. at 1263. The litigation privilege attaches to prelitigation statements when "imminent access to the courts is seriously

8

proposed by a party in good faith for the purpose of resolving a dispute, and not when a threat of litigation is made merely as a means of obtaining a settlement." Edwards v. Centex Real Estate Corp., 53 Cal. App. 4th 15, 36 (1997). Statements are not privileged if a party cannot establish "anything more than the mere *possibility* that [a party] might consider litigation." Id. at 39.

### 3. Communication with Amazon

Beyond Blond argues Defendants' communications with Amazon are not protected because (1) litigation was not seriously proposed by Defendants, demonstrated by the fact Defendants did not sue for months and (2) Defendants informed Amazon it was "forced to aggressively defend its IP" after being sued by Beyond Blond. Opp'n at 8-9.

Several district courts have addressed statements made to Amazon or similar platforms with allegations of infringement in the anti-SLAPP context. In TP Link USA Corp. v. Careful Shopper LLC, No. 8:19-cv-00082-JLS (KES), 2020 WL 3063956, at *1 (C.D. Cal. Mar. 23, 2020), reconsideration denied, No. 8:19-cv-00082-JLS (KES), 2020 WL 4353678 (C.D. Cal. June 30, 2020), TP Link sent a notice of infringement to Amazon relating to allegedly counterfeit TP Link branded products that Careful Shopper, a third-party seller, was selling on the platform. Amazon removed Careful Shopper's products from the platform and Careful Shopper claimed the reporting was "malicious" and "intentional." Id. at *2.

In looking to other district court decisions such as Sparrow LLC v. Lora, No. 2:14-cv-1188-MWF (JCX), 2014 WL 12573525, at *1 (C.D. Cal. Dec. 4, 2014) and Fitbit, Inc. v. Laguna 2, LLC, No. 17-cv-00079-EMC, 2018 WL 306724, at *1 (N.D. Cal. Jan. 5, 2018), the court in TP Link found the notices were covered by the litigation privilege because the "communications are related to the substantive issues of this litigation, and . . . the thrust or gravamen of Defendant's counterclaims [was] litigation conduct falling within the anti-SLAPP statute." Id. at *7. The court held "the communications were clearly made to a party

9

with an interest in this litigation, as this dispute concerns the propriety of activity that Amazon facilitates on its amazon.com marketplace platform." Id.

In Thimes Sols. Inc. v. TP Link USA Corp., No. CV 19-10374 PA (EX), 2020 WL 4353681, at *1 (C.D. Cal. June 8, 2020), TP Link again submitted written complaints to Amazon, alleging Thimes Solutions had infringed its intellectual property. The court found the complaints to Amazon constituted prelitigation communications, stating "[t]he essence of Plaintiff's claims is that Defendants wrongly complained to Amazon that Plaintiff was selling counterfeit TP Link products," so the substance of the complaint "unequivocally related to the substantive issues of [that] litigation." Id. at *6. The court further held "Defendants directed their communications to Amazon, who is a party with an interest in this litigation because this case concerns activity that Amazon facilitates on its marketplace platform." Id.

The Court finds the reasoning of these decisions is applicable and dictates the same result here. The notices to Amazon are the basis of the state law claims in this litigation. See FAC ¶ 33 ("Defendants' misconduct in their false and baseless takedown notices are a direct and proximate cause of damage to Beyond Blond because Amazon relied on those bad faith notices and disabled Beyond Blond's seven videos and, on information and belief, issued strikes against Beyond Blond's account."). Amazon has an interest in this litigation "because this case concerns activity that Amazon facilitates on its marketplace platform." Thimes Sols. Inc., 2020 WL 4353681, at *6. Defendants' submission of takedown notices is therefore protected prelitigation activity.

Beyond Blond argues Defendants did not seriously consider litigation because they did not file suit within several months of filing the takedown notice. Opp'n at 8-9. But Defendants' counsel responded to Beyond Blond's counsel the same day counsel reached out regarding the takedown notices, stating "Should BB Productions not immediately address our client's concerns, we will pursue all available remedies. . . .

10

The demands asserted herein are with full reservation of all rights and remedies that our client may possess." FAC Ex. B.

Although Defendants did not immediately sue after April 6, 2020, when counsel requested confirmation that Beyond Blond would stop using "CARTOON CLASSICS and our client's copyrighted design," id., Defendants were still engaged in the appeals process with Amazon, which was not resolved until May 19, 2020. Id. ¶ 28. Beyond Blond brought suit about a month later, and Defendants promptly counterclaimed after the resolution of their motion to dismiss. Dkt. 35. The communications in this case demonstrate Defendants contacted Amazon in good faith contemplation of litigation. Visto Corp. v. Sproqit Techs., Inc., 360 F. Supp. 2d 1064, 1068-69 (N.D. Cal. 2005) ("It is the *contemplation* of litigation that must be in good faith, not the merits of the actual litigation itself that animates the litigation privilege.").

Beyond Blond argues Defendants issued the takedown notices in bad faith, Opp'n at 1, but this does not change the analysis. California's litigation privilege is an "absolute" privilege and is not subject to qualification based on the subjective motives of a party. Silberg v. Anderson, 50 Cal. 3d 205, 215 (1990), as modified (Mar. 12, 1990); Mansell v. Otto, 108 Cal. App. 4th 265, n.47 (2003) ("[T]he presence or absence of malice or good or bad faith is irrelevant to the inquiry whether the litigation privilege is applicable.").

4. Communication with Warner Brothers

Beyond Blond claims Heldman's communications with Warner Brothers are not protected because (1) the litigation privilege "does not apply where publication is to persons in no way connected with the proceeding" and (2) the communications involved issues unrelated to this lawsuit. Opp'n at 15. The litigation privilege does not apply if the communication is made with one "in no way connected with the proceeding." Susan A. v. County of Sonoma, 2 Cal. App. 4th 88, 93-94 (1991) (quoting Financial Corp. of Am. v. Wilburn, 189 Cal. App. 3d 764, 778 (1987)). The privilege "will thus extend to non-litigants only if

11

they possess a 'substantial interest in the outcome of the litigation,' making them 'authorized participants' for purposes of the litigation privilege." Env't Furniture Inc. v. Bina, No. CV 09-7978 PSG (JCX), 2010 WL 11549403, at *8 (C.D. Cal. Aug. 10, 2010).

In Neville, 160 Cal. App. 4th at 1259, an employer fired an employee after discovering the employee had been misappropriating customer lists and stealing customers. The employer sent a letter to its customers warning them of the employee's conduct. Id. at 1260. The employer then sued the employee. Id. The employee counterclaimed for defamation and joined the employer's attorney, who had drafted the letter, as a defendant. Id. The employer's attorney moved to strike the defamation claim under the anti-SLAPP statute, arguing his speech was protected. Id. at 1261. The Court of Appeal agreed, stating the litigation privilege "has been held to protect statements to persons who are not parties or potential parties to litigation, provided such statements are made 'in connection with' pending or anticipated litigation." Id. at 1270.

The statements made to Warner Brothers were similarly "in connection with" the anticipated litigation within the scope of section 425.16(e)(2). The communications to Warner Brothers concerned its own copyright, not whether Beyond Blond infringed Defendants' copyright or trademarks. Heldman explained in a follow up email to Goold that he was interested in discovering if Beyond Blond was infringing Warner Brothers' copyright because "it gives me further argument for my 'good faith' belief w/ 512(f)." This demonstrates Heldman reached out to Warner Brothers to clarifying issues connected with this litigation.

Further, Warner Brothers has an interest in the outcome of this litigation. Env't Furniture Inc., 2010 WL 11549403, at *8. Although Warner Brothers has no interest in whether Beyond Blond did or did not infringe Defendants' intellectual property, the resolution of those issues also involves whether Beyond Blond's videos were in the public domain, which necessarily includes whether Warner Brothers had an existing copyright for the footage. See FAC ¶ 19 ("The takedown

notices were objectively and subjectively meritless and in bad faith because the cartoon classics videos were obtained from the public domain and could not have infringed Defendants' copyrights as they were independently compiled."). The communications were made to a party with an interest in the litigation and were connected to the issues in the litigation, and therefore are privileged.

### C. Second Prong: Probability of Prevailing on the Merits

Because the challenged communications are sufficiently related to this litigation and were made to parties with an interest in the litigation, they are within the coverage of California's litigation privilege. See Fitbit, 2018 WL 306724, at *9 (applying the litigation privilege to strike similar counterclaims arising out of pre-litigation communications); Visto Corp., 360 F. Supp. 2d at 1068-73 (same); Microsoft Corp. v. M. Media, No. CV-17-347-MWF (AJWx), 2018 WL 5094969, at *7 (C.D. Cal. Mar. 13, 2018) (collecting cases) (noting the litigation privilege frequently encompasses communications found within the scope of § 425.16). And the litigation privilege is intended to protect the sort of communication at issue here, the reporting of suspected wrongdoing to a party capable of halting or remedying it. See Kashian v. Harriman, 98 Cal. App. 4th 899, 926 (2002).

Ordinarily, granting a motion to strike claims from a pleading without granting leave to amend would "directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." Verizon Delaware, Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir. 2004). But "[a]bsent pleading entirely new [claims] premised on entirely different allegations, [Beyond Blond] cannot possibly remedy [its] claims." Microsoft Corp., 2018 WL 5094969, at *7; see also Grant & Eisenhofer, P.A. v. Brown, No. CV175968PSGPJWX, 2017 WL 6343506, at *9 (C.D. Cal. Dec. 6, 2017) (declining to grant leave to amend where claims were not dismissed due to inadequate pleading, but instead were "stricken pursuant to the anti–SLAPP statute because the underlying conduct [was] both protected activity and subject to California's litigation privilege.).

13

Beyond Blond's state law claims are barred and are DISMISSED without leave to amend.

### D. Attorneys' Fees

A party that succeeds in bringing a special anti-SLAPP motion to strike is entitled to recover the attorney's fees and costs associated with the motion. Cal. Civ. Proc. Code § 425.16(c)(1); U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 973 (9th Cir. 1999).

## IV. CONCLUSION

Defendants' Motion to Strike is GRANTED. Beyond Blond's state law claims are DISMISSED without leave to amend. Defendants may submit a request for fees in a properly noticed motion filed no later than February 22, 2021.

IT IS SO ORDERED.

Date: February 8, 2021

Dale S. Fischer
United States District Judge