Milord A. Keshishian, SBN 197835
milord@milordlaw.com
Stephanie V. Trice, SBN 324944
stephanie@milordlaw.com
MILORD & ASSOCIATES, P.C.
10517 West Pico Boulevard
Los Angeles, California 90064
Tel: (310) 226-7878
Fax: (310) 226-7879

Attorneys for Plaintiff
Beyond Blond Productions, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BEYOND BLOND PRODUCTIONS, LLC, a California limited liability company;<br><br>Plaintiff,<br><br>vs.<br><br>EDWARD HELDMAN III, an individual; COMEDYMX, INC., a Nevada corporation; COMEDYMX, LLC, a Delaware limited liability company; and DOES 1-10;<br><br>Defendants.<br><br>And Related Counterclaims and Third-Party Claims | CASE NO.:  2:20-cv-05581 DSF (GJSx)<br><br>**BEYOND BLOND AND MICHELLE JUSTICE'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIMS AND THIRD-PARTY COMPLAINT (ECF NO. 138)**<br><br>Date:      September 27, 2021<br>Time:      1:30 p.m.<br>Location:  Courtroom 7D<br>           350 West 1st Street<br>           Los Angeles, California 90012 |

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

## REQUEST FOR JUDICIAL NOTICE

Beyond Blond hereby requests, pursuant to Rule 201 of the Federal Rules of Evidence and authorities cited below, that the Court take judicial notice of the following, in conjunction with its Motion to Dismiss, or in the alternative, Motion for Summary Adjudication of Non-Infringement:

1. U.S. Application Serial No. 88/789,484, CARTOON CLASSICS! + Design, Applicant ComedyMX LLC, USPTO May 5, 2020 Examiner's Amendment, a true and correct copy is attached hereto as **EXHIBIT 1**.

2. Copyright Office Public Catalog record Registration No. PAu003798644 for Motion Picture, 8thManDVD Copyright Video 1, et al., Copyright Claimant ComedyMX LLC, a true and correct copy attached hereto as **EXHIBIT 2**.

3. U.S. Copyright Office's May 16, 2019 decision refusing to register Major League Soccer's claimed copyright in its stylized Los Angeles Football Club design artwork (Letter from Karyn A. Temple, et al., U.S. Copyright Review Board, to Deborah Shapiro, attorney for Major League Soccer, re "Los Angeles Football Club LA and Shield Design" and "LA and Wing Design"; Correspondence IDs: 1-2UDR428 and 1-2UF4TM3; SRs: 1-5049820731 and 1-5050305254, a true and correct copy attached hereto as **EXHIBIT 3**.

4. U.S. Copyright Office's April 25, 2016 decision refusing to register K'NEX Limited Partnership Group's claimed copyright in its "Bug Eyes (7091)" artwork (Letter from Chris Weston, Copyright Office Review Board Member, to Fritz Schweitzer, Jr., attorney for K'NEX, re "Bug Eyes (7091)," Correspondence ID: 1-M9MD6N, a true and correct copy attached hereto as **EXHIBIT 4**.

5. *Edward Heldman III, et al. v. Larry Zerner*, United States District Court, Central District of California, Case No. 2:19-cv-08185 GW (PJW), First Amended Complaint, a true and correct copy attached hereto as **EXHIBIT 5**.

-1-

6.    Trademark Electronic Search System Record - U.S. Application Serial No. 75/688,188 (Abandoned), CARTOON "ANIMATION" USA + Design, a true and correct copy attached hereto as **EXHIBIT 6**.

7.    Trademark Electronic Search System Record - U.S. Registration No. 1,838,259 (Cancelled), CARTOON CLASSICS + Design, a true and correct copy attached hereto as **EXHIBIT 7**.

8.    Trademark Electronic Search System Record - U.S. Application No. 75/431,774 (Abandoned), CARTOON CAFE + Design, a true and correct copy attached hereto as **EXHIBIT 8**.

9.    Trademark Electronic Search System Record - U.S. Registration No. 1,580,771 (Cancelled), CARTOON CORNER + Design, a true and correct copy attached hereto as **EXHIBIT 9**.

10.    Trademark Electronic Search System Record - U.S. Registration No. 3,509,322 (Cancelled), PETER MILLAR'S DRAG CARTOONS + Design, a true and correct copy attached hereto as **EXHIBIT 10**.

11.    Trademark Electronic Search System Record - U.S. Application No. 75/423,504 (Abandoned), CARTOON MADNESS + Design, a true and correct copy attached hereto as **EXHIBIT 11**.

12.    Trademark Electronic Search System Record - U.S. Registration No. 1,942,566 (Cancelled), THE CARTOON QUARTERLY + Design, a true and correct copy attached hereto as **EXHIBIT 12**.

13.    Trademark Electronic Search System Record - U.S. Registration No. 1,061,294 (Expired), OO-ZOO + Design, a true and correct copy attached hereto as **EXHIBIT 13**.

14.    U.S. Application Serial No. 78/367211, "Brawny Cartoon Classics" trademark, Applicant Fort James Operating Company, USPTO September 17, 2004 Office Action, a true and correct copy is attached hereto as **EXHIBIT 14**, requiring disclaimer of "cartoon classics" because the

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

-2-

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

1 "wording is merely descriptive because the goods feature scenes of cartoon

2 classics, a term of arty synonymous with classic cartoons."

3 15. U.S. Application Serial No. 88/789,484, CARTOON CLASSICS! + Design,

4 Applicant ComedyMX LLC, USPTO May 5, 2020 Examiner's NOTE TO

5 THE FILE, a true and correct copy is attached hereto as **EXHIBIT 15**,

6 providing Trademark Examining Attorney's communications with counsel

7 regarding disclaimer of "cartoon classics" as unprotectable, wherein

8 Applicant fails to disclose design uses off-the-shelf Freestyle Script font and

9 generic eye design copied from clipart.

10 16. March 26, 2020, 11:29 a.m. email from Counsel for Beyond Blond and

11 Michelle Justice to Counsel for ComedyMX LLC, a true and correct copy is

12 attached hereto as **EXHIBIT 16**, regarding ComedyMX LLC's takedown

13 notices, requesting copyright registrations and deposit materials, and

14 ComedyMX LLC's pre-notification investigation report.

15 17. March 26, 2020, 7:10 p.m. email response from ComedyMX LLC's counsel

16 to Counsel for Beyond Blond and Michelle Justice, a true and correct copy is

17 attached hereto as **EXHIBIT 17**, regarding ComedyMX LLC's contention

18 that Beyond Blond is infringing its trademark application and copyright

19 registrations.

20 18. March 27, 2020, 7:48 p.m. email from Counsel for Beyond Blond and

21 Michelle Justice to Counsel for ComedyMX LLC, a true and correct copy is

22 attached hereto as **EXHIBIT 18**, regarding ComedyMX LLC's contention

23 that Beyond Blond is infringing its trademark application and copyright

24 registrations, and agreeing not to depict eyes in the term cartoon.

25 19. March 31, 2020, 5:57 p.m. Beyond Blond DMCA Counter Notice, a true and

26 correct copy is attached hereto as **EXHIBIT 19**, providing Beyond Blond's

27 contention that it is not infringing ComedyMX LLC's trademark application

28 or copyright registrations.

**BEYOND BLOND AND MICHELLE JUSTICE'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR MOTION TO DISMISS**

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

20.   Amazon.com website search for "cartoon classics" last accessed August 27, 2021, https://www.amazon.com/s?k=cartoon+classics&ref=nb_sb_noss_2, a true and correct copy is attached hereto as **EXHIBIT 20**, regarding Beyond Blond's use of the term "cartoon classics" for its online stream-able videos.

21.   Amazon.com website search of ComedyMX LLC's titles on Amazon prior to 2020-2021, a true and correct copy is attached hereto as **EXHIBIT 21**, showing that Defendants' videos are not branded under the "Cartoon Classics" title – but under Looney Toons.  All the watermarks on these cartoons are only on the title and end cards and that the watermark is 8thmandvd.com.  The videos do not include the "cartoon classics" term.

22.   Amazon Prime Video of Defendants' video entitled, "Clip: The BIGGEST LOONEY TUNES 1939-1943 Golden-Era Collection Vol. 1," a true and correct copy is attached hereto as **EXHIBIT 22**, regarding Defendants' trademark in 8thmandvd.com, with no showing of the term "cartoon classics" anywhere in the video.

23.   Amazon Prime Video of Defendants' video entitled, "BUGS BUNNY Looney Tunes Cartoons 1942-1943 Golden-Era Collection," a true and correct copy is attached hereto as **EXHIBIT 23**, regarding Defendants' trademark in 8thmandvd.com, with no showing of the term "cartoon classics" anywhere in the video.

24.   Amazon Prime Video Page of Defendants' video entitled, "Clip: The BIGGEST LOONEY TUNES 1937-1943 Golden-Era Collection Vol. 2," a true and correct copy is attached hereto as **EXHIBIT 24**, regarding Defendants' failure to include the term "cartoon classics" anywhere in the video, and showing the video is not available for viewing within the United States.

25.   CoopFlaired font, a true and correct copy is attached hereto as **EXHIBIT 25**, showing that Beyond Blond independently created its "cartoon classics"

**BEYOND BLOND AND MICHELLE JUSTICE'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR MOTION TO DISMISS**

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

logo and showing that Beyond Blond did not use or infringe Defendants' generic design.

26. Freestyle Script Bold Regular font, a true and correct copy is attached hereto as **EXHIBIT 26**, showing that Defendants did not create its generic design, and that its generic design is publicly available.

27. Eyeballs clipart pair eye, a true and correct copy is attached hereto as **EXHIBIT 27**, showing that Defendants' generic design is publicly available and not distinctive nor generic.

28. Trademark Electronic Search System Record - U.S. Registration No. 5,059,117 (LIVE), 8thManDVD.com, a true and correct copy attached hereto as **EXHIBIT 28**.

29. YouTube video screenshot, "8thManDVD Cartoon Classics 2016 Intro", https://www.youtube.com/watch?v=aqsel9UwvQM (last visited August 29, 2021), a true and correct copy is attached hereto as **EXHIBIT 29**, showing Defendants' generic "cartoon classics" design does not include eyes in the "o's" of cartoon.

30. YouTube video entitled, "LOONEY TUNES (Looney Toons): DAFFY DUCK, PORKY PIG - The Henpecked Duck (1941)(Remastered)(HD 1080p)", https://www.youtube.com/watch?v=74r-wcc7vrA&list=PLhGipfv0juZUOvSTPX1Pa2GB17B0p4P_i (last visited August 30, 2021), a true and correct copy is attached hereto as **EXHIBIT 30**, showing Defendants' generic "cartoon classics" design is a descriptor of 8thManDVD.com's content.

## BASIS FOR REQUESTING JUDICIAL NOTICE

Federal Rule of Evidence 201 permits courts to take judicial notice of any fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination

-5-

by resort to sources whose accuracy cannot reasonably questioned."  Fed. R. Evid. 201(b); *See also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"), overruled on other grounds by 307 F.3d 1119, 1125-26 (9th Cir. 2002).

The Ninth Circuit has recognized that "matters of public record," include the "[r]ecords and reports of administrative bodies."  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).  It accordingly has taken judicial notice of Copyright Office records in the past. *See, e.g., Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008) (taking judicial notice of Copyright Office records reflecting the registered owners of certain copyrighted songs); *Oroamerica, Inc. v. D & W Jewelry Co.*, 10 Fed. App'x 516, n.4 (9th Cir. 2001) (taking judicial notice of Copyright Office registration certificate); *see also Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953) (courts "may take judicial notice of records and reports of administrative bodies"); *Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 897 F.2d 511, 514 n.3 (Fed. Cir. 1990) (taking judicial notice of office action in patent reexamination); *Telebrands Corp. v. Del Laboratories, Inc.*, 719 F. Supp. 2d 283 (S.D.N.Y. 2010) (a court "may properly take judicial notice of official records of the United States Patent and Trademark Office and the United States Copyright Office").

**USPTO and Copyright Office Public Records**

Judicial notice of the Examiner's Amendment (**EXHIBIT 1**), Copyright Office Public Catalog record (**EXHIBIT 2**), the Trademark Electronic Search System Records (**EXHIBITS 6-13, 28**), the USPTO's September 17, 2004 Office Action (**EXHIBIT 14**), and the USPTO's Examiner's NOTE TO THE FILE (**EXHIBIT 15**) are appropriate because the documents are public records retrieved from the USPTO Trademark Status & Document Retrieval (TSDR) portal located at tsdr.uspto.gov, Copyright Office Public Catalog located at cocatalog.loc.gov, and USPTO Trademark Electronic Search System

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

-6-

(TESS) located at tmsearch.uspto.gov, respectively. *Autodesk, Inc. v. Dassault Sys. SolidWorks Corp.*, No. 08-04397, 2008 WL 6742224, at *2 n.1 (N.D. Cal. Dec. 18, 2008) (taking judicial notice of trademark registrations and applications publicly available on USPTO website); *Idema v. Dreamworks, Inc.*, 90 F. App'x 496, 498 (9th Cir. 2003), as amended on denial of reh'g (Mar. 9, 2004) ("[A] copyright registration . . . is the sort as to which judicial notice is appropriate.") (citing Fed. R. Evid. 201(b)(2)).

**Copyright Office Review Board Decisions**

Judicial notice of the Copyright Office Review Board Decisions (**EXHIBITS 3-4**) are particularly appropriate because the Copyright Office's refusal to register the cited logos and graphic designs go to the heart of Beyond Blond's Motion to Dismiss. Namely, the decisions directly contradict Defendants' position that it has a valid registration in the generic cartoon classics design because the opinions therein prove the Copyright Office routinely rejects registration for such graphic designs. Accordingly, the Court can give these judicially noticeable opinions some persuasive weight. *United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 2175, 150 L.Ed.2d 292 (2001) (noting that even where an agency's interpretation of law is not entitled to highly deferential treatment pursuant to *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), "an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency" (*quoting Skidmore v. Swift & Co.*, 323 U.S. 134, 139, 65 S.Ct. 161, 89 L.Ed. 124 (1944))). The Ninth Circuit has specifically held that courts should defer to U.S. Copyright Office opinion letters, such as those provided here, when they "have the 'power to persuade.'" *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1042 (9th Cir. 2014) (giving deference to a U.S. Copyright Office opinion letter and adopting its reasoning) (*quoting Christensen v. Harris Cnty.*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

-7-

1  (2000)).

2

3  **Proceedings in Other Courts**

4        The Court may take judicial notice of proceedings in other courts.  U.*S. ex rel*

5  *Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)

6  (citing *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169 (10th Cir. 1979)) ("[W]e

7  'may take notice of proceedings in other courts, both within and without the federal

8  judicial system, if those proceedings have a direct relation to matters at issue.'").  Judicial

9  notice of **EXHIBIT 5** is appropriate as set forth in *U.S. ex rel Robinson Rancheria*

10  *Citizens Council* because it reflects a proceeding in the United States District Court,

11  Central District of California and has a direct relation to the matters at issue because it

12  shows Defendants are aware that loss of rankings and reviews cause irreparable harm.

13

14  **Documents Referenced in Defendants' Counterclaims and Third-Party Complaint**

15        The Court may consider "documents incorporated into the complaint by

16  reference."  *Prime Healthcare Servs., Inc. v. Humana Ins. Co.*, 230 F. Supp. 3d 1194,

17  1203 (C.D. Cal. 2017); *accord Lee v. City of L. A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).

18  "[A] court may consider 'documents whose contents are alleged in a complaint and

19  whose authenticity no party questions, but which are not physically attached to the

20  pleading' without converting a motion to dismiss under Rule 12(b)(6) into a motion for

21  summary judgment.'"  *Antiaging Institute of California, Inc. v. Solonova*, LLC, No. 15-

22  03416-AB (FFMx), 2015 WL 12792028, at *1 (C.D. Cal. Nov. 19, 2015) (citing *Branch*

23  *v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v.*

24  *Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).  The incorporation by reference

25  doctrine is permitted to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by

26  deliberately omitting references to documents upon which their claims are based."  *Id.*

27  (internal citations and quotations omitted).

28

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

-8-

Defendants' amended counterclaims all stem from their Lanham Act Section 43(a) unfair competition/false designation of origin claims.  Judicial notice of **EXHIBITS 16 – 19** is appropriate because these documents are referenced in Defendants' Counterclaims and Third-Party Complaint where Defendants allege they provided explicit notice to Beyond Blond regarding infringement.  ECF No. 138, ¶ 19 ("Despite ComedyMX LLC's explicit notice, BPP and MS. Justice willfully used and continues to use the Infringing trademark and profited from the infringement by misdirecting viewers, consumers and ad revenue to its business and away from ComedyMX LLC's services.").

Judicial notice of **EXHIBITS 20 –21** is appropriate because Defendants also allege that Beyond Blond "willfully and intentionally adopted and used marks confusingly similar to Counterclaimant's CARTOON CLASSICS! (+Eyes Design) trademark and designation to steal Counterclaimant's goodwill" yet Beyond Blond's videos include the words "cartoon classics" with the cartoon eyes, while Defendants' videos do not include the words "cartoon classics" at all.  ECF No. 138, ¶¶ 24, 29.

Judicial notice of **EXHIBITS 22-24, 29, 30** is appropriate because Defendants allege "Comedy MX LLC is engaged in the business of providing entertainment goods and services including, without limitation, providing online streaming videos featuring, *inter alia*, cartoons."  ECF No. 138, ¶ 10.  These exhibits include videos, which are provided to evidence the existence of Defendants' videos on Amazon.com without use of the "cartoon classics" generic design, and only using the 8thManDVD.com trademark. *See Lacoste v. Keem*, No. 20-cv-02323-RGK-JPR, 2020 WL 5239110, at *3 n.3-4 (C.D. Cal. June 23, 2020) ("The Court takes judicial notice of a video published to YouTube. . . .") (citing *Farrell v. Boing Emps. Credit Union*, 764 Fed. Appx. 682, 685 n.1 (9th Cir. 2019) (taking judicial notice of a website in the public realm)); *see also Opperman v. Kong Technologies, Inc.*, No. 13-cv-00453-JST, 2017 WL 3149295, at *4 ("Because Exhs. B, O, P, Q, and R are available to the public on Apple's website, the website's authenticity is not in dispute, and the exhibits 'are capable of accurate and ready determination,' the Court may take judicial notice of this information.") (citing *Prime*

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

-9-

*Healthcare Servs., Inc., v. Humana Ins. Co.*, No. 16–01097–BRO (JEMx), 2017 WL 738586, at \*3 (C.D. Cal. Jan. 27, 2017)).

Judicial notice of **EXHIBITS 25 - 27** is appropriate because Defendants allege, "Registration on the principal registration is *prima facie* evidence that a trademark is distinctive and not generic. ECF No. 138 ¶ 12. Defendants do not make any further allegations regarding the mark being distinct or generic.

<div align="center">

**CONCLUSION**

</div>

For the foregoing reasons, **EXHIBITS 1-28** may be properly considered by the Court in ruling on Beyond Blond and Michelle Justice's Motion to Dismiss Defendants' Amended Counterclaims and Third-Party Complaint.

Dated: August 30, 2021            Respectfully submitted,

**MILORD & ASSOCIATES, P.C.**

By: /s/ Milord A. Keshishian
Milord A. Keshishian
Attorneys for Plaintiff
BEYOND BLOND PRODUCTIONS, LLC

MILORD & ASSOCIATES, PC
10517 West Pico Boulevard
Los Angeles, CA 90064
(310) 226-7878

-10-

EXHIBIT 1

| To: | ComedyMX LLC (jmandour@mandourlaw.com) |
| --- | --- |
| **Subject:** | U.S. Trademark Application Serial No. 88789484 - CARTOON CLASSICS! - 6249.02-005 |
| **Sent:** | May 05, 2020 06:02:00 PM |
| **Sent As:** | ecom122@uspto.gov |
| **Attachments:** | |

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 88789484

**Mark:** CARTOON CLASSICS!

**Correspondence Address:**

JOSEPH A. MANDOUR
MANDOUR & ASSOCIATES, APC
8605 SANTA MONICA BLVD., SUITE 1500
LOS ANGELES, CA 90069

**Applicant:** ComedyMX LLC

**Reference/Docket No.** 6249.02-005

**Correspondence Email Address:**

jmandour@mandourlaw.com

# EXAMINER'S AMENDMENT

**Issue date: May 05, 2020**

**USPTO database searched; no conflicting marks found.** The trademark examining attorney searched the USPTO database of registered and pending marks and found no conflicting marks that would bar registration under Trademark Act Section 2(d). 15 U.S.C. §1052(d); TMEP §704.02.

**Application has been amended as shown below.** As agreed to by Lindsey Olson Diefenbach on 05/05/2020, the examining attorney has amended the application as shown below. Please notify the examining attorney immediately of any objections. TMEP §707. Otherwise, no response is required. *Id.* In addition, applicant is advised that amendments to the goods and/or services are permitted only if they clarify or limit them; amendments that add to or broaden the scope of the goods and/or services are not permitted. 37 C.F.R. §2.71(a).

The following disclaimer statement is added to the record:

No claim is made to the exclusive right to use "CARTOON CLASSICS" apart from the mark as shown.

*See* 15 U.S.C. §1056(a); TMEP §§1213, 1213.03(c), 1213.08(a)(i).

/John Salcido/
John Salcido
Examining Attorney
Law Office 122
571-272-7549
John.Salcido@uspto.gov

| | |
|---|---|
| **To:** | ComedyMX LLC (jmandour@mandourlaw.com) |
| **Subject:** | U.S. Trademark Application Serial No. 88789484 - CARTOON CLASSICS! - 6249.02-005 |
| **Sent:** | May 05, 2020 06:02:00 PM |
| **Sent As:** | ecom122@uspto.gov |
| **Attachments:** | |

### United States Patent and Trademark Office (USPTO)

## USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on **May 05, 2020** for
**U.S. Trademark Application Serial No. 88789484**

Your trademark application has been reviewed by a trademark examining attorney.  As part of that review, the assigned attorney has issued an official letter.  Please follow the steps below.

**(1)  Read the official letter.**  No response is necessary.

**(2)  Direct questions** about the contents of the Office action to the assigned attorney below.

/John Salcido/
John Salcido
Examining Attorney
Law Office 122
571-272-7549
John.Salcido@uspto.gov

Direct questions about navigating USPTO electronic forms, the USPTO website, the application process, the status of your application, and/or whether there are outstanding deadlines or documents related to your file to the Trademark Assistance Center (TAC).

## GENERAL GUIDANCE

· **Check the status** of your application periodically in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

· **Update your correspondence email address**, if needed, to ensure you receive important USPTO notices about your application.

· **Beware of misleading notices sent by private companies about your application.**  Private companies not associated with the USPTO use public information available in trademark registrations to mail and email trademark-related offers and notices – most of which require fees.  All **official USPTO correspondence** will only be **emailed from the domain "@uspto.gov."**

EXHIBIT 2



Library buildings are closed to the public until further notice, but the U.S.
Copyright Office Catalog is available. More.

| Help | Search | History | Titles | Start Over |

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = PAu003798644
Search Results: Displaying 1 of 1 entries



Labeled View

***8thManDVD Copyright Video 1, et al.***

| | |
|---:|:---|
| **Type of Work:** | Motion Picture |
| **Registration Number / Date:** | PAu003798644 / 2016-01-26 |
| **Application Title:** | 8thManDVD Copyright Video 1, et al. |
| **Title:** | 8thManDVD Copyright Video 1, et al. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | ComedyMX LLC. Address: P.O. Box 896, Pine Brook, NJ, 07058, United States. |
| **Date of Creation:** | 2016 |
| **Authorship on Application:** | ComedyMX LLC, employer for hire; Citizenship: United States. Authorship: entire motion picture. |
| **Rights and Permissions:** | ComedyMX LLC, P.O. Box 896, Pine Brook, NJ, 07058, United States |
| **Copyright Note:** | Basis for Registration: Unpublished collection. |
| **Contents:** | 8thManDVD Copyright Video 1. |
| | 8thManDVD Copyright Video 2. |
| | 8thManDVD Copyright Video 3. |
| | 8thManDVD Copyright Video 4. |
| | 8thManDVD Copyright Video 5. |
| | 8thManDVD Copyright Video 6. |
| | 8thManDVD Intro Video 1. |
| | 8thManDVD Intro Video 2. |
| | 8thManDVD Intro Video 3. |
| | 8thManDVD Intro Video 4. |
| | 8thManDVD Intro Video 5. |
| | 8thManDVD Intro Video 6. |
| | 8thManDVD Title Card 1. |
| | 8thManDVD Title Card 2. |
| | 8thManDVD Title Card 3. |

pg. 16

8thManDVD Title Card 4.

8thManDVD Title Card 5.

8thManDVD Title Card 6.

8thManDVD Title Card 7.

8thManDVD Title Card 8.

8thManDVD Title Card 9.

8thManDVD Title Card 10.

8thManDVD Title Card 11.

8thManDVD Title Card 12.

**Names:** ComedyMX LLC



| Save, Print and Email (**Help Page**) | | |
|---|---|---|
| Select Download Format  Full Record | Format for Print/Save | |
| Enter your email address: | | Email |

Help    Search    History    Titles    Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page

pg. 17

EXHIBIT 3



**United States Copyright Office**

Library of Congress · 101 Independence Avenue SE · Washington, DC 20559-6000 · www.copyright.gov

May 16, 2019

Deborah Shapiro, Esq.
Moses & Singer LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-1299

> **Re:** **Second Request for Reconsideration of Refusal to Register "Los Angeles Football Club LA and Shield Design" and "LA and Wing Design"; Correspondence IDs: 1-2UDR428 and 1-2UF4TM3; SRs: 1-5049820731 and 1-5050305254**

Dear Ms. Shapiro:

The Review Board of the United States Copyright Office ("Board") has considered Major League Soccer, LLC's ("MLS's") second request for reconsideration of the Registration Program's refusal to register two-dimensional artwork claims in the works titled "Los Angeles Football Club LA and Shield Design" and "LA and Wing Design" (collectively, the "Works"). After reviewing the applications, deposit copies, and relevant correspondence, along with the arguments in the second requests for reconsideration, the Board affirms the Registration Program's denials of registration.

## I.    DESCRIPTION OF THE WORK

The Works are two black and white graphic logo designs. The designs consist of the letters "L" and "A." The horizontal stroke of the letter "A" is extended into a wedge to depict a wing, with the left side being wider than the right. Thin white lines divide the wedge into four thick lines of varying lengths. In the "shield" version of the design, "LOS ANGELES" and "FOOTBALL CLUB" are featured above and below "LA," respectively. The entire graphic is centered within a heater shield, presented in outline form.

The Works are depicted as follows:

Los Angeles Football Club LA and Shield

LA and Wing Design





## II.    ADMINISTRATIVE RECORD

On May 4, 2017, MLS filed applications to register copyright claims in two-dimensional art for the Works.  In two separate May 19, 2017, letters, two Copyright Office registration specialists refused to register the claims, finding that they lacked sufficient creative authorship to support a copyright claim because "[c]opyright does not protect familiar symbols or designs; basic geometric shapes; words and short phrases such as names titles, and slogans; or mere variations of typographic ornamentation, lettering or coloring."  Letter from C. Stoner, Registration Specialist, U.S. Copyright Office, to Meredith Schorr, Moses & Singer LLP (May 19, 2017) (citing 37 C.F.R. § 202.1) (denying registration of Los Angeles Football Club LA and Shield Design); Letter from Kristen Sosinski, Registration Specialist, U.S. Copyright Office, to Meredith Schorr, Moses & Singer LLP (May 19, 2017) (citing 37 C.F.R. § 202.1) (denying registration of LA and Wing Design).

In two substantively identical letters dated August 18, 2017, MLS requested that the Copyright Office reconsider its initial refusal to register the Works, arguing that the Works "exceed[] the 'minimal' amount of creativity required for a copyrightable work."  Letters from David Rabinowitz, Moses & Singer LLP, to U.S. Copyright Office at 1 (Aug. 18, 2017) ("First Request").  Describing "the meaning and the thoughts behind the symbolism and imagery in the Work[s]," MLS argued that the Works contain "wholly original elements in an original combination."  Id. at 2, 4.  MLS further contended that the Office has registered works similar to the Works at issue.  Id. at 5.  After reviewing the Works in light of the points raised in the First Request, the Office re-evaluated the claims and again concluded that the Works "do[] not contain a sufficient amount of original and creative artistic or graphic authorship to support a copyright registration."  Letter from Stephanie Mason, Attorney-Advisor, U.S. Copyright Office, to Deborah Shapiro, Moses & Singer LLP (Jan. 11, 2018) (denying registration of Los Angeles Football Club LA and Shield Design) ("Jan. 11 Letter"); Letter from Stephanie Mason, Attorney-

Advisor, U.S. Copyright Office, to Deborah Shapiro, Moses & Singer LLP (Jan. 12, 2018) (denying registration of LA and Wing Design) ("Jan. 12 Letter"). For LA and Wing Design, the Office stated that "[t]his standard arrangement of two letters, combined with a slight modification of part of one of the letters into a graphic shape is a garden-variety logo configuration that simply does not exhibit the necessary creativity to support a claim of copyright." Jan. 12 Letter at 3. Likewise, for Los Angeles Football Club LA and Shield Design, the Office stated, "[p]ositioning a logo and team name within a common shape is a simple arrangement that does not exhibit the necessary creativity to support a claim of copyright." Jan. 11 Letter at 3.

In two substantively identical letters dated April 10, 2018, MLS requested that, pursuant to 37 C.F.R. § 202.5(c), the Copyright Office reconsider for a second time its refusal to register the Work. Letters from Deborah L. Shapiro, Moses & Singer LLP, to U.S. Copyright Office (Apr. 10, 2018) ("Second Request"). MLS argued that the Office "minimizes" the "inherent creativity" in the Works and "overlooks the apparent authorship which surely contains the modicum of creativity necessary to support a copyright registration." *Id*. at 4. MLS also emphasized that "[t]he wing is more than mere ornamentation to lettering" and is "separable from the characters 'LA,' further demonstrating that the Work[s] [are] entitled to copyright protection. *Id.* at 5.

## III.   DISCUSSION

### A.   *The Legal Framework– Originality*

A work may be registered if it qualifies as an "original work[] of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). In this context, the term "original" consists of two components: independent creation and sufficient creativity. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). First, the work must have been independently created by the author, *i.e.*, not copied from another work. *Id*. Second, the work must possess sufficient creativity. *Id*. Only a modicum of creativity is necessary, but the Supreme Court has ruled that some works (such as the alphabetized telephone directory at issue in *Feist*) fail to meet even this low threshold. *Id*. The Court observed that "[a]s a constitutional matter, copyright protects only those constituent elements of a work that possess more than a *de minimis* quantum of creativity." *Id.* at 363. It further found that there can be no copyright in a work in which "the creative spark is utterly lacking or so trivial as to be virtually nonexistent." *Id*. at 359.

The Office's regulations implement the longstanding requirement of originality set forth in the Copyright Act and described in the *Feist* decision. *See, e.g.*, 37 C.F.R. § 202.1(a) (prohibiting registration of "[w]ords and short phrases such as names, titles, slogans; familiar symbols or designs; [and] mere variations of typographic ornamentation, lettering, or coloring"); *id.* § 202.10(a) (stating "to be acceptable as a pictorial, graphic, or sculptural work, the work must embody some creative authorship in its delineation or form"). Some combinations of common or standard design elements may contain sufficient creativity with respect to how they are juxtaposed or arranged to support a copyright. Nevertheless, not every combination or arrangement will be sufficient to meet this test. *See Feist,* 499 U.S. at 358 (finding the Copyright Act "implies that some 'ways' [of selecting, coordinating, or arranging uncopyrightable material]

will trigger copyright, but that others will not"). A determination of copyrightability in the combination of standard design elements depends on whether the selection, coordination, or arrangement is done in such a way as to result in copyrightable authorship. *Id.*; *see also Atari Games Corp. v. Oman*, 888 F.2d 878 (D.C. Cir. 1989).

A mere simplistic arrangement of non-protectable elements does not demonstrate the level of creativity necessary to warrant protection. For example, the United States District Court for the Southern District of New York upheld the Copyright Office's refusal to register simple designs consisting of two linked letter "C" shapes "facing each other in a mirrored relationship" and two unlinked letter "C" shapes "in a mirrored relationship and positioned perpendicular to the linked elements." *Coach, Inc. v. Peters*, 386 F. Supp. 2d 495, 496 (S.D.N.Y. 2005). Likewise, the Ninth Circuit has held that a glass sculpture of a jellyfish consisting of clear glass, an oblong shroud, bright colors, vertical orientation, and the stereotypical jellyfish form did not merit copyright protection. *See Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). The language in *Satava* is particularly instructive:

> It is true, of course, that a combination of unprotectable elements may qualify for copyright protection. But it is not true that any combination of unprotectable elements automatically qualifies for copyright protection. Our case law suggests, and we hold today, that a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.

*Id.* (internal citations omitted).

Similarly, while the Office may register a work that consists of geometric shapes, for such a work to be registrable, the "author's use of those shapes [must] result[] in a work that, as a whole, is sufficiently creative." COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 906.1 (3d ed. 2017) ("COMPENDIUM (THIRD)"); *see also Atari Games Corp.*, 888 F.2d at 883 ("[S]imple shapes, when selected or combined in a distinctive manner indicating some ingenuity, have been accorded copyright protection both by the Register and in court."). Thus, the Office would register, for example, a wrapping paper design that consists of circles, triangles, and stars arranged in an unusual pattern with each element portrayed in a different color, but would not register a picture consisting merely of a purple background and evenly-spaced white circles. COMPENDIUM (THIRD) § 906.1.

Finally, Copyright Office registration specialists (and the Board) do not make aesthetic judgments in evaluating the copyrightability of particular works. They are not influenced by the attractiveness of a design, the espoused intentions of the author, the design's uniqueness, its visual effect or appearance, its symbolism, the time and effort it took to create, or its commercial success in the marketplace. *See* 17 U.S.C. § 102(b); *Bleistein v. Donaldson*, 188 U.S. 239 (1903). The fact that a work consists of a unique or distinctive shape or style for purposes of aesthetic appeal does not necessarily mean that the work, as a whole, constitutes a copyrightable work of art.

### B.   Analysis of the Work

After careful examination, the Board finds that the Works fail to satisfy the requirement of creative authorship and thus are not copyrightable.

It is undisputed that most of the Works' constituent elements—the heater shield, organization name, letters "L" and "A," and typeface —are not individually subject to copyright protection.  *See* Second Request at 3; *see also* 37 C.F.R. § 202.1(a) (listing "examples of works not subject to copyright" as including "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs" and "mere variations of typographic ornamentation, lettering or coloring"); *id.* at 202.1(e) (prohibiting registration of "familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring" and "[t]ypeface as typeface").  Nevertheless, MLS contends that the designs are sufficiently creative, pointing to the wing design appearing in the Works and arguing that the design itself constitutes separable "pictorial authorship, which is entitled to registration."  Second Request at 5 (citing COMPENDIUM (THIRD) § 906.2 ("To the extent that [typeface ornamentation that is separable from the typeface characters] represent works of pictorial authorship . . . they may be protected by copyright.).  In support of the wing design's separability, MLS contends, "federal trademark applications for several iterations of the wing design . . . were approved by the United States Patent and Trademark Office." *Id.*

The Board must disagree.  The wing design is not individually subject to copyright projection.  First, the stylized "A" appearing in the Works, which includes the wing design, is a trivial variation on a standard letter "A" that cannot be copyrighted "regardless of how novel and creative the shape and form of the typeface characters may be."  COMPENDIUM (THIRD) § 906.4; *see Eltra Corp. v. Ringer,* 579 F.2d 294, 298 (4th Cir. 1978) (finding the Copyright Office properly refused to register a typeface design and noting, "typeface has never been considered entitled to copyright").  In the letter "A" appearing in the Works at issue, the standard horizontal bar is replaced by a slanted geometric shape that splits into four thick lines.  Though meant to evoke a wing, the resulting design is a mere variation of typographic ornamentation and, does not constitute separable pictorial authorship.

Moreover, even if the four thick lines creating the wing shape were separable from the typeface character "A," the shape itself is not sufficiently creative to warrant copyright protection.  Similar to *John Muller & Co., Inc. v. N.Y. Arrows Soccer Team, Inc.*, the current case concerns an arrangement of basic geometric shapes.  802 F.2d 989, 990 (8th Cir. 1986).  That case involved a logo that consisted of "four angled lines which form an arrow and the word 'Arrows' in cursive script."  *Id.*  The four lines varied in size and were stacked from largest to smallest.  A reproduction of that logo is depicted below.



OPINION (Con't.)

APPENDIX A
9[[SEE ILLUSTRATION ON ORIGINAL]]

EOD

While some creative decision-making was exercised in the selection of the shapes, as they were not symmetrical—each line had a longer horizontal edge and a shorter diagonal edge—the Eighth Circuit upheld the Copyright Office's refusal to register the work and affirmed the district court's opinion that the "logo lacked the level of creativity needed for copyrightability." *Id.* Here, the wing ornamentation is just as simplistic. Both the "Arrow" logo and the wing shape at issue use four parallel lines to evoke common shapes or familiar designs. Therefore, *John Muller & Co.* supports the Board's finding that the wing shape is *de minimis*, and does not merit copyright protection. COMPENDIUM (THIRD) § 313.4(B) ("Works that contain no expression or only a *de minimis* amount of original expression are not copyrightable and cannot be registered with the U.S. Copyright Office.").

The Board also concludes that, neither of the Works when viewed as a wholes possesses sufficient creativity in their constituent elements to warrant copyright protection. *See* Second Request at 6. As explained above, works comprised of public domain elements may be copyrightable but only if the selection, arrangement, and modification of the elements reflects choice and authorial discretion that is not so obvious or minor that the "creative spark is utterly lacking or so trivial as to be nonexistent." *Feist*, 499 U.S. at 359. Here, however, the Los Angeles Football Club LA and Shield Design consists of little more than a combination of the words "LOS ANGELES" and "FOOTBALL CLUB" above and beneath an "L" and a stylized "A," respectively. All of these elements are centered within a basic heater shield design, typical of such logos. As noted above, a mere simplistic arrangement of non-protectable elements, such as "C" shapes "in a mirrored relationship," *Coach*, 386 F. Supp. 2d at 496–99, or evenly spaced white circles on a purple rectangle, does not demonstrate the level of creativity necessary to warrant copyright protection. COMPENDIUM (THIRD) § 906.1; *see id.* § 905 ("Merely bringing together only a few standard forms or shapes with minor linear or spatial variations does not satisfy [the minimum creativity] requirement."); *see also Satava,* 323 F.3d at 811–12 (explaining that the combination of unprotectable elements must still be "numerous enough and their selection and arrangements original enough that their combination constitutes an original work of authorship").

pg. 24

At bottom, the Board concludes that the basic combinations of a common and familiar shield design, an organization name, and letters with unprotectable ornamentation lack the requisite amount of creativity to warrant copyright protection.  *See, e.g.*, *Homer Laughlin China Co. v. Oman*, No. 90 Civ. 3160, 1991 WL 154540 (D.D.C. 1991) (upholding refusal to register chinaware design pattern composed of simple variations of geometric designs due to insufficient creative authorship to support copyright registration); *John Muller & Co., Inc. v. N.Y. Arrows Soccer Team, Inc.*, 802 F.2d 989 (8th Cir. 1986).

MLS argues that there were "many aesthetic choices made resulting in the Work[s]," and describes the "meaning and thoughts behind the symbolism and imagery of the Work[s]" as illustrative.  Second Request at 2.  When examining a work for copyrightable authorship, the Copyright Office uses objective criteria to determine whether a work is sufficiently creative for copyright protection.  The symbolic meaning or impression that a work conveys is irrelevant to whether a work contains a sufficient amount of creativity.  COMPENDIUM (THIRD) § 310.3.  Equally irrelevant is the intent of the author.  *Id.* § 310.5 ("The fact that a creative thought may take place in the mind of the person who created a work . . . has no bearing on the issue of originality unless the work objectively demonstrates original authorship.").  Thus, the Board does not consider as part of its copyrightability determination the meaning or symbolism ascribed to the wing shape or choice of font; rather, the Board evaluates only the appearance of the Work.  Here, the appearance of the Work does not contain the necessary creativity for copyright protection.

The Board also finds MLS's argument that the Office has allegedly registered works similar to ones in contention unpersuasive.  *See* Second Request at 6–8.  In its examination process, the Office does not compare works that have been previously registered or refused registration.  *See* COMPENDIUM (THIRD) § 602.4(C) ("When examining a claim to copyright, the U.S. Copyright Office generally does not compare deposit[s] to determine whether the work for which registration is sought is substantially similar to another work.").  The Office reviews each claim of copyright on its own merits.  Thus, a prior registration does not require the Board to reverse the denial of a work that it finds lacks sufficient creative authorship.  *See Homer Laughlin China Co. v. Oman*, No. 90 Civ. 3160, 1991 WL 154540, at *2 (D.D.C. July 30, 1991) (stating that court was not aware of "any authority which provides that the Register must compare works when determining whether a submission is copyrightable"); *accord Coach, Inc. v. Peters*, 386 F. Supp. 2d 495, 499 (indicating the Office "does not compare works that have gone through the registration process").  Even so, the actual works associated with the registrations that MLS references exhibit far more pictorial authorship than the Works at issue.

Finally, the fact that the U.S. Patent and Trademark Office has registered the wing design as a federal trademark has no bearing on whether it constitutes copyrightable authorship.  The standard for trademark registration is whether a mark distinguishes goods or services, which is different from copyright's originality standard.  *See* 15 U.S.C. § 1052; *Feist*, 499 U.S. at 345 ("The *sine qua non* of copyright is originality."); 37 C.F.R. § 202.10(a) ("In order to be acceptable as a pictorial, graphic, or sculptural work, the work must embody some creative authorship in its delineation or form.").

## IV.     CONCLUSION

For the reasons stated herein, the Review Board of the United States Copyright Office affirms the refusal to register the copyright claim in the Works.  Pursuant to 37 C.F.R. § 202.5(g), this decision constitutes final agency action in this matter.


_____

**U.S. Copyright Office Review Board**
Karyn A. Temple, Register of Copyrights
    and Director, U.S. Copyright Office
Regan A. Smith, General Counsel and
    Associate Register of Copyrights
Catherine Zaller Rowland, Associate Register of
    Copyrights and Director, Public Information and
    Education

EXHIBIT 4
pg. 27



**United States Copyright Office**

Library of Congress · 101 Independence Avenue SE · Washington, DC 20559-6000 · www.copyright.gov

April 25, 2016

St. Onge Steward Johnston & Reens LLC
Attn: Fritz Schweitzer, Jr.
986 Bedford St.
Stamford, CT 06905-5691

Re:    **Second Request for Reconsideration for Refusal to Register Bug Eyes (7091)**
       **Correspondence ID: 1-M9MD6N**

Dear Mr. Schweitzer:

The Review Board of the United States Copyright Office (the "Board") has examined K'NEX Limited Partnership Group ("K'NEX's") second request for reconsideration of the Registration Program's refusals to register a three-dimensional artwork copyright claim in the work titled "Bug Eyes (7091)" (the "Work"). After reviewing the application, the deposit copy, and the relevant correspondence in the case, along with the arguments in the second request for reconsideration, the Board affirms the Registration Program's denial of registration of this copyright claim.

## I.    DESCRIPTION OF THE WORK

Bug Eyes (7091) is a three-dimensional design that is comprised of a single piece of plastic molded into the shape of a pair of eyes with eyelids. The sclera portions of the eyes are colored white. The pupil portions of the eyes are colored black, save two white triangles that appear in the upper left portion of the pupils. The lid portions of the eyes are colored with a single, solid color.

A photographic reproduction of the Work is included as Appendix A.

## II.   ADMINISTRATIVE RECORD

On October 11, 2012, K'NEX filed an application to register a copyright claim in a three-dimensional work titled "Bug Eyes (7091)." Specifically, K'NEX asserted a claim to copyright in "sculpture."

In a letter dated November 13, 2013, a Copyright Office registration specialist refused to register the Work, finding that it "lacks the authorship necessary to support a copyright claim." *See* Letter from Ivan Proctor, Registration Specialist, to Fritz Schweitzer Jr., St. Onge Steward Johnston & Reens LLC (Nov. 13, 2013). The letter stated that the Work does not possess sufficient creative authorship within the meaning of the copyright statute and settled case law to support a claim to copyright. *Id.*

In a letter dated December 10, 2013, K'NEX requested that the Office reconsider its initial refusal to register the Work. *See* Letter from Fritz Schweitzer Jr., St. Onge Steward Johnston &

St. Onge Steward Johnston &                     - 2 -                                April 25, 2016
Reens LLC
Attn: Fritz Schweitzer, Jr.

Reens LLC, to U.S. Copyright Office (Dec. 10, 2013) ("First Request"). After reviewing the Work
in light of the points raised in the First Request, the Office re-evaluated the claims and in a letter
dated April 9, 2014, again concluded that the Work does not contain a sufficient amount of original
and creative artistic or graphic authorship to support a copyright registration. *See* Letter from
Stephanie Mason, Attorney-Advisor, to Fritz Schweitzer Jr., St. Onge Steward Johnston & Reens
LLC (Apr. 9, 2014).

In a letter dated July 2, 2014, K'NEX requested that, pursuant to 37 C.F.R. § 202.5(c), the
Office again reconsider its refusal to register the Work. Letter from Fritz Schweitzer Jr., St. Onge
Steward Johnston & Reens LLC, to U.S. Copyright Office (July 2, 2014) ("Second Request"). In
that letter, K'NEX disagreed with the Office's conclusion that the Work, as a whole, does not
include the minimum amount of creativity required to support registration under the Copyright Act.
Specifically, K'NEX claimed that the selection and arrangement of the Work's constituent elements
possesses a sufficient amount of creative authorship to warrant copyright protection. In support of
its claim, K'NEX asserted that it "has taken a relatively simple concept and made it into something
that is both creative and highly attractive in the form of a cartoon caricature." *Id.* at 2. K'NEX also
disagreed with the Office's view that it does not matter whether others have copied a work in
determining whether the Work contains the requisite minimal amount of original authorship
necessary for registration. *Id.* at 1-2.

## III.   DECISION

### A.  *The Legal Framework – Originality*

A work may be registered if it qualifies as an "original work[] of authorship fixed in any
tangible medium of expression." 17 U.S.C. § 102(a). In this context, the term "original" consists of
two components: independent creation and sufficient creativity. *See Feist Publ'ns v. Rural Tel. Serv.
Co.*, 499 U.S. 340, 345 (1991). First, the work must have been independently created by the author,
*i.e.*, not copied from another work. *Id.* Second, the work must possess sufficient creativity. *Id.*
Only a modicum of creativity is necessary, but the Supreme Court has ruled that some works (such
as the alphabetized telephone directory at issue in *Feist*) fail to meet even this low threshold. *Id.*
The Court observed that "[a]s a constitutional matter, copyright protects only those constituent
elements of a work that possess more than a *de minimis* quantum of creativity." *Id.* at 363. It further
found that there can be no copyright in a work in which "the creative spark is utterly lacking or so
trivial as to be nonexistent." *Id.* at 359.

The Office's regulations implement the long-standing requirements of originality and
creativity set forth in the Copyright Act and, subsequently, the *Feist* decision. *See* 37 C.F.R. §
202.1(a) (prohibiting registration of "[w]ords and short phrases such as names, titles, slogans;
familiar symbols or designs; [and] mere variations of typographic ornamentation, lettering, or
coloring"); 37 C.F.R. § 202.10(a) (stating "[i]n order to be acceptable as a pictorial, graphic, or
sculptural work, the work must embody some creative authorship in its delineation or form").

Some combinations of common or standard design elements may contain sufficient
creativity with respect to how they are juxtaposed or arranged to support a copyright. Nevertheless,
not every combination or arrangement will be sufficient to meet this grade. *See Feist,* 499 U.S. at
358 (finding the Copyright Act "implies that some ways [of selecting, coordinating, or arranging
uncopyrightable material] will trigger copyright, but that others will not"). Ultimately, the

determination of copyrightability in the combination of standard design elements rests on whether
the selection, coordination, or arrangement is done in such a way as to result in copyrightable
authorship. *Id.*; *see also Atari Games Corp. v. Oman*, 888 F.2d 878 (D.C. Cir. 1989).

A mere simplistic arrangement of non-protectable elements does not automatically
demonstrate the level of creativity necessary to warrant protection. For example, the Ninth Circuit
rejected a claim of copyright in a piece of jewelry where the manner in which the parties selected
and arranged the work's component parts was more inevitable than creative and original. *See
Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971). Likewise, the
Ninth Circuit held that a glass sculpture of a jellyfish consisting of clear glass, an oblong shroud,
bright colors, proportion, and the stereotypical jellyfish form did not merit copyright protection. *See
Satava v. Lowry*, 323 F. 3d 805, 811 (9th Cir. 2003). The language in *Satava* is particularly
instructive:

> It is true, of course, that a combination of unprotectable elements
> may qualify for copyright protection. But it is not true that *any*
> combination of unprotectable elements automatically qualifies for
> copyright protection. Our case law suggests, and we hold today,
> that a combination of unprotectable elements is eligible for
> copyright protection only if those elements are numerous enough
> and their selection and arrangement original enough that their
> combination constitutes an original work of authorship.

*Id.* (internal citations omitted) (emphasis in original).

Finally, Copyright Office registration specialists (and the Board) do not make aesthetic
judgments in evaluating the copyrightability of particular works. *See* COMPENDIUM OF U.S.
COPYRIGHT OFFICE PRACTICES § 310.2 (3d ed. 2014) ("COMPENDIUM (THIRD)"). They
are not influenced by the attractiveness of a design, the espoused intentions of the author, the
design's uniqueness, its visual effect or appearance, its symbolism, the time and effort it took to
create, or its commercial success in the marketplace. *See* 17 U.S.C. § 102(b); *Bleistein v. Donaldson*,
188 U.S. 239 (1903). The fact that a work consists of a unique or distinctive shape or style for
purposes of aesthetic appeal does not automatically mean that the work, as a whole, constitutes a
copyrightable work of art.

### B. *Analysis of the Work*

After carefully examining the Work and applying the legal standards discussed above, the
Board finds that the Work fails to satisfy the requirement of creative authorship necessary to sustain
a claim to copyright.

Here, it is undisputed that the Work's constituent elements—a single piece of plastic molded
into the shape of a pair of eyes with eyelids, a basic back pupil design, and a basic white sclera
design—are not individually subject to copyright protection. It is true that public domain elements
may satisfy the requirement for copyrightable authorship as a compilation if they are selected,
coordinated, and/or arranged in a sufficiently creative manner. *See* COMPENDIUM (THIRD) §
312.2. Thus, although the individual components of a given work may not be copyrightable, the
Copyright Office follows the principle that works should be judged in their entirety and not judged
based solely on the protectability of individual elements within the work. *Atari Games Corp. v.*

St. Onge Steward Johnston &  - 4 -  April 25, 2016
Reens LLC
Attn: Fritz Schweitzer, Jr.

*Oman*, 979 F.2d 242, 244-245 (D.C. Cir. 1992). Works comprised of public domain elements may be copyrightable, but only if the selection, arrangement, or modification of those elements reflects sufficient choice and authorial discretion that is not so obvious or minor that the "creative spark is utterly lacking or so trivial as to be nonexistent." *Feist*, 499 U.S. at 359. "Merely bringing together only a few standard forms or shapes with minor linear or special variations does not satisfy this requirement." COMPENDIUM (THIRD) § 905.

The Board finds that, viewed as a whole, the selection, combination, and arrangement of the shapes and colors that comprise the Work are not sufficient to render the Work original. *See Feist*, 499 U.S. at 358. No copyright protection may be afforded to the idea of such naturally occurring features, such as eyes, or to the elements of expression that naturally follow from the idea of such features. *See Satava*, 323 F. 3d at 811. While the Board recognizes that it may be possible to create a three-dimensional rendition of an eye with eyelids that is sufficiently creative to warrant registration, we find that the design at issue does not reach that level of authorship. Specifically, we find that K'NEX's incorporation of the lid, sclera, and pupil design elements so that they represent a pair of cartoon-like, bulging eyes with white triangles representing light glare, lacks the requisite amount of creativity in its selection, combination and arrangement to warrant copyright protection. Thus, we find that the level of creative authorship involved in this configuration of unprotectable elements is, at best, *de minimis*, and too trivial to enable copyright registration. *See Feist*, 499 U.S. at 359; COMPENDIUM (THIRD) § 313.4(B).

The Board further finds that the mere fact that others have copied the Work is extrinsic to the relevant creative authorship of the Work, and has no bearing on whether the Work is copyrightable. That a work may have been copied is not a factor in the determination of whether a work can support a claim in copyright. Originality, as interpreted by the courts, means that authorship must constitute more than a trivial variation or arrangement of public domain, pre-existing, or noncopyrightable elements. *Feist*, 499 U.S. at 359. In applying this standard (and as demonstrated above), the Office examines every work submitted for registration to determine whether it contains elements, either alone or in combination, on which a copyright can be based. The Office does not assess a design's standing in the marketplace in determining whether a work contains the requisite minimal amount of original authorship necessary for registration. *See* 17 U.S.C. § 102(b); *see also Bleistein*, 188 U.S. 239. Thus, even if accurate, the mere claim that the Work is allegedly unique and that others have copied it would not qualify the Work for copyright protection.

## IV.  CONCLUSION

For the reasons stated herein, the Review Board of the United States Copyright Office affirms the refusal to register the copyright claims in the Work. Pursuant to 37 C.F.R. § 202.5(g), this decision constitutes final agency action in this matter.

BY: _____

Chris Weston
Copyright Office Review Board Member

St. Onge Steward Johnston &
Reens LLC
Attn:  Fritz Schweitzer, Jr.

- 5 -

April 25, 2016

## APPENDIX A



# EXHIBIT 5

Case 2:20-cv-05585-DSF-GJS  Document 43-2  Filed 09/30/21  Page 35 of 143  Page ID
#:2831
Case 2:19-cv-08185-GW-PJW  Document 43  Filed 09/27/19  Page 36 of 143  Page ID #:29

Meir J. Westreich [CSB 73133]
**Attorney at Law**
**221 East Walnut, Suite 200**
**Pasadena, California 91101**
**626.676.3585**
**meirjw@aol.com**

**Attorney for Plaintiffs**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD HELDMAN III; COMEDYMX, INC., a Nevada Corporation; and COMEDYMX, LLC, a Delaware Limited Liability Company, <br><br> Plaintiffs, <br><br> v. <br><br> LARRY ZERNER, <br><br> Defendant. | Case No. 2:19-cv-08185 <br><br> FIRST MENDED COMPLAINT FOR BREACH OF CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING; BREACH OF FIDUCIARY DUTY; NEGLIGENCE - MALPRACTICE; FRAUD <br><br> JURY DEMANDED |

**INTRODUCTION**

This is a diversity action stated in Breach of Contract and Covenant of Good Faith and Fair Dealing; Breach of Fiduciary Duty; Negligence - Malpractice; Fraud; Rescission. Plaintiff is seeking money damages and declaratory relief against Defendant attorney, in connection with a legal representation in an intellectual property case, in which Defendant failed to accurately inform and/or materially mislead Plaintiffs in connection with a settlement agreement; intentionally or negligently failed to competently and accurately draft the settlement documents; and refused to comply with Plaintiffs' client directives in connection therewith. As a direct consequence, Plaintiffs were compelled to incur substantial additional legal

Case 2:20-cv-05585-DSF-GJS   Document 43-2   Filed 08/30/21   Page 36 of 143   Page ID
#:2832
Case 2:19-cv-08185-GW-PJW   Document 143   Filed 09/27/19   Page 2 of 8   Page ID #:24

1  fees and expenses with other legal counsel, and suffered substantial business losses
2  as well.   Plaintiffs have been damaged in excess of $75,000.

3      Accordingly, Plaintiffs allege for their First Amended Complaint, without leave
4  of court required under Fed.R.Civ.P. 15(a):

5  ## COMMON JURISDICTIONAL AND PARTY ALLEGATIONS

6      1. This is a diversity action at law to redress claims of Breach of Contract and
7  Covenant of Good Faith and Fair Dealing; Breach of Fiduciary Duty; Negligence -
8  Malpractice; Fraud by Defendant Lary Zerner.

9      2. The jurisdiction of this Court is invoked under 28 U.S.C. §1332, this being
10  an action between Arizona, Nevada and Delaware Plaintiffs and a California
11  Defendant.  The amount in controversy is in excess of $75,000, exclusive of interest
12  and costs.

13      3.  Venue is properly located in the Central District of California because the
14  claims in controversy were largely consummated in the Central District of California.

15      4. Plaintiffs are Edward Heldman III, who is domiciled in the State of Arizona;
16  Comedymx, Inc., which is incorporated in Nevada; and Comedymx, LLC, which is
17  formed in Delaware.  The companies also do business in New Jersey and Arizona.

18      5. Defendants is Larry Zerner, who is domiciled in the State of California,
19  where he is licensed as an attorney and practices law.

20      6. The agreements mentioned herein, which form the basis of the contract and
21  related claims, were formed in and under the laws of the State of California.

22  ## ALLEGATIONS RE CLAIMS AND LIABILITY

23      7.  At all relevant times herein, Defendant has acted as agent of and for
24  Plaintiffs; and hence Defendant held fiduciary duties and obligations in favor of
25  Plaintiffs in connection with the subject matter thereof.

26      8.  At all relevant times herein, the Plaintiffs and Defendant were in an
27  attorney-client relationship.

28

AMENDED COMPLAINT

2

Case 2:20-cv-05585-DSF-GJS   Document 43-2   Filed 09/30/21   Page 37 of 143   Page ID
#:2833
Case 2:19-cv-08185-GW-PJW   Document 43-1   Filed 09/27/19   Page 36 of 43   Page ID #:25

9.  Plaintiffs are in the business of video publishing and distribution, owns hundreds of registered copyrights, and distributes their work mainly on YouTube and other platforms like Amazon.

10.  On October 9, 2015 Plaintiffs commenced a federal legal action entitled *ComedyMX, Inc. v. St. Clair*, United States District Court, Central District of California Case No. CV-16-03249 AGR ["Underlying Action"], over an intellectual property dispute and claims alleging *inter alia* copyright infringement by  Bruce St. Clair, Joshua Dane St. Clair and the Cartoon Channel ["St. Clair Parties"] who eventually cross-claimed against all Plaintiffs herein.

11.  Specifically, the Underlying Action alleged that the St Clair Parties stole three of Plaintiffs' copyrighted videos, put them into a massive compilation, and competed directly with Plaintiffs, stealing their revenue and making money on their property.

12.  On August 25, 2016, Plaintiff ComedyMX, Inc. retained Defendant to substitute in and represent them in the Underlying Action.

13.  In December 2016, the parties in the Underlying Action attended a mediation which reached substantial agreement, but did not achieve a settlement.  An essential demand for Plaintiffs herein was prompt dismissal of the Underlying Action; a demand of the St. Clair Parties involved securing approvals of third parties.  These demands appeared incompatible.

14.  Plaintiffs are informed and believe, and based thereon allege, that in January 2017, Defendant inquired of Google [in discussions re discovery subpoenas], whether as part of a settlement process [the previously unsuccessful mediation], the St. Clair Parties could remove a disputed video, modify it to remove copyright offending material, then post the new one while then keeping their viewcount and other stats.

15.  Plaintiffs are informed and believe, and based thereon allege, that on January 25, 2017,  Google confirmed that the St. Clair Parties could  do so, with no

1  indication of whether Google would acquiesce if it was a point of conflict between

2  the litigating parties, as the issue did not then arise because Google was told that

3  counsel in the Underlying Action were in agreement.

4      16.  Plaintiffs are informed and believe, and based thereon allege, that on

5  January 25, 2017, Defendant informed counsel for the St. Clair Parties in the

6  Underlying Action, Stephen Doniger ["Doniger"], of his exchange with Google,

7  including "keeping the stats and view count," sharing the e-mail chain, and asking

8  whether, with this, his clients still willing to settle on the terms discussed during the

9  mediation.

10      17.  Plaintiffs are informed and believe, and based thereon allege, that on

11  January 27, 2017,  Google called Doniger to "walk him through the process" and

12  Defendant arranged a tele-conference for February 2, 2017, involving himself,

13  Google,  Doniger and a representative of the St. Clair Parties; but not including any

14  of the Plaintiffs herein, who receive no notice of its occurrence, from Defendant or

15  otherwise ["Secret Tele-Conference"].

16      18.  Plaintiffs are informed and believe, and based thereon allege, that in the

17  Secret Tele-conference, an oral ancillary agreement was reached that the action would

18  not be dismissed unless and until the St. Clair Parties obtained certain required

19  performance from Google, which was not a party to the Settlement Agreement or the

20  Underlying Action, and from which there was no binding commitment of any kind.

21  ["Oral Ancillary Agreement"].

22      19.  Plaintiffs would not have agreed to the Oral Ancillary Agreement, or any

23  Settlement Agreement containing its terms; and Defendant was fully aware of this at

24  all relevant times.

25      20.   On February 23, 2017, Plaintiffs herein executed the Settlement

26  Agreement drafted by Doniger and Defendant ["Settlement Agreement"].  It did not

27  include any of the aforementioned assurances in the Oral Ancillary Agreement; and

28  Plaintiffs were still ignorant of those assurances and of the Oral Ancillary Agreement,

AMENDED COMPLAINT

4

Case 2:20-cv-05585-DSF-GJS   Document 43-2   Filed 08/30/21   Page 39 of 143   Page ID
#:2835
Case 2:19-cv-08383-GW-PJW   Document 43   Filed 09/27/19   Page 5 of 13   Page ID #:21

and even its existence and the occurrence of the Secret Tele-Conference.  Had Plaintiffs known of the Oral Ancillary Agreement or the Secret Tele-Conference, they would not have signed the Settlement Agreement;  and Defendant was fully aware of this at all relevant times.

21.   On March 1, 2017, the St. Clair Parties executed the Settlement Agreement.

22.  The Settlement Agreement provided as follows:

a.   Standard Terms.  The Settlement Agreement contains an integration clause, i.e. it is the "entire agreement and understanding" that "supersedes and replaces all prior negotiations, agreements, and proposed agreements;"  no "promise, representation, or warranty" has been made to "induce" the agreement and no party "executed this Agreement in reliance on any promise, representation, or warranty not contained herein." The Settlement Agreement also provides that California law governs and  that it "cannot be modified or changed except by written instrument signed by each of the Parties."

b.   Operational Terms.  The Settlement Agreement provides operational terms – the considerations therefor – as follows:

"1.1.  Dismissal. Within five days of the date of this Agreement and St. Clair posting a compilation video that removes *Daffy and the Dinosaur*, the Parties, through their attorneys or record, shall file a stipulation for dismissal with prejudice.

"1.2.  Fees and Costs. . . . .

"1.3.  Daffy Cartoon.  St. Clair agrees to remove the offending version of *Daffy and the Dinosaur* from the Compilation. If St. Clair posts a different version of *Daffy and the Dinosaur* ["a Different Version"] on YouTube or any other internet site, St. Clair will have to retain evidence that the Different Version is not, in fact, the offending version. St. Clair will share this evidence with ComedyMX at ComedyMX's request."

c.  The Settlement Agreement also provided that it is made and entered into effective as of January 26, 2017.  Plaintiffs, ignorant of the Oral Ancillary Agreement and Secret Tele-Conference, did not know the significance of the date.

23.  The Settlement Agreement discussed the posting of a "Different Version" as a mere possibility on YouTube or other internet site ["if" clause]; it said  nothing about "keeping view counts or other stats" with the posting of a Different Version; provided no explanation for an effective date of January 26, 2017, *i.e.* before it was drafted on January 27, 2017 or signed on February 23, 2017, by Plaintiffs, and/or on March 1, 2017, by the St. Clair Parties.

24.  Discussions of an intended posting of a Different Version while "keeping view counts or other stats" [January 2017 and January 25, 2017 - February 2, 2017] were confined to Defendant, Doniger, Google and the St. Clair Defendants, *i.e.* not including Plaintiffs herein, who at all relevant times remained ignorant thereof.

25.  Plaintiffs are informed and believe, and based thereon allege, that on April 14, 2017, the removal of *Daffy and the Dinosaur* and posting of a Different Version occurred with the St. Clair Parties informing Google that their "views and positions in searching results from my original video could be transferred to the amended version."

26.  Plaintiffs were then notified by the St. Clair Parties of the new posting on April 14, 2017.  Hence, pursuant to the Settlement Agreement, dismissal of the action was then required by April 19, 2017.

27.  Plaintiffs are informed and believe, and based thereon allege, that on May 3, 2017, however, Defendant wrote to Google, citing its performance as the "last piece to get the case settled and dismissed."  Plaintiffs were not then informed of this e-mail.

28.  Plaintiffs are informed and believe, and based thereon allege, that on May 17, 2017,  Doniger wrote to Google, citing its performance as being necessary, *i.e.*

AMENDED COMPLAINT

6

Case 2:20-cv-05581-DSF-GJS Document 143-2 Filed 08/30/21 Page 41 of 143 Page ID
#:2837
Case 2:19-cv-08825-GW-PJW Document 143-2 Filed 09/27/19 Page 6 of 13 Page ID #:929

"get the prior stats reinstated to the amended video" and that it is the "only thing holding up completion of the settlement." Plaintiffs were not then informed of this e-mail.

29. On May 25, 2017, Defendant and Doniger filed a "Notice of Conditional Settlement" stating that:

> "Pursuant to the terms of the conditional settlement, Defendants will post a modified [sic] to YouTube [Google] which removes one of the videos which allegedly infringed Plaintiff's copyright. The parties are currently awaiting a response from YouTube allowing Defendants to post the modified video. The parties will file a dismissal upon receiving notice from YouTube approving the modified video."

30. The Notice of Settlement, which was concurrently reviewed by Plaintiffs, says nothing about "keep[ing the St. Clair Parties' view counts or other stats" or getting "[the St. Clair Parties'] prior stats reinstated" in connection with the posting of the amended video.

31. Commencing on a date no later than April 19, 2017, Plaintiffs repeatedly instructed Defendant to press, by all available legal means, for immediate dismissal of the Underlying Action. Defendant did not do so.

32. Plaintiffs are informed and believe, and based thereon allege, that finally, on July 10, 2017, Defendant suggested to Doniger that counsel dismiss first the Underlying Action, and followup with Google later, which did not happen. Defendant still refused to act to compel the dismissal, despite instructions from Plaintiffs to do so.

33. On July 21, 2017, Plaintiffs retained new counsel to enforce the dismissal clause of the Settlement Agreement, who then demanded that Doniger execute the dismissal, given the posting of the April 14, 2019 Compilation.

34.  When Doniger cited the Oral Ancillary Agreement, new counsel thereafter contended that Defendant had no authority to bind Plaintiffs as to any settlement provisions other than those expressly stated in the Settlement Agreement.

35.  Plaintiffs are informed and believe, and based thereon allege, that on July 24, 2017, Doniger responded that they "need our clients' stats from before his video was taken down to be reinstated as we were told they would be" and "that is the only reason he [St. Clair] agreed to enter into the settlement."

36.  Plaintiffs are informed and believe, and based thereon allege, that on July 25, 2017, Google confirmed the posting of the St. Clair Parties' "video replacement, which preserves the views and other metadata of the original video" and commenced implementation on August 7, 2017.

37.  On August 9, 2017, with still no dismissal of the Underlying Action, Plaintiffs – via their new counsel – rescinded the Settlement Agreement based on breach thereof by the failure to dismiss the Underlying Action, and repudiated the new video with its "preserve[d] view [count]s and other metadata of the original video" by posting a new DMCA takedown of the April 14, 2017 Compilation, compelling its takedown.

38.  Plaintiffs are informed and believe, and based thereon allege, that on August 10, 2017, Google informed the St. Clair Parties that it is ready to complete the video swap.

39.  On August 11, 2017,  Google confirmed compliance with the new DMCA takedown notice.

40.  Thereafter, the St. Clair Parties and Doniger demanded removal of the new DMCA takedown notice.  When Plaintiffs failed to do so, the St. Clair Parties and Doniger moved for enforcement of what they called the Settlement Agreement, but actually were seeking enforcement of the Oral Ancillary Agreement.

41.  On September 21, 2018, the Court ruled that the failure to timely dismiss the action was not adequate grounds to rescind the Settlement Agreement or relieve

Plaintiffs of the obligations thereunder or – implicitly – under the Oral Ancillary Agreement; and ruled that Defendant had legal authority to bind his clients to the additional terms that the St. Clair Parties' performance was conditioned on their succeeding in not only posting a new video, but also obtaining from Google its view counts and other metadata of the original video.

42. On September 21, 2018, the Court ordered Plaintiffs to remove its DMCA takedown notice from the April 14, 2017 Compilation, and to then file a Notice of Compliance within 14 days of the order, at which time the Underlying Action would be dismissed with prejudice.

43. Over the next year, Plaintiffs were forced to retain and pay multiple counsel to resist the latter order and undo the legal mess created by Defendant, until finally the action was dismissed on September 3, 2019, pursuant to a newly drafted Settlement Agreement ["Final Settlement Agreement"] containing terms acceptable to Plaintiffs. The additional legal fees incurred because of Defendant's misconduct – acts and omissions – exceed $275,000, *i.e.* beyond the approximately $29,000 Plaintiffs paid to Defendant.

44. During the period when the Underlying Action should have been dismissed, on April 19, 2017, and its final dismissal on September 3, 2019, Plaintiffs incurred substantial business losses caused by Defendant's misconduct – acts and omissions – which exceed an estimated $400,000, which loss figure will be calculated according to proof, including by an appropriate expert.

45. Under the Retainer Agreement signed by the parties herein and the covenant of good faith and fair dealing implied therein, under California ethical rules governing the conduct of licensed attorneys with their clients, and under duties of an agent and fiduciary, Defendant was expressly obliged to: (a) keep the promisee, client, principal and beneficiary, *i.e.* Plaintiffs, fully informed of all material matters affecting any settlement process, agreement and/or implementation; and (b) respect the ultimate decision-making authority of – and comply with the lawful directives of

– the promisee, client, principal and beneficiary, *i.e.* Plaintiffs. Furthermore, the Retainer Agreement contained at least one material provision that afforded Defendant ostensible authority that is unlawful in form and substance under the laws of California, and inconsistent with the legal and ethical duties of California attorneys, and which rendered the Retainer Agreement unlawful and unenforceable, as to said term[s] and/or in its entirety.

46. At all relevant times under this Complaint, Plaintiffs and each of them were the promisee, client, principal, and beneficiary of Defendant; and Defendant was the promisor, attorney, principal and fiduciary of Plaintiffs and each of them.

47. Plaintiffs and each of them have/has at all times complied with Client duties and obligations under the Retainer Agreement, and performed all promises made by them; have/has been ready, willing and able to complete performance thereunder; and/or has clearly and explicitly manifested this to Defendant.

48. In connection with settlement matters in the Underlying Action, Defendant has materially breached the material terms of the contract between Plaintiffs and Defendant, and Plaintiffs were damaged [contract] thereby.

49. In connection with the contract between Plaintiffs and Defendant, there is a covenant of good faith and fair dealing, implied by law.

50. Said covenants include that the Defendant would keep Plaintiffs fully informed re all material matters in connection with the representation; would deal honestly and in good faith with and for Plaintiffs; would afford Plaintiffs with the loyalty to clients required of all attorneys; and would respect the clients' rights and authority in connection with their substantial interests.

51. In connection with settlement matters in the Underlying Action, Defendant repeatedly and materially breached these covenants, to the substantial damage [contract and tort] to Plaintiffs.

52. An attorney is an agent to the client-principal, and as an agent is a fiduciary with the attendant duties of a fiduciary, including duties of loyalty and

honesty, and the duty to disclose to the client-principal all matters which a similarly situated reasonable person would desire to know in the conduct of his affairs.

53. In connection with settlement matters in the Underlying Action, Defendant repeatedly and materially breached these fiduciary duties, to the substantial damage [contract and tort] to Plaintiffs.

54. As an attorney, Defendant had a duty of care in the conduct of the legal representation and handling of the legal affairs of his clients.

55. In connection with settlement matters in the Underlying Action, Defendant's conduct, by his acts and omissions, has been negligent, *i.e.* it has fallen below the standard of care for attorneys in such matters and constitutes attorney malpractice.

56. In connection with settlement matters in the Underlying Action, Defendant's representations to Plaintiffs in and concerning the Retainer Agreement, and his duties and obligations thereunder, were at all times knowingly and/or intentionally false, with the intent and effect of defrauding Plaintiffs.

57. Plaintiffs reasonably relied upon the promises and representations of Defendant, to Plaintiffs' substantial detriment; and Plaintiffs' reliance upon the promises and representations of Defendant was reasonable under the totality of the circumstances then known to Plaintiffs, and Plaintiffs were damaged [tort] thereby.

58. Plaintiff has also incurred substantial consequential damages arising from the aforementioned breaches of duties and torts, in an amount according to proof.

59. Defendant has acted with malice and in breach of fiduciary duties to Plaintiffs who are hence entitled to treble and/or punitive damages from Defendant.

**ALLEGATIONS RE DAMAGES**

60. As a consequence of the statements, acts and/or omissions of the Defendant, in respect to each claim, Plaintiffs have incurred monetary damages as above described, as well as other consequential damages caused by the acts and omissions of said Defendant, in an amount to be proved at trial.

61. Plaintiffs have incurred, and continue to incur, substantial emotional distress from fraudulent and other tortious conduct of Defendant, proximately caused by the acts and omissions of said Defendant, in an amount to be proved at trial.

62. Defendant, in engaging in the aforementioned fraudulent and other tortious conduct, acted with malice.  Plaintiffs are entitled to recover treble and/or punitive damages from Defendant, in an amount to be proved at trial.

63.  The Retainer Agreement between Plaintiffs and Defendant provides for prevailing party contract attorney fees, and hence Plaintiffs are entitled to recover their reasonable attorney fees incurred herein.

## ALLEGATIONS RE EQUITABLE RELIEF

64.  Plaintiffs seek a declaration of law as to lawfulness and/or enforceability of the Retainer Agreement and/or its provisions governing the duties and/or authority of Defendant as attorney for Plaintiffs as discussed above in Paragraph 45.

## PRAYER

**WHEREFORE,** Plaintiffs seek judgment against Defendant for:

1.  Special and actual damages, according to proof;

2.  Consequential damages, according to proof;

3.  Compensatory damages, according to proof;

4.  Contract attorney fees, according to proof, except as might be dictated by any declaratory relief as prayed herein;

5.  Punitive and/or treble damages, according to proof;

6.  Declaratory and/or other equitable relief;

7.  For such further relief as the Court may deem necessary and proper.

Dated: September 27, 2019          Respectfully submitted,

s/ Meir J. Westreich

_____

Meir J. Westreich
Attorney for Plaintiffs

Case 2:20-cv-05581-DSF-GJS   Document 143-2   Filed 08/30/21   Page 47 of 143   Page ID
#:2843
Case 2:19-cv-08185-GW-PJW   Document 943   Filed 09/27/19   Page 13 of 13   Page ID #:935

1        Plaintiffs demand trial by jury.

2   Dated: September 27, 2019

3                             s/ Meir J. Westreich

                                 _____

4                             Meir J. Westreich
                             Attorney for Plaintiffs

EXHIBIT 6



### United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Jun 18 03:47:23 EDT 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |

| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At:  OR  Jump  to record:  **Record 3 out of 10**

TSDR  ASSIGN Status  TTAB Status  *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | **CARTOON** "ANIMATION" USA |
| **Goods and Services** | (ABANDONED) IC 028. US 022 023 038 050. G & S: design of toys |
| | (ABANDONED) IC 041. US 100 101 107. G & S: Animation |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 03.13.25 - Ears of four-footed mammals or primates (excluding humans); **Eyes** of four-footed mammals or primates (excluding humans); Other parts of four-footed mammals or primates (excluding humans); Snouts of four-footed mammals or primates (excluding humans); Tails of four-footed mammals or primates (excluding humans); Teeth of four-footed mammals or primates (excluding humans); Tusks of four-footed mammals or primates (excluding humans)<br>27.03.05 - Objects forming letters or numerals |
| **Serial Number** | 75688188 |
| **Filing Date** | April 22, 1999 |
| **Current Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Owner** | (APPLICANT) Oliveira, Helen De Lima INDIVIDUAL 7601 - East Treasure Dr #2316 Miami Beach FLORIDA 33141 |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | DEAD |
| **Abandonment Date** | February 23, 2000 |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |

pg. 48

FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

pg. 49

EXHIBIT 7



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Thu Jun 18 03:47:23 EDT 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout    Please logout when you are done to release system resources allocated for you.

Start    List At: ___    OR    Jump    to record: ___    **Record 8 out of 9**

TSDR    ASSIGN Status    TTAB Status    *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | **CARTOON CLASSICS** |
| **Goods and Services** | (CANCELLED) IC 042. US 101. G & S: retail store services featuring gift items, collectibles and T-shirts related to cartoons from television and movies. FIRST USE: 19920701. FIRST USE IN COMMERCE: 19921001 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 03.09.24 - Stylized small mammals, rodents, kangaroos, wallabies<br>27.03.03 - Animals forming letters or numerals |
| **Serial Number** | 74406804 |
| **Filing Date** | June 28, 1993 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | March 8, 1994 |
| **Registration Number** | 1838259 |
| **Registration Date** | May 31, 1994 |
| **Owner** | (REGISTRANT) CARTOON Classics, Inc. CORPORATION TENNESSEE 3069-B Mall Rd. N. Knoxville TENNESSEE 37924 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CARTOON CLASSICS" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | DEAD |
| **Cancellation Date** | June 9, 2001 |

pg. 51

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST

FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

| .HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

pg. 52

EXHIBIT 8



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Thu Jun 18 03:47:23 EDT 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |

| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout    Please logout when you are done to release system resources allocated for you.

Start    List At:         OR    Jump    to record:        **Record 4 out of 10**

| TSDR | ASSIGN Status | TTAB Status |    *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | **CARTOON** CAFE |
| **Goods and Services** | (ABANDONED) IC 042. US 100 101. G & S: Class 42-- RESTAURANT SERVICES |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 02.11.02 **- Eyes,** human; Human **eyes**; Iris (**eye**)<br>11.03.03 - Coffee cups<br>16.01.25 - Alarms, fire; Bullhorns; Burglar alarms; Fire alarms; Handset; Intercoms; Megaphones; Pagers; Smoke detectors |
| **Serial Number** | 75431774 |
| **Filing Date** | February 10, 1998 |
| **Current Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Owner** | (APPLICANT) UNIVERSAL CITY STUDIOS, INC. CORPORATION DELAWARE 100 Universal City Plaza Universal City CALIFORNIA 91608 |
| **Attorney of Record** | ANNE B NIELSEN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | DEAD |
| **Abandonment Date** | September 3, 1998 |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |

| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

pg. 54

| .HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

EXHIBIT 9



### United States Patent and Trademark Office

**Home** | **Site Index** | **Search** | **FAQ** | **Glossary** | **Contacts** | **eBusiness** | **eBiz alerts** | **News**

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Jun 18 03:47:23 EDT 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

**Logout**   Please logout when you are done to release system resources allocated for you.

**Start**   **List At:** _____   **OR**   **Jump**   **to record:** _____   **Record 10 out of 10**

---

| TSDR | ASSIGN Status | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | **CARTOON** CORNER |
| **Goods and Services** | (CANCELLED) IC 042. US 101. G & S: RETAIL STORE SERVICES IN THE FIELD OF PRODUCTS ASSOCIATED WITH CARTOON CHARACTERS. FIRST USE: 19851101. FIRST USE IN COMMERCE: 19860701 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 02.11.02 - **Eyes,** human; Human **eyes**; Iris (**eye**)<br>09.03.08 - Ascots; Bandannas; Neckerchiefs; Scarves<br>26.01.03 - Circles, incomplete (more than semi-circles); Incomplete circles (more than semi-circles)<br>26.01.21 - Circles that are totally or partially shaded.<br>26.17.13 - Letters or words underlined and/or overlined by one or more strokes or lines; Overlined words or letters; Underlined words or letters<br>26.19.25 - Geometric solids other than spheres, cylinders, cones, cube, prisms or pyramids<br>27.03.01 - Geometric figures forming letters, numerals or punctuation |
| **Serial Number** | 73802342 |
| **Filing Date** | May 25, 1989 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | November 7, 1989 |
| **Registration Number** | 1580771 |
| **Registration Date** | January 30, 1990 |
| **Owner** | (REGISTRANT) CARTOON CORNER CORPORATION CORPORATION MASSACHUSETTS SUITE 3400 500 WEST CUMMINGS PARK WOBURN MASSACHUSETTS 01801 |
| **Attorney of Record** | M. CHRYSA LONG |

pg. 57

| | |
|---|---|
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CARTOON" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | DEAD |
| **Cancellation Date** | August 5, 1996 |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   SEARCH OG   TOP   HELP   PREV LIST   CURR LIST   NEXT LIST

FIRST DOC   PREV DOC   NEXT DOC   LAST DOC

| .HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

pg. 58

EXHIBIT 10



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Thu Jun 18 03:47:23 EDT 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |

| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout    Please logout when you are done to release system resources allocated for you.

Start    **List At:**         OR    Jump    to record:            **Record 2 out of 10**

| TSDR | ASSIGN Status | TTAB Status |    *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | PETE MILLAR'S DRAG **CARTOONS** |
| **Goods and Services** | (CANCELLED) IC 016. US 002 005 022 023 029 037 038 050. G & S: Christmas cards; Comic books; Decals; Ink stamps; Postcards; Posters; Prints. FIRST USE: 19630601. FIRST USE IN COMMERCE: 19630601 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 02.11.02 - **Eyes,** human ; Human **eyes** ; Iris (**eye**) <br> 18.05.01 - Cabs, taxi ; Cars (not emergency) ; Hearses ; Limousines ; Race cars ; Taxicabs <br> 27.03.02 - Humans forming letters or numerals ; Humans forming punctuation |
| **Trademark Search Facility Classification Code** | ART-18.05 Land motor vehicles <br> HUM Accurate representation of a human form, or any portion of a human form <br> SHAPES-MISC Miscellaneous shaped designs |
| **Serial Number** | 77130700 |
| **Filing Date** | March 14, 2007 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | October 23, 2007 |
| **Registration Number** | 3509322 |
| **Registration Date** | September 30, 2008 |
| **Owner** | (REGISTRANT) Millar, Orah Mae INDIVIDUAL UNITED STATES 41 Peninsula Center suite 311 Rolling Hills Estates CALIFORNIA 90274 |
| **Attorney of Record** | Amy E. Hella |

pg. 60

| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CARTOONS" APART FROM THE MARK AS SHOWN |
| --- | --- |
| **Description of Mark** | Color is not claimed as a feature of the mark. The mark consists of the wording "PETE MILLAR'S DRAG CARTOONS", with race car figures inside the term "DRAG" and with eyes in the two "O's" in "CARTOONS". |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). |
| **Other Data** | The name "PETE MILLAR" does not identify a living individual. |
| **Live/Dead Indicator** | DEAD |
| **Cancellation Date** | May 3, 2019 |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

| .HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY |

pg. 61

EXHIBIT 11



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Jun 18 03:47:23 EDT 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At: ____ OR  Jump  to record: ____  **Record 5 out of 10**

TSDR  ASSIGN Status  TTAB Status  *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | **CARTOON** MADNESS |
| **Goods and Services** | (ABANDONED) IC 009. US 021 023 026 036 038. G & S: prerecorded video cassettes featuring animated entertainment |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 01.01.03 - Star - a single star with five points<br>01.01.10 - Stars, three or more; Three or more stars<br>02.11.02 - **Eyes,** human; Human **eyes**; Iris (**eye**)<br>26.01.21 - Circles that are totally or partially shaded.<br>26.17.09 - Bands, curved; Bars, curved; Curved line(s), band(s) or bar(s); Lines, curved<br>27.03.05 - Objects forming letters or numerals |
| **Serial Number** | 75423504 |
| **Filing Date** | January 26, 1998 |
| **Current Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | October 12, 1999 |
| **Owner** | (APPLICANT) Republic Entertainment Inc. CORPORATION DELAWARE 5700 Wilshire Boulevard, Suite 575 Los Angeles CALIFORNIA 900363659 |
| **Attorney of Record** | Pepper Starobin |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CARTOON" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | DEAD |
| **Abandonment Date** | January 5, 2001 |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |

**FIRST DOC**  **PREV DOC**  **NEXT DOC**  **LAST DOC**

|.**HOME** | **SITE INDEX**| **SEARCH** | *e***BUSINESS** | **HELP** | **PRIVACY POLICY**

pg. 64

EXHIBIT 12



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Thu Jun 18 03:47:23 EDT 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout   Please logout when you are done to release system resources allocated for you.

Start   List At:        OR   Jump   to record:        **Record 6 out of 10**

TSDR   ASSIGN Status   TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | THE **CARTOON** QUARTERLY |
| **Goods and Services** | (CANCELLED) IC 016. US 002 005 022 023 029 037 038 050. G & S: newsletters featuring syndicated newspaper cartoons. FIRST USE: 19680600. FIRST USE IN COMMERCE: 19680600 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 02.11.02 - **Eyes,** human; Human **eyes**; Iris (**eye**) <br> 27.03.02 - Humans forming letters or numerals; Humans forming punctuation |
| **Serial Number** | 74606581 |
| **Filing Date** | December 5, 1994 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | September 26, 1995 |
| **Registration Number** | 1942566 |
| **Registration Date** | December 19, 1995 |
| **Owner** | (REGISTRANT) Cortland Group, Inc., The CORPORATION PENNSYLVANIA 500 Executive Boulevard Ossining NEW YORK 10562 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | STANLEY P. JASKIEWICZ |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CARTOON QUARTERLY" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |

pg. 66

**Live/Dead
Indicator**        DEAD

**Cancellation Date**  September 21, 2002

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |

| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

| .HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

pg. 67

EXHIBIT 13



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Thu Jun 18 03:47:23 EDT 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout   Please logout when you are done to release system resources allocated for you.

Start   **List At:**        OR   Jump   **to record:**        **Record 13 out of 13**

TSDR   ASSIGN Status   TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | **OO**-ZOO |
| **Goods and Services** | (EXPIRED) IC 028. US 022. G & S: PLAYTHINGS-NAMELY, PICTURE PUZZLES. FIRST USE: 19760301. FIRST USE IN COMMERCE: 19760301 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 02.11.02 - **Eyes,** human; Human **eyes**; Iris (**eye**)<br>27.03.02 - Humans forming letters or numerals; Humans forming punctuation |
| **Serial Number** | 73090970 |
| **Filing Date** | June 18, 1976 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Registration Number** | 1061294 |
| **Registration Date** | March 15, 1977 |
| **Owner** | (REGISTRANT) LEON JASON UNKNOWN 342 MADISON AVE. NEW YORK NEW YORK 10017 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). |
| **Live/Dead Indicator** | DEAD |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

pg. 69

Case 2:20-cv-05581-DSF-GJS   Document 143-2   Filed 08/30/21   Page 71 of 143   Page ID
#:2867

| .**HOME** | **SITE INDEX**| **SEARCH** | **e**BUSINESS | **HELP** | **PRIVACY POLICY**

EXHIBIT 14

| To: | Fort James Operating Company (ekbresli@gapac.com) |
| --- | --- |
| Subject: | TRADEMARK APPLICATION NO. 78367211 - BRAWNY CARTOON CLASSICS - N/A |
| Sent: | 9/17/04 5:00:37 PM |
| Sent As: | ECOM115@USPTO.GOV |
| Attachments: | Attachment - 1<br>Attachment - 2<br>Attachment - 3<br>Attachment - 4 |

## UNITED STATES PATENT AND TRADEMARK OFFICE

**SERIAL NO**: 78/367211

**APPLICANT**:     Fort James Operating Company

**CORRESPONDENT ADDRESS**:

Fort James Operating Company
GA030-41N
133 Peachtree Street, N.E.
Atlanta, GA 30303

**\*78367211\***

RETURN ADDRESS:
Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA 22202-3514

**MARK**:     BRAWNY CARTOON CLASSICS

**CORRESPONDENT'S REFERENCE/DOCKET NO** :   N/A

**CORRESPONDENT EMAIL ADDRESS**:

ekbresli@gapac.com

Please provide in all correspondence:

1  Filing date, serial number, mark and
   applicant's name
2  Date of this Office Action
3  Examining Attorney's name and
   Law Office number
4  Your telephone number and e-mail
   address

## OFFICE ACTION

**TO AVOID ABANDONMENT, WE MUST RECEIVE A PROPER RESPONSE TO THIS OFFICE ACTION WITHIN 6 MONTHS OF OUR MAILING OR E-MAILING DATE**.

Serial Number  78/367211

The assigned examining attorney has reviewed the referenced application and determined the following.

### SEARCH CLAUSE – PRIOR PENDING APPLICATIONS

Although the examining attorney has searched the Office records and has found no similar *registered* mark which would bar registration under Trademark Act Section 2(d), 15 U.S.C. §1052(d), the examining attorney encloses information regarding pending Application Serial Nos. 78-301840, 78-301844 and 78-350666.  37 C.F.R. §2.83.

There may be a likelihood of confusion between the applicant's  mark and the mark in the above noted applications under Section 2(d) of the Act.  The filing dates of the referenced applications precede the applicant's  filing date.  If the earlier‑filed applications mature into registrations, the examining attorney may refuse registration under Section 2(d).

Notwithstanding the prior pending applications, the applicant must respond to the following issues.

**OWNERSHIP OF PRIOR REGISTRATIONS**

If the applicant is the owner of Registration Nos. 1062207, 2849299 and others, the applicant must submit a claim of ownership. 37 C.F.R. §2.36; TMEP §812.

**DISCLAIMER**

The applicant must insert a disclaimer of CATRTOON CLASSICS in the application.  Trademark Act Section 6, 15 U.S.C. §1056; TMEP §§1213 and 1213.08(a)(i).  The wording is merely descriptive because the goods feature scenes of cartoon classics, a term of art synonymous with classic cartoons.

A properly worded disclaimer should read as follows:

No claim is made to the exclusive right to use CARTOON CLASSICS apart from the mark as shown.

*NOTICE:  TRADEMARK OPERATION RELOCATING OCTOBER AND NOVEMBER  2004*

The Trademark Operation is relocating to Alexandria, Virginia, in October and November 2004.  Effective October 4, 2004, all Trademark-related paper mail (except documents sent to the Assignment Services Division for recordation, certain documents filed under the Madrid Protocol, and requests for copies of trademark documents) must be sent to:

Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA  22313-1451

Applicants, registration owners, attorneys and other Trademark customers are strongly encouraged to correspond with the USPTO online via the Trademark Electronic Application System (TEAS), at www.uspto.gov.

Please feel free to contact the undersigned attorney if you wish to discuss this application.

/John S. Yard/
Trademark Examining Attorney
Law Office 115
(703) 308-9115 x209

**How to respond to this Office Action:**

To respond formally using the Office's  Trademark Electronic Application System (TEAS), visit **http://www.uspto.gov/teas/index.html** and follow the instructions.

To respond formally via regular mail, your response should be sent to the mailing Return Address listed above and include the serial number, law office and examining attorney's name on the upper right corner of each page of your response.

To check the status of your application at any time, visit the Office's  Trademark Applications and Registrations Retrieval (TARR) system at **http://tarr.uspto.gov/**

For general and other useful information about trademarks, you are encouraged to visit the Office's  web site at **http://www.uspto.gov/main/trademarks htm**

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINING ATTORNEY.**

**Print: Sep 17, 2004**                    **78301840**

## TYPED DRAWING

**Serial Number**
78301840

**Status**
NON-FINAL ACTION - MAILED

**Word Mark**
BRAWNY

**Standard Character Mark**
No

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(1) TYPED DRAWING

**Owner**
Samuel Luis Paul INDIVIDUAL UNITED STATES PO Box 11188 Reno NEVADA 89510

**Goods/Services**
Class Status -- ACTIVE.  IC 021.  US  002 013 023 029 030 033 040 050. G & S: Household cleaning implements, such as mops, brooms, brushes, scouring pads, scrubbers, cloth cleaning towels, sqeegy, dusters, manual sprayers, dust pans, mop buckets, and sponges.

**Filing Date**
2003/09/17

**Examining Attorney**
KING, LINDA

**Attorney of Record**
Andrew Gathy

-1-

**Print: Sep 17, 2004**                    **78301844**

## TYPED DRAWING

**Serial Number**
78301844

**Status**
NON-FINAL ACTION - MAILED

**Word Mark**
BRAWNY

**Standard Character Mark**
No

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(1) TYPED DRAWING

**Owner**
Samuel Louis Paul INDIVIDUAL UNITED STATES PO Box 11188 Reno NEVADA 89510

**Goods/Services**
Class Status -- ACTIVE.  IC 021.  US  002 013 023 029 030 033 040 050. G & S: Food storage namely, food storage bags, freezer bags, plastic food containers, plastic wrap, aluminum foil, disposable food containers.

**Filing Date**
2003/09/17

**Examining Attorney**
KING, LINDA

**Attorney of Record**
Andrew Gathy

-1-

**Print: Sep 17, 2004**                          78350666

**DESIGN MARK**

**Serial Number**
78350666

**Status**
NON-FINAL ACTION - MAILED

**Word Mark**
BRAWNY

**Standard Character Mark**
Yes

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Samuel Louis Paul INDIVIDUAL UNITED STATES PO Box 11188 Reno NEVADA
89510

**Goods/Services**
Class Status -- ACTIVE.  IC 024.  US  042 050.  G & S: Cloth Kitchen
items namely pot holders, oven mits, dish towels, trivets, and shop
towels.

**Filing Date**
2004/01/12

**Examining Attorney**
AYALA, LOURDES

**Attorney of Record**
Andrew Gathy

-1-

# BRAWNY

EXHIBIT 15

# NOTE TO THE FILE

**SERIAL NUMBER:**     88789484

**DATE:**     05/05/2020

**NAME:**     jsalcido

## NOTE:

**Searched:**
\_\_\_  Google
\_\_\_  Lexis/Nexis
\_\_\_  OneLook
\_\_\_  Wikipedia
\_\_\_  Acronym Finder          \_\_\_  Protest evidence reviewed
\_\_\_  Other:

**Checked:**
\_\_\_  Geographic significance
\_\_\_  Surname
\_\_\_  Translation
\_\_\_  ID with ID/CLASS mailbox

\_\_  Checked list of approved Canadian attorneys and agents

**Discussed file with**
**Attorney/Applicant via:**
   \_\_\_    phone                 \_\_\_  Left message with
   _X_    email                       Attorney/Applicant

\_\_\_  Requested Law Library search      _X_  Issued Examiner's Amendment
       for:                                  and entered changes in TRADEUPS

   \_\_\_  **PRINT**  \_\_\_  **DO NOT PRINT**     \_\_\_  Added design code in TRADEUPS
\_\_\_  Description of the mark
\_\_\_  Translation statement             \_\_\_  Re-imaged standard character
                                              drawing
\_\_\_  Negative translation statement
\_\_\_  Consent of living individual      \_\_\_  Contacted TM MADRID ID/CLASS
                                              about misclassified definite ID
\_\_\_  Changed TRADEUPS to:

\_\_\_  OTHER:

Hello John:

Thanks for your work on this application.  Our client has advised that he will accept the disclaimer of CARTOON CLASSICS.  Should you need anything else, please feel free to contact me.


Best Regards,
Lindsey

Lindsey Olson Diefenbach, Esq.
Mandour & Associates, APC - Intellectual Property Law
12121 Wilshire Boulevard, Suite 810
Los Angeles, California 90025
T: 310-656-3900
***************************************************************************
CONFIDENTIAL COMMUNICATION: This message is for the sole use of the

intended recipient and may contain confidential and privileged information. Any unauthorized
review or distribution is prohibited. If you are not the intended recipient, please contact the sender
by reply email and destroy all copies of the original message.
*********************************************************************

**From:** Lindsey Olson Diefenbach
**Sent:** Monday, May 04, 2020 11:04 AM
**To:** Salcido, John <John.Salcido@USPTO.GOV>
**Cc:** Joseph A. Mandour <jmandour@mandourlaw.com>
**Subject:** RE: Response Requested: USPTO Trademark Application Serial No. 88789484 - CARTOON CLASSICS!

Hi John:

I just left a voicemail for our client on this and am hoping to hear back shortly.  I will be in touch as soon as I have his response, thanks.


Best Regards,
Lindsey

Lindsey Olson Diefenbach, Esq.
Mandour & Associates, APC - Intellectual Property Law
12121 Wilshire Boulevard, Suite 810
Los Angeles, California 90025
T: 310-656-3900
*********************************************************************
CONFIDENTIAL COMMUNICATION: This message is for the sole use of the
intended recipient and may contain confidential and privileged information. Any unauthorized
review or distribution is prohibited. If you are not the intended recipient, please contact the sender
by reply email and destroy all copies of the original message.
*********************************************************************


**From:** Salcido, John <John.Salcido@USPTO.GOV>
**Sent:** Monday, May 04, 2020 10:20 AM
**To:** Joseph A. Mandour <jmandour@mandourlaw.com>
**Cc:** Lindsey Olson Diefenbach <lolson@mandourlaw.com>
**Subject:** RE: Response Requested: USPTO Trademark Application Serial No. 88789484 - CARTOON CLASSICS!

Dear Mr. Mandour,

I am following up regarding the email below.  Please let me know if the disclaimer is acceptable. I am approaching my internal deadline and will need to take action on this application.

The applicant cannot claim exclusivity in the terms CARTOON and CLASSICS as they are descriptive and must be disclaimed.  The terms must be disclaimed as they appear as they are used together in the mark.

Best Regards,

John

**From:** Salcido, John
**Sent:** Wednesday, April 29, 2020 8:09 PM
**To:** 'jmandour@mandourlaw.com' <jmandour@mandourlaw.com>
**Cc:** 'lolson@mandourlaw.com' <lolson@mandourlaw.com>
**Subject:** Response Requested: USPTO Trademark Application Serial No. 88789484 - CARTOON CLASSICS!

Dear Mr. Mandour,

I am the Trademark Examining Attorney that has been assigned your case at the U.S. Trademark Office.

There is only one issue that we can fix via email or over the phone that is preventing approval of this application for the next step of the registration process.  With your OK I can make the changes proposed below and move the application forward.

**Disclaimer Required**

 Applicant must insert a disclaimer of "CARTOON CLASSICS" in the application because the terms merely describes a feature of the services because applicant's services features classic cartoons.   *See* 15 U.S.C. §1056(a); TMEP §§1213, 1213.03(a). The following is the accepted standard format for a disclaimer:

>    **No claim is made to the exclusive right to use "CARTOON CLASSICS" apart from the mark as shown.**

TMEP §1213.08(a)(i).

A disclaimer does not physically remove the disclaimed matter from the mark, but rather is a written statement that applicant does not claim exclusive rights to the disclaimed wording and/or design separate and apart from the mark as shown in the drawing.  TMEP §§1213, 1213.10.

**Please respond to this email or call me (you may leave a message of approval) by close of business on  05/05/2020, and I can make the changes to your application for you and then approve the mark for the next step of the registration process. If you do not contact me by then, I will have to issue an Office action requiring these changes.**

Best Regards,

John

**John Salcido**
Trademark Examining Attorney
United States Patent and Trademark Office
Law Office 122

EXHIBIT 16

**From:** Milord Keshishian <milord@milordlaw.com>
**Sent:** Thursday, March 26, 2020 11:29 AM
**To:** Ben T. Lila <blila@mandourlaw.com>
**Cc:** Stephanie Trice <stephanie@milordlaw.com>; Lorie Mallari <lorie@milordlaw.com>; Kimberly Wolfe <kimberly@milordlaw.com>
**Subject:** ComedyMX Takedown Notices re Michelle Justice
**Importance:** High

Dear Mr. Lila:

Your correspondence below has been forwarded to us for response.  We are counsel for Ms. Justice, please forward all further communications to our attention.  Ms. Justice takes all allegations of valid copyright infringement seriously and to evaluate the same. please provide by **5:00 p.m. on March 27, 2020** the copyright registrations and deposit material for the following takedown notices sent by your client to Amazon:

| | |
|---|---|
| CASE 6890999701 | Cartoon Classics - Vol. 1: 25 Favorite Cartoons - 3 Hours |
| CASE 6891043541 | Cartoon Classics - Vol. 2: 25 Favorite Cartoons - 3 Hours |
| CASE 6891006641 | Cartoon Classics - Vol. 3: 25 Favorite Cartoons - 3 Hours |
| CASE 6890994521 | Cartoon Classics - Vol. 4: 25 Favorite Cartoons - 3 Hours |
| CASE 6891030291 | Cartoon Classics - Vol. 5: 25 Favorite Cartoons - 3 Hours |
| CASE 6891048961 | Cartoon Classics - Vol. 6: 25 Favorite Cartoons - 3 Hours |

In addition, by **5:00 p.m. on March 27, 2020**, we expect to receive your client's pre-notification investigation report identifying (1) the protectible elements in your client's work, and (2) the substantial similarity in the protectible elements of the copyrighted works and our client's accused works.

If we do not receive the requested information by said time and date, that will confirm your client's lack of due diligence before issuing take down notice and entitle us to file counter-notifications with Amazon.  We look forward to immediate receipt of the requested information, which your client must have assembled prior to issuing the takedown notices.

If you should have any additional questions or comments, please contact us.

Sincerely,

Milord A. Keshishian

Milord & Associates, PC
Patent, Trademark & Copyright Law
10517 West Pico Blvd.
Los Angeles, CA 90064
Tel  310-226-7878
www.milordlaw.com

************************CONFIDENTIALITY NOTICE************************

The information contained in this electronic message and attachments, if any, are intended solely for the personal and confidential use of the designated recipient. This message may be an attorney-client communication and as such is privileged and confidential. No waiver of this privilege is intended by the inadvertent transmittal of such communication to any persons or company other than the intended recipient. If the reader of this message is not the intended recipient, please take notice that you have received this document in error, and that any review, dissemination, replication, or distribution of this message is strictly prohibited. If you have received this communication in error, please permanently delete this message and attachments, if any.

EXHIBIT 17

**From:** Ben T. Lila <blila@mandourlaw.com>
**Sent:** Thursday, March 26, 2020 7:10 PM
**To:** Milord Keshishian <milord@milordlaw.com>
**Cc:** Stephanie Trice <stephanie@milordlaw.com>; Lorie Mallari <lorie@milordlaw.com>; Kimberly Wolfe
<kimberly@milordlaw.com>; Joseph A. Mandour <jmandour@mandourlaw.com>
**Subject:** RE: BB Productions Infringement (ComedyMX/6249.02-006)

Milord:

We represent ComedyMX LLC ("ComedyMX"), owner of U.S. Trademark Serial No. 88/789,484 for
CARTOON CLASSICS! (+Design).  ComedyMX is also the owner of all copyright rights associated with
its original stylized logo design that is the subject of multiple copyright registrations, including U.S.
Copyright No.  PAu003798644.  *See* attached.  ComedyMX has used the trademark and copyright logo
design continuously in interstate commerce on certain goods and services including, but not limited to,
entertainment services.

We have observed that BB Productions is using our client's CARTOON CLASSICS trademark and logo
design without authorization to promote similar goods and services on the website Amazon.com.  BB
Production's use of CARTOON CLASSICS is likely to cause confusion in violation of trademark and other
unfair competition laws including, but not limited to, the Lanham Act (15 U.S.C. § 1051, *et seq.*).  BB
Production's use is likely to lead the public to believe that its products and services are licensed by,
sponsored by, or otherwise affiliated with ComedyMX which is not the case.  Also, the unauthorized
copying of our client's logo design constitutes copyright infringement under the Copyright Act (17 U.S.C. §
101, *et. seq.*).

We demand that BB Productions immediately cease and desist all use of CARTOON CLASSICS and our
client's copyrighted design, including without limitation, on Amazon.com, in videos and on any other
website.  Should BB Productions not immediately address our client's concerns, we will pursue all
available remedies.  Please contact me in writing by **April 6, 2020** to confirm that your client has complied
with the above.

The demands asserted herein are with full reservation of all rights and remedies that our client may
possess including, but not limited to, past and continuing profits, actual damages, treble damages,
attorneys' fees, claims of dilution and the right to injunction.


Best Regards,
Ben


Ben T. Lila, Esq.
Mandour & Associates, APC - Intellectual Property Law
12121 Wilshire Boulevard, Suite 810
Los Angeles, California 90025
T: 310-656-3900
*************************************************************************
CONFIDENTIAL COMMUNICATION: This message is for the sole use of the
intended recipient and may contain confidential and privileged information. Any unauthorized
review or distribution is prohibited. If you are not the intended recipient, please contact the sender
by reply email and destroy all copies of the original message.
*************************************************************************



EXHIBIT 18

**From:** Milord Keshishian
**Sent:** Friday, March 27, 2020 7:48 PM
**To:** Ben T. Lila <blila@mandourlaw.com>
**Cc:** Stephanie Trice <stephanie@milordlaw.com>; Lorie Mallari <lorie@milordlaw.com>; Kimberly Wolfe <kimberly@milordlaw.com>; Joseph A. Mandour <jmandour@mandourlaw.com>
**Subject:** RE: BB Productions Infringement (ComedyMX/6249.02-006)

Dear Ben:

While I appreciate your quick response, the failure to provide our requested information confirms that ComedyMX's takedown notices are in bad faith.  I understand that you were probably handcuffed because ComedyMX simply lacks copyright protection to issue the takedown notices, but would have appreciated your forthright offer to immediately withdraw the baseless Digital Millennium Copyright Act takedown notices.  Please be advised of your Rule 11 obligations moving forward in this matter.

My correspondence specifically requested ComedyMX's pre-notification investigation analysis identifying the copyright registrations and (1) the protectible elements in your client's work, and (2) the substantial similarity in the protectible elements of the copyrighted works and our client's accused works.  Although, your correspondence references out of hand U.S. Copyright registration No. PAu003798644, ComedyMX failed to provide the deposit material as requested, let alone identify the protectible elements and the alleged substantial similarity therewith.  Instead, we are delivered a misrepresentation that the "Cartoon Classics" logo is copyrighted in the '644 registration.  As you should be aware, a performing arts copyright registration only covers "(1) musical works, including any accompanying words; (2) dramatic works, including any accompanying music; (3) pantomimes and choreographic works; and (4) motion pictures and other audiovisual works."  Form PA.  The Copyright Office printout, attached hereto, for the '644 registration confirms that the logo is not listed as a protectible element, nor could it as a matter of law.

The use of the '644 performing arts registration to claim copyright registration ownership in the generic term "Cartoon Classics" is meritless because short phrases are not copyrightable.  37 C.F.R. 202.1(a); *Bernal v. Paradigm Talent & Literary Agency,* 788 F.Supp.2d 1043, 1072 (C.D.Cal.2010) (short phrases such as "I miss you," "He's so funny," "Stay away from this neighborhood," and "Mmm. That's it" were "ordinary, common expressions that [were] not copyrightable"); see also *Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1081 (9th Cir.2000) ("Brand names, trade names, slogans, and other short phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed").  Thus, even inserting pupils and irises into the double "o" letters in cartoons does not rise to the level of protectible expression to be copyrightable because eyes appear in nature and are not afforded copyright protection.  "These ideas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them." *Satava v. Lowry,* 323 F.3d 805, 811 (9th Cir. 2003).  It is axiomatic that designs that are "standard, stock, or common to a particular subject matter or medium are not protectable under copyright

law." *Id.,* at 810; *Aliotti v. R. Dakin & Co.,* 831 F.2d 898, 901 (9th Cir. 1987) ("No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from the idea of such dolls."). Further, any copyrighted expression must be "original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). "Original, as the term is used in copyright, means only that the work was independently created by the author ... and that it possesses at least some minimal degree of creativity." *Id.* Here, a simple search of stock cartoon eyes immediately defeat ComedyMX's claim of originality, even assuming arguendo the eyes are protectible, because ComedyMX merely copied preexisting clip art.



ComedyMX even copied the shape and placement of the eyebrows. Assuming ComedyMX did actually have a copyright registration and did not copy the eyes from preexisting clip art, ComedyMX's expression of the generic term "Cartoon Classics" is not substantially similar to the accused expression, as demonstrated by the side by side comparison below:



But ComedyMX has a greater burden here than substantial similarity because eyes occur in nature and any infringement, assuming ComedyMX has any protectible rights, must be proven by verbatim copying. Where a design incorporates stock or commonplace images, it is entitled to, at most, a very "thin" or "weak" copyright – assuming ComedyMX is entitled to any protection. *Satava,* 323 F.3d at 812 ("thin" copyright in jellyfish design); *Franklin Mint Corp. v. Nat'l Wildlife Art Exchange,* 575 F.2d 62, 65 (3d Cir. 1978) ("weak" copyright in common elements of bird design). In those circumstances, only virtually identical copying is prohibited. *Satava,* 323 F.3d at 812 ("thin copyright... protects against only virtually identical copying"); *see also Sid & Marty Krofft Television Prods., Inc. v. McDonalds Corp.,* 562 F.2d 1157,

1168 (9th Cir. 1977) (where limited number of ways to express concept, "there will be protection against nothing other than identical copying of the work").

Thus, the only conclusion that can be drawn based on ComdyMX's lack of copyright registration in its generic logo is the DMCA copyright takedown notices were in bad faith and must immediately be withdrawn.

Your reference to the trademark application ComedyMX filed last month, which is not yet registered, does not save ComedyMX from its bad faith DMCA copyright takedown notice.  Amazon does not allow takedown notices for unregistered trademarks, thus there was no trademark notification filed by ComedyMX.  Moreover, the term "cartoon classics" is generic and refers to classic cartoons and was used as such by Walt Disney Cartoon Classics series from 1983 to 1986.  It has also been used by numerous others, predating ComedyMX's alleged first use date of 2015.  See September 11, 2008 Wired article titled "10 Cartoon Classics to Share with your Kids" as merely one example of many.  "A generic term cannot be registered as a trademark because such a term cannot function as an indication of source." *BellSouth Corp. v. DataNational Corp.*, 60 F.3d 1565, 1569 (Fed. Cir. 1995).  Thus, despite the addition of the eyes, the mark is generic and the nascent application will not mature to registration because even if the U.S. Patent and Trademark Office does not refuse registration, our client will certainly file an opposition thereto.

Despite your valiant efforts to protect ComedyMX, our detailed analysis provides authority and proof of ComedyMX's bad faith.  But in an effort to resolve this matter expeditiously, ComedyMX will agree to immediately withdraw its DMCA notification of infringement issued to Amazon, in return our client agrees to not depiction of eyes in the term "cartoon."  Please advise by no later than **5:00 p.m. on March 30, 2020** if ComedyMX has immediately withdrawn the six takedown notices issued to Amazon.

Sincerely,

Milord A. Keshishian

Milord & Associates, PC
Patent, Trademark & Copyright Law
10517 West Pico Blvd.
Los Angeles, CA 90064
Tel (310) 226-7878
Fax (310) 226-7879
www.milordlaw.com

***********************CONFIDENTIALITY NOTICE************************

The information contained in this electronic message and attachments, if any, are intended solely for the personal and confidential use of the designated recipient. This message may be an attorney-client communication and as such is privileged and confidential. No waiver of this privilege is intended by the inadvertent transmittal of such communication to any persons or company other than the intended recipient. If the reader of this message is not the intended recipient, please take notice that you have received this document in error, and that any review, dissemination, replication, or distribution of this

message is strictly prohibited. If you have received this communication in error, please permanently delete this message and attachments, if any.



Library buildings are closed to the public until further notice, but the U.S.
Copyright Office Catalog is available. **More.**

| Help | Search | History | Titles | Start Over |

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = PAu003798644
Search Results: Displaying 1 of 1 entries

◀ previous    next ▶



### *8thManDVD Copyright Video 1, et al.*

**Type of Work:** Motion Picture
**Registration Number / Date:** PAu003798644 / 2016-01-26
**Application Title:** 8thManDVD Copyright Video 1, et al.
**Title:** 8thManDVD Copyright Video 1, et al.
**Description:** Electronic file (eService)
**Copyright Claimant:** ComedyMX LLC. Address: P.O. Box 896, Pine Brook, NJ, 07058, United States.
**Date of Creation:** 2016
**Authorship on Application:** ComedyMX LLC, employer for hire; Citizenship: United States. Authorship: entire motion picture.
**Rights and Permissions:** ComedyMX LLC, P.O. Box 896, Pine Brook, NJ, 07058, United States
**Copyright Note:** Basis for Registration: Unpublished collection.
**Contents:** 8thManDVD Copyright Video 1.
8thManDVD Copyright Video 2.
8thManDVD Copyright Video 3.
8thManDVD Copyright Video 4.
8thManDVD Copyright Video 5.
8thManDVD Copyright Video 6.
8thManDVD Intro Video 1.
8thManDVD Intro Video 2.
8thManDVD Intro Video 3.
8thManDVD Intro Video 4.
8thManDVD Intro Video 5.
8thManDVD Intro Video 6.
8thManDVD Title Card 1.
8thManDVD Title Card 2.
8thManDVD Title Card 3.

pg. 93

8thManDVD Title Card 4.
8thManDVD Title Card 5.
8thManDVD Title Card 6.
8thManDVD Title Card 7.
8thManDVD Title Card 8.
8thManDVD Title Card 9.
8thManDVD Title Card 10.
8thManDVD Title Card 11.
8thManDVD Title Card 12.

**Names:** ComedyMX LLC



| Save, Print and Email (**Help Page**) | |
|---|---|
| Select Download Format  Full Record | Format for Print/Save |
| Enter your email address: | Email |

Help   Search   History   Titles   Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page

pg. 94

EXHIBIT 19

**From:** Michelle Justice <michelle@beyondblond.com>
**Sent:** Tuesday, March 31, 2020 5:57 PM
**To:** videodirect-submissions@amazon.com
**Cc:** Milord Keshishian <milord@milordlaw.com>
**Subject:** Re: [CASE 6890999701] Your Prime Video Submission - DMCA COUNTER NOTICE

Dear Amazon Legal Department:

This is my DMCA COUNTER NOTICE pursuant to 17 U.S.C. § 512(g)(3) to the baseless claim of
copyright infringement identified in the email below for the subject case number.  As
specifically outlined in my attorney's response to the copyright claimant, a copy of which is
attached hereto, the copyright infringement claim is meritless and should be rejected because:

1. The material in question is not copyrighted and cannot be copyrighted as a matter of
   law because it is in an unprotectible logo.  The animated cartoons are therefore in the
   public domain and may be reproduced by anyone.
2. The complainant provided copyright registration information for a performing art
   registration but attempted to fraudulently claim it covered the logo, which is not listed
   on the attached registration information downloaded from the Copyright Office.  The
   claimant's counsel failed to provide any other tangible evidence that the material in
   question, i.e. the logo, is in fact copyrighted, and I have a good faith belief that it is not
   based on the copyright registration number provided. The allegation of copyright
   violation is therefore baseless and unsupported.
3. The complainant's notice fails to abide by the Digital Millennium Copyright Act, 17 U.S.C.
   § 512(c)(3) because he failed to as required by subsection (ii) identify the specific
   copyrighted work claimed to be infringed, subsection (iii) identification of the material
   that is claimed to be infringing or to be the subject of infringing activity, subsection (v)
   that the complainant has a good faith belief that use of the material in the manner
   complained of is not authorized by the copyright owner, and subsection (vi) that the
   information in the notification is accurate under the penalty of law.

I declare, under penalty of perjury, that I have a good faith belief that the complaint of
copyright violation is based on mistaken information, misidentification of the material in
question, deliberate misreading of the law, or outright baseless and a means of unfair
competition.

I request that Amazon, upon receipt of this counter-notification, restore the material in dispute,
unless the complainant files suit against me within ten (10) days, pursuant to 17 U.S.C. §
512(g)(2)(B).

My name, address, and telephone number are:

Michelle Justice

2915 Midvale Avenue

Los Angeles, CA 90064

(310) 259-8294

I hereby consent to the jurisdiction of Federal District Court for the Central District of California.

I agree to accept service of process from the complainant or complainant's attorneys.

Sincerely,

/s/ Michelle Justice

This shall serve as my electronic signature.



Library buildings are closed to the public until further notice, but the U.S. Copyright Office Catalog is available. **More**.

| Help | Search | History | Titles | Start Over |

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = PAu003798644
Search Results: Displaying 1 of 1 entries

◀ previous    next ▶



*8thManDVD Copyright Video 1, et al.*

| | |
|---|---|
| **Type of Work:** | Motion Picture |
| **Registration Number / Date:** | PAu003798644 / 2016-01-26 |
| **Application Title:** | 8thManDVD Copyright Video 1, et al. |
| **Title:** | 8thManDVD Copyright Video 1, et al. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | ComedyMX LLC. Address: P.O. Box 896, Pine Brook, NJ, 07058, United States. |
| **Date of Creation:** | 2016 |
| **Authorship on Application:** | ComedyMX LLC, employer for hire; Citizenship: United States. Authorship: entire motion picture. |
| **Rights and Permissions:** | ComedyMX LLC, P.O. Box 896, Pine Brook, NJ, 07058, United States |
| **Copyright Note:** | Basis for Registration: Unpublished collection. |
| **Contents:** | 8thManDVD Copyright Video 1. |
| | 8thManDVD Copyright Video 2. |
| | 8thManDVD Copyright Video 3. |
| | 8thManDVD Copyright Video 4. |
| | 8thManDVD Copyright Video 5. |
| | 8thManDVD Copyright Video 6. |
| | 8thManDVD Intro Video 1. |
| | 8thManDVD Intro Video 2. |
| | 8thManDVD Intro Video 3. |
| | 8thManDVD Intro Video 4. |
| | 8thManDVD Intro Video 5. |
| | 8thManDVD Intro Video 6. |
| | 8thManDVD Title Card 1. |
| | 8thManDVD Title Card 2. |
| | 8thManDVD Title Card 3. |

pg. 98

8thManDVD Title Card 4.

8thManDVD Title Card 5.

8thManDVD Title Card 6.

8thManDVD Title Card 7.

8thManDVD Title Card 8.

8thManDVD Title Card 9.

8thManDVD Title Card 10.

8thManDVD Title Card 11.

8thManDVD Title Card 12.

**Names:** ComedyMX LLC



| Save, Print and Email (**Help Page**) | | |
|---|---|---|
| Select Download Format   Full Record | Format for Print/Save | |
| Enter your email address: | | Email |

---

Help   Search   History   Titles   Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page

| From: | Milord Keshishian |
|---|---|
| To: | Ben T. Lila |
| Cc: | Stephanie Trice; Lorie Mallari; Kimberly Wolfe; Joseph A. Mandour |
| Subject: | RE: BB Productions Infringement (ComedyMX/6249.02-006) |
| Date: | Friday, March 27, 2020 7:47:47 PM |
| Attachments: | Copyright Office Website - Reg PAu003798644.pdf |

Dear Ben:

While I appreciate your quick response, the failure to provide our requested information
confirms that ComedyMX's takedown notices are in bad faith.  I understand that you were
probably handcuffed because ComedyMX simply lacks copyright protection to issue the
takedown notices, but would have appreciated your forthright offer to immediately withdraw
the baseless Digital Millennium Copyright Act takedown notices.  Please be advised of your
Rule 11 obligations moving forward in this matter.

My correspondence specifically requested ComedyMX's pre-notification investigation analysis
identifying the copyright registrations and (1) the protectible elements in your client's work,
and (2) the substantial similarity in the protectible elements of the copyrighted works and our
client's accused works.  Although, your correspondence references out of hand U.S. Copyright
registration No. PAu003798644, ComedyMX failed to provide the deposit material as
requested, let alone identify the protectible elements and the alleged substantial similarity
therewith.  Instead, we are delivered a misrepresentation that the "Cartoon Classics" logo is
copyrighted in the '644 registration.  As you should be aware, a performing arts copyright
registration only covers "(1) musical works, including any accompanying words; (2) dramatic
works, including any accompanying music; (3) pantomimes and choreographic works; and (4)
motion pictures and other audiovisual works."  Form PA.  The Copyright Office printout,
attached hereto, for the '644 registration confirms that the logo is not listed as a protectible
element, nor could it as a matter of law.

The use of the '644 performing arts registration to claim copyright registration ownership in
the generic term "Cartoon Classics" is meritless because short phrases are not copyrightable.
37 C.F.R. 202.1(a); *Bernal v. Paradigm Talent & Literary Agency,* 788 F.Supp.2d 1043, 1072
(C.D.Cal.2010) (short phrases such as "I miss you," "He's so funny," "Stay away from this
neighborhood," and "Mmm. That's it" were "ordinary, common expressions that [were] not
copyrightable"); see also *Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1081 (9th
Cir.2000) ("Brand names, trade names, slogans, and other short phrases or expressions cannot
be copyrighted, even if they are distinctively arranged or printed").  Thus, even inserting pupils
and irises into the double "o" letters in cartoons does not rise to the level of protectible
expression to be copyrightable because eyes appear in nature and are not afforded copyright
protection.  "These ideas, first expressed by nature, are the common heritage of humankind,
and no artist may use copyright law to prevent others from depicting them." *Satava v. Lowry,*
323 F.3d 805, 811 (9th Cir. 2003).  It is axiomatic that designs that are "standard, stock, or

common to a particular subject matter or medium are not protectable under copyright law."
*Id.,* at 810; *Aliotti v. R. Dakin & Co.,* 831 F.2d 898, 901 (9th Cir. 1987) ("No copyright protection
may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression
that necessarily follow from the idea of such dolls.").  Further, any copyrighted expression
must be "original."  *Feist Pubs., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345, 111 S.Ct. 1282,
113 L.Ed.2d 358 (1991).  "Original, as the term is used in copyright, means only that the work
was independently created by the author ... and that it possesses at least some minimal
degree of creativity." *Id*.  Here, a simple search of stock cartoon eyes immediately defeat
ComedyMX's claim of originality, even assuming arguendo the eyes are protectible, because
ComedyMX merely copied preexisting clip art.



ComedyMX even copied the shape and placement of the eyebrows.  Assuming ComedyMX did
actually have a copyright registration and did not copy the eyes from preexisting clip art,
ComedyMX's expression of the generic term "Cartoon Classics" is not substantially similar to
the accused expression, as demonstrated by the side by side comparison below:



But ComedyMX has a greater burden here than substantial similarity because eyes occur in
nature and any infringement, assuming ComedyMX has any protectible rights, must be proven
by verbatim copying.  Where a design incorporates stock or commonplace images, it is
entitled to, at most, a very "thin" or "weak" copyright – assuming ComedyMX is entitled to
any protection.  *Satava,* 323 F.3d at 812 ("thin" copyright in jellyfish design); *Franklin Mint
Corp. v. Nat'l Wildlife Art Exchange,* 575 F.2d 62, 65 (3d Cir. 1978) ("weak" copyright in
common elements of bird design).  In those circumstances, only virtually identical copying is
prohibited.  *Satava,* 323 F.3d at 812 ("thin copyright... protects against only virtually identical

copying"); *see also Sid & Marty Krofft Television Prods., Inc. v. McDonalds Corp.,* 562 F.2d
1157, 1168 (9th Cir. 1977) (where limited number of ways to express concept, "there will be
protection against nothing other than identical copying of the work").

Thus, the only conclusion that can be drawn based on ComdyMX's lack of copyright
registration in its generic logo is the DMCA copyright takedown notices were in bad faith and
must immediately be withdrawn.

Your reference to the trademark application ComedyMX filed last month, which is not yet
registered, does not save ComedyMX from its bad faith DMCA copyright takedown notice.
Amazon does not allow takedown notices for unregistered trademarks, thus there was no
trademark notification filed by ComedyMX.  Moreover, the term "cartoon classics" is generic
and refers to classic cartoons and was used as such by Walt Disney Cartoon Classics series
from 1983 to 1986.  It has also been used by numerous others, predating ComedyMX's alleged
first use date of 2015.  See September 11, 2008 Wired article titled "10 Cartoon Classics to
Share with your Kids" as merely one example of many.  "A generic term cannot be registered
as a trademark because such a term cannot function as an indication of source."  *BellSouth
Corp. v. DataNational Corp.*, 60 F.3d 1565, 1569 (Fed. Cir. 1995).  Thus, despite the addition of
the eyes, the mark is generic and the nascent application will not mature to registration
because even if the U.S. Patent and Trademark Office does not refuse registration, our client
will certainly file an opposition thereto.

Despite your valiant efforts to protect ComedyMX, our detailed analysis provides authority
and proof of ComedyMX's bad faith.  But in an effort to resolve this matter expeditiously,
ComedyMX will agree to immediately withdraw its DMCA notification of infringement issued
to Amazon, in return our client agrees to not depiction of eyes in the term "cartoon."  Please
advise by no later than **5:00 p.m. on March 30, 2020** if ComedyMX has immediately
withdrawn the six takedown notices issued to Amazon.

Sincerely,

Milord A. Keshishian

Milord & Associates, PC
Patent, Trademark & Copyright Law
10517 West Pico Blvd.
Los Angeles, CA 90064
Tel  (310) 226-7878
Fax (310) 226-7879
www.milordlaw.com

***********************CONFIDENTIALITY NOTICE*************************

The information contained in this electronic message and attachments, if any, are intended solely for the
personal and confidential use of the designated recipient. This message may be an attorney-client
communication and as such is privileged and confidential. No waiver of this privilege is intended by the

inadvertent transmittal of such communication to any persons or company other than the intended recipient. If the reader of this message is not the intended recipient, please take notice that you have received this document in error, and that any review, dissemination, replication, or distribution of this message is strictly prohibited. If you have received this communication in error, please permanently delete this message and attachments, if any.

---

**From:** Ben T. Lila <blila@mandourlaw.com>
**Sent:** Thursday, March 26, 2020 7:10 PM
**To:** Milord Keshishian <milord@milordlaw.com>
**Cc:** Stephanie Trice <stephanie@milordlaw.com>; Lorie Mallari <lorie@milordlaw.com>; Kimberly Wolfe <kimberly@milordlaw.com>; Joseph A. Mandour <jmandour@mandourlaw.com>
**Subject:** RE: BB Productions Infringement (ComedyMX/6249.02-006)

Milord:

We represent ComedyMX LLC ("ComedyMX"), owner of U.S. Trademark Serial No. 88/789,484 for CARTOON CLASSICS! (+Design).  ComedyMX is also the owner of all copyright rights associated with its original stylized logo design that is the subject of multiple copyright registrations, including U.S. Copyright No.  PAu003798644.  *See* attached.  ComedyMX has used the trademark and copyright logo design continuously in interstate commerce on certain goods and services including, but not limited to, entertainment services.

We have observed that BB Productions is using our client's CARTOON CLASSICS trademark and logo design without authorization to promote similar goods and services on the website Amazon.com.  BB Production's use of CARTOON CLASSICS is likely to cause confusion in violation of trademark and other unfair competition laws including, but not limited to, the Lanham Act (15 U.S.C. § 1051, *et seq.*).  BB Production's use is likely to lead the public to believe that its products and services are licensed by, sponsored by, or otherwise affiliated with ComedyMX which is not the case.  Also, the unauthorized copying of our client's logo design constitutes copyright infringement under the Copyright Act (17 U.S.C. § 101, *et. seq.*).

We demand that BB Productions immediately cease and desist all use of CARTOON CLASSICS and our client's copyrighted design, including without limitation, on Amazon.com, in videos and on any other website.  Should BB Productions not immediately address our client's concerns, we will pursue all available remedies.  Please contact me in writing by **April 6, 2020** to confirm that your client has complied with the above.

The demands asserted herein are with full reservation of all rights and remedies that our client may possess including, but not limited to, past and continuing profits, actual damages, treble damages, attorneys' fees, claims of dilution and the right to injunction.

Best Regards,
Ben

Ben T. Lila, Esq.
Mandour & Associates, APC - Intellectual Property Law
12121 Wilshire Boulevard, Suite 810
Los Angeles, California 90025
T: 310-656-3900
***********************************************************************
CONFIDENTIAL COMMUNICATION: This message is for the sole use of the

intended recipient and may contain confidential and privileged information. Any unauthorized review or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
*************************************************************************

**From:** Milord Keshishian <milord@milordlaw.com>
**Sent:** Thursday, March 26, 2020 11:29 AM
**To:** Ben T. Lila <blila@mandourlaw.com>
**Cc:** Stephanie Trice <stephanie@milordlaw.com>; Lorie Mallari <lorie@milordlaw.com>; Kimberly Wolfe <kimberly@milordlaw.com>
**Subject:** ComedyMX Takedown Notices re Michelle Justice
**Importance:** High

Dear Mr. Lila:

Your correspondence below has been forwarded to us for response.  We are counsel for Ms. Justice, please forward all further communications to our attention.  Ms. Justice takes all allegations of valid copyright infringement seriously and to evaluate the same. please provide by **5:00 p.m. on March 27, 2020** the copyright registrations and deposit material for the following takedown notices sent by your client to Amazon:

| | |
|---|---|
| CASE 6890999701 | Cartoon Classics - Vol. 1: 25 Favorite Cartoons - 3 Hours |
| CASE 6891043541 | Cartoon Classics - Vol. 2: 25 Favorite Cartoons - 3 Hours |
| CASE 6891006641 | Cartoon Classics - Vol. 3: 25 Favorite Cartoons - 3 Hours |
| CASE 6890994521 | Cartoon Classics - Vol. 4: 25 Favorite Cartoons - 3 Hours |
| CASE 6891030291 | Cartoon Classics - Vol. 5: 25 Favorite Cartoons - 3 Hours |
| CASE 6891048961 | Cartoon Classics - Vol. 6: 25 Favorite Cartoons - 3 Hours |

In addition, by **5:00 p.m. on March 27, 2020**, we expect to receive your client's pre-notification investigation report identifying (1) the protectible elements in your client's work, and (2) the substantial similarity in the protectible elements of the copyrighted works and our client's accused works.

If we do not receive the requested information by said time and date, that will confirm your client's lack of due diligence before issuing take down notice and entitle us to file counter-notifications with Amazon.  We look forward to immediate receipt of the requested information, which your client must have assembled prior to issuing the takedown notices.

If you should have any additional questions or comments, please contact us.

Sincerely,

Milord A. Keshishian

Milord & Associates, PC

Patent, Trademark & Copyright Law
10517 West Pico Blvd.
Los Angeles, CA 90064
Tel  310-226-7878
www.milordlaw.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*CONFIDENTIALITY NOTICE\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The information contained in this electronic message and attachments, if any, are intended solely for the personal and confidential use of the designated recipient. This message may be an attorney-client communication and as such is privileged and confidential. No waiver of this privilege is intended by the inadvertent transmittal of such communication to any persons or company other than the intended recipient. If the reader of this message is not the intended recipient, please take notice that you have received this document in error, and that any review, dissemination, replication, or distribution of this message is strictly prohibited. If you have received this communication in error, please permanently delete this message and attachments, if any.

---------- Forwarded message ---------
From: **Ben T. Lila** <blila@mandourlaw.com>
Date: Fri, Mar 20, 2020 at 5:23 PM
Subject: FW: Reporting of Cartoon Classics on Amazon Prime (ComedyMX/6249.02-006)
To: Michelle Justice <michelle@beyondblond.com>
Cc: Joseph A. Mandour <jmandour@mandourlaw.com>


Ms. Justice:


Our law firm represents ComedyMX LLC.  Please let us know if you have retained an attorney.  If so, please have your attorney contact and direct all correspondence to me.




Best Regards,

Ben




Ben T. Lila, Esq.

Mandour & Associates, APC - Intellectual Property Law

12121 Wilshire Boulevard, Suite 810

Los Angeles, California 90025

T: 310-656-3900

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIAL COMMUNICATION: This message is for the sole use of the

intended recipient and may contain confidential and privileged information. Any unauthorized

review or distribution is prohibited. If you are not the intended recipient, please contact the sender

by reply email and destroy all copies of the original message.

*********************************************************************

**From:** Michelle Justice <michelle@beyondblond.com>
**Sent:** Friday, March 20, 2020 4:25 PM
**To:** eheldman3@comedymx.com
**Subject:** Reporting of Cartoon Classics on Amazon Prime


Hello:


I was just informed that you report 6 of my titles on Amazon Prime as being "not be properly authorized by the appropriate rights holder". All these cartoons are in the public domain and I have sourced/purchased them from content providers that sell PD content. You have no claim on these titles.

I request that you withdraw your claims immediately or I shall have my attorney's get involved.


Sincerely,

M Justice

BB Productions

EXHIBIT 20



EXHIBIT 21



Clip: The BIGGEST LOONEY TUNES 1939-1943 Golden-Era Collection Vol. 1

2015 | CC

⭐⭐⭐⭐ ˅ 139

**Prime Video**
You purchased this video



- Starring: MelBlanc
- Directed by: Chuck Jones , Bob Clampett and I. Freleng



BUGS BUNNY Looney Tunes Cartoons 1942-1943 Golden-Era Collection

2016 | CC

⭐⭐⭐⭐ ˅ 192

**Prime Video**
You purchased this video



- Starring: Mel Blanc
- Directed by: Chuck Jones , Bob Clampett and I. Freleng



Clip: The BIGGEST LOONEY TUNES 1937-1943 Golden-Era Collection Vol. 2

2015 | CC

⭐⭐⭐⭐ ˅ 35

**Prime Video**
This video is currently unavailable

- Starring: MelBlanc
- Directed by: I. Freleng , Chuck Jones and Bob Clampett

pg. 110

EXHIBIT 22







EXHIBIT 22

EXHIBIT 23





EXHIBIT 24

| | |
|---|---|
| Document title: | Watch Clip: The BIGGEST LOONEY TUNES 1937-1943 Golden-Era Collection Vol. 2 | Prime Video |
| Capture URL: | https://www.amazon.com/Clip-BIGGEST-1937-1943-Golden-Era-Collection/dp/B01BI2YDW4/ref=sr_1_1?dchild=1&keywords=looney+tunes+cartoons+1937-1943+golden-era&qid=1630096421&s=instant-video&sr=1-1-catcorr |
| Captured site IP: | 23.220.130.101 |
| Page loaded at (UTC): | Fri, 27 Aug 2021 21:24:32 GMT |
| Capture timestamp (UTC): | Fri, 27 Aug 2021 21:25:28 GMT |
| Capture tool: | v7.12.2 |
| Collection server IP: | 52.5.8.50 |
| Browser engine: | Chrome/77.0.3865.120 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 4 |
| Capture ID: | fd8782c7-1b88-403d-8bc9-78524344fc3c |
| User: | milord-stephanie |



cartoon the video quality is not all that great and in some cases the audio and video are out of sync.
I'm glad I only rented this. It was a waste of money, but not as much of a waste if I had purchased it outright....

4 people found this helpful

Helpful    Report abuse

Lolita Summerlin  Reviewed in the United States on August 22, 2018
★★★★★ **Great cartoons that you never outgrow**
Verified purchase

Love these "oldies but goodies", both the kid and I loved them

Helpful    Report abuse

April  Reviewed in the United States on November 7, 2016
★★★☆☆ **Three Stars**
Verified purchase

Good viewing for visiting Grandbabies

Helpful    Report abuse

KYWes  Reviewed in the United States on October 8, 2015
★★★★★ **Fun nostalgic entertainment**
Verified purchase

Great to see the cartoons that I enjoyed as a child.

Helpful    Report abuse

daniel h lipke  Reviewed in the United States on March 16, 2016
★☆☆☆☆ **One Star**
Verified purchase

Terrible quality- do not purchase

4 people found this helpful

Helpful    Report abuse

Jeanne McCloskey Malcolm  Reviewed in the United States on September 12, 2015
★☆☆☆☆ **... company's name in the middle of the cartoon-seems sketchy-don't waste your money**
Verified purchase

This video randomly flashes the production company's name in the middle of the cartoon-seems sketchy-don't
waste your money

7 people found this helpful

Helpful    Report abuse

Fergie  Reviewed in the United States on February 2, 2017
★★★★★ **Five Stars**
Verified purchase



Document title: Watch Clip: The BIGGEST LOONEY TUNES 1937-1943 Golden-Era Collection Vol. 2 | Prime Video          pg. 121
Capture URL: https://www.amazon.com/Clip-BIGGEST-1937-1943-Golden-Era-Collection/dp/B01BI2YDW4/ref=sr_1_1?dchild=1&amp;keywords=looney+tunes+cartoon…



Related **Details**

7 people found this helpful

**Helpful**   Report abuse

Fergie  Reviewed in the United States on February 2, 2017

★★★★★ **Five Stars**

**Verified purchase**

MY SON WATCHES THIS EVERY COUPLE OF DAYS AND LAUGHS AND LAUGHS.

**Helpful**   Report abuse

See all reviews ›

Back to top

### Get to Know Us

Careers
Blog
About Amazon
Sustainability
Press Center
Investor Relations
Amazon Devices

### Make Money with Us

Sell products on Amazon
Sell apps on Amazon
Become an Affiliate
Become a Delivery Driver
Start a package delivery business
Advertise Your Products
Self-Publish with Us
Host an Amazon Hub
› See More Make Money with Us

### Amazon Payment Products

Amazon Rewards Visa Signature Cards
Amazon.com Store Card
Amazon Secured Card
Amazon Business Card
Amazon Business Line of Credit
Shop with Points
Credit Card Marketplace
Reload Your Balance
Amazon Currency Converter

### Let Us Help You

Amazon and COVID-19
Your Account
Your Orders
Shipping Rates & Policies
Amazon Prime
Returns & Replacements
Manage Your Content and Devices
Amazon Assistant
Help

amazon

English   United States

| Amazon Music | Amazon | Amazon Drive | 6pm | AbeBooks | ACX | Alexa |
|---|---|---|---|---|---|---|
| Stream millions of songs | **Advertising** Find, attract, and engage customers | Cloud storage from Amazon | Score deals on fashion brands | Books, art & collectibles | Audiobook Publishing Made Easy | Actionable Analytics for the Web |
| **Sell on Amazon** Start a Selling Account | Amazon **Business** Everything For Your Business | Amazon Fresh Groceries & More Right To Your Door | AmazonGlobal Ship Orders Internationally | Home Services Experienced Pros Happiness Guarantee | Amazon Ignite Sell your original Digital Educational Resources | Amazon Web **Services** Scalable Cloud Computing Services |
| Audible Listen to Books & Original Audio Performances | Book **Depository** Books With Free Delivery Worldwide | Box Office Mojo Find Movie Box Office Data | ComiXology Thousands of Digital Comics | DPReview Digital Photography | East Dane Designer Men's Fashion | Fabric Sewing, Quilting & Knitting |
| Goodreads Book reviews & recommendations | IMDb Movies, TV & Celebrities | IMDbPro Get Info Entertainment Professionals Need | Kindle Direct **Publishing** Indie Digital & Print Publishing Made Easy | Amazon **Photos** Unlimited Photo Storage Free With Prime | Prime Video Direct Video Distribution Made Easy | Shopbop Designer Fashion Brands |
| Amazon **Warehouse** Great Deals on Quality Used Products | Whole Foods **Market** America's Healthiest Grocery Store | Woot! Deals and Shenanigans | Zappos Shoes & Clothing | Ring Smart Home Security Systems | eero WiFi Stream 4K Video in Every Room | Blink Smart Security for Every Home |
| | Neighbors **App** Real-Time Crime & Safety Alerts | Amazon Subscription Boxes Top subscription boxes – right to your door | PillPack Pharmacy Simplified | Amazon **Renewed** Like-new products you can trust | Amazon Second Chance Pass it on, trade it in, give it a second life | |

Conditions of Use   Privacy Notice   Interest-Based Ads   © 1996-2021, Amazon.com, Inc. or its affiliates

Document title: Watch Clip: The BIGGEST LOONEY TUNES 1937-1943 Golden-Era Collection Vol. 2 | Prime Video
Capture URL: https://www.amazon.com/Clip-BIGGEST-1937-1943-Golden-Era-Collection/dp/B01BI2YDW4/ref=sr_1_1?dchild=1&amp;keywords=looney+tunes+cartoon...
Capture timestamp (UTC): Fri, 27 Aug 2021 21:25:28 GMT

EXHIBIT 25

| | |
|---|---|
| Document title: | CoopFlaired font |
| Capture URL: | https://fonts2u.com/coopflaired.font?ptext=CARTOON+CLASSICS |
| Captured site IP: | 104.28.24.52 |
| Page loaded at (UTC): | Mon, 13 Jul 2020 16:11:46 GMT |
| Capture timestamp (UTC): | Mon, 13 Jul 2020 16:12:35 GMT |
| Capture tool: | v7.0.6 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/77.0.3865.120 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 4 |
| Capture ID: | 4df9d348-29b2-4f09-a39e-4b92fa08308c |
| User: | milord-priya |





**Basic font information**

**Copyright notice**
Copyright 1993-1997 Brand Design Co., Inc./House Industries. House Industries is a registered trademark of Brand Design Co., Inc. Font by Ken Barber.

**Font family**
CoopFlaired

**Font subfamily**
Regular

**Unique subfamily identification**
Macromedia Fontographer 4.1 CoopFlaired

**Full font name**
CoopFlaired

**Name table version**
Macromedia Fontographer 4.1 03/08/99

**Postscript font name**
CoopFlaired

**Extended font information**

Platforms supported

| Platform | Encoding |
|---|---|
| Unicode | Unicode 1.0 semantics |
| Macintosh | Roman |
| Microsoft | Unicode BMP only |

Font details

| | |
|---|---|
| Created | 1999-08-03 |
| Revision | 1 |
| Glyph count | 229 |
| Units per Em | 1000 |
| Embedding rights | Embedding restricted (not allowed!) |
| | |
| Family class | No classification |
| Weight | Semi-bold |
| Width | Medium (normal) |
| Width type | Normal |
| Mac style | Bold |
| Direction | Only strongly left to right glyphs + contains neutrals |
| Pattern nature | Regular |

Document title: CoopFlaired font
Capture URL: https://fonts2u.com/coopflaired.font?ptext=CARTOON+CLASSICS
Capture timestamp (UTC): Mon, 13 Jul 2020 16:12:35 GMT

pg. 126



**Basic font information**

**Copyright notice**
Copyright 1993-1997 Brand Design Co., Inc./House Industries. House Industries is a registered trademark of Brand Design Co., Inc. Font by Ken Barber.

**Font family**
CoopFlaired

**Font subfamily**
Regular

**Unique subfamily identification**
Macromedia Fontographer 4.1 CoopFlaired

**Full font name**
CoopFlaired

**Name table version**
Macromedia Fontographer 4.1 03/08/99

**Postscript font name**
CoopFlaired

**Extended font information**

Platforms supported

| Platform | Encoding |
|---|---|
| Unicode | Unicode 1.0 semantics |
| Macintosh | Roman |
| Microsoft | Unicode BMP only |

Font details

| | |
|---|---|
| Created | 1999-08-03 |
| Revision | 1 |
| Glyph count | 229 |
| Units per Em | 1000 |
| Embedding rights | Embedding restricted (not allowed!) |
| | |
| Family class | No classification |
| Weight | Semi-bold |
| Width | Medium (normal) |
| Width type | Normal |
| Mac style | Bold |
| Direction | Only strongly left to right glyphs + contains neutrals |
| Pattern nature | Regular |
| Posture | Upright |
| Stroke weight | Book, text, regular, etc. |
| Pitch | Not monospaced |
| Symbol set | Windows 3.1 ANSI |

Copyright © 2008 - 2020 Yuxar Consulting Corp., all rights reserved.

Faq    Privacy policy    Contact

Document title: CoopFlaired font
Capture URL: https://fonts2u.com/coopflaired.font?ptext=CARTOON+CLASSICS
Capture timestamp (UTC): Mon, 13 Jul 2020 16:12:35 GMT

pg. 127

EXHIBIT 26

**a** **Page** Vault

| | |
|---|---|
| Document title: | Freestyle Script Bold Regular : Download For Free, View Sample Text, Rating And More On Fontsgeek.Com |
| Capture URL: | http://fontsgeek.com/fonts/Freestyle-Script-Bold-Regular |
| Captured site IP: | 172.67.130.105 |
| Page loaded at (UTC): | Wed, 08 Jul 2020 23:25:49 GMT |
| Capture timestamp (UTC): | Wed, 08 Jul 2020 23:26:23 GMT |
| Capture tool: | v7.0.6 |
| Collection server IP: | 54.174.78.137 |
| Browser engine: | Chrome/77.0.3865.120 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 4 |
| Capture ID: | 11c492e9-28c5-4127-a542-cdbf83524470 |
| User: | milord-priya |





### About Freestyle Script Bold Regular

| | |
|---|---|
| Name | Freestyle Script Bold Regular |
| Type | TrueType |
| Category | Uncategorized |
| Family | Freestyle Script Bold |
| Style | Regular |
| PostScript | FreestyleScriptBoldPlain |
| Glyph Number | 225 |
| Units Per em | 1000 |
| Ascender | 850 |
| Descender | -306 |
| Height | 1156 |
| Max Advance Width | 1187 |
| Max Advance Height | 1156 |
| Underline Position | 0 |
| Underline Thickness | 0 |
| Global BBox | (350,314) , (1080,850) |
| Has Horizontal | yes |
| Has Vertical | no |
| Has Kerning | yes |
| Is Fixed Width | no |
| Is Scalable | yes |
| Font Size | 57.0 KB |
| Downloads Yesterday | 7 |
| Total Downloads | 3438 |
| Rating | ★★★★☆ |



### Similar Fonts

| Freestyle Script Bold Plain Regular | Freestyle Script EF Bold Regular | Freestyle Script Std Bold | Freestyle Script LT Regular |
|---|---|---|---|
| Hello world 1234567890 | Hello world 1234567890 | Hello world 1234567890 | Hello world 1234567890 |
| **Freestyle Script Bold Plain Regular** Uncategorized Total Downloads : 221 ★★★★★ | **Freestyle Script EF Bold Regular** Uncategorized Total Downloads : 189 ★★★★★ | **Freestyle Script Std Bold** Uncategorized Total Downloads : 1353 ★★★★★ | **Freestyle Script LT Regular** Uncategorized Total Downloads : 77 ★★★★★ |

Document title: Freestyle Script Bold Regular : Download For Free, View Sample Text, Rating And More On Fontsgeek.Com

Capture URL: http://fontsgeek.com/fonts/Freestyle-Script-Bold-Regular

Capture timestamp (UTC): Wed, 08 Jul 2020 23:26:23 GMT

pg. 131



| | |
|---|---|
| **Has Horizontal** | yes |
| **Has Vertical** | no |
| **Has Kerning** | yes |
| **Is Fixed Width** | no |
| **Is Scalable** | yes |
| **Font Size** | 57.0 KB |
| **Downloads Yesterday** | 7 |
| **Total Downloads** | 3438 |
| **Rating** | ★★★★☆ |

## Similar Fonts

**Freestyle Script Bold Plain Regular**
Uncategorized
Total Downloads : 221
★★★★★

**Freestyle Script EF Bold Regular**
Uncategorized
Total Downloads : 189
☆☆☆☆☆

**Freestyle Script Std Bold**
Uncategorized
Total Downloads : 1353
★★★★☆

**Freestyle Script LT Regular**
Uncategorized
Total Downloads : 77
★★★★★

**Freestyle Script D Regular**
Uncategorized
Total Downloads : 238
☆☆☆☆☆

**Freestyle Script Std Regular**
Uncategorized
Total Downloads : 1305
★★★★☆

**Freestyle Script LET Regular**
Uncategorized
Total Downloads : 80
☆☆☆☆☆

**Freestyle Script EF Bold Alternate Regular**
Uncategorized
Total Downloads : 213
★★★★★

**Freestyle Script Bold**
Uncategorized
Total Downloads : 1026
★★★★★

**Freestyle Script D Bold**
Uncategorized
Total Downloads : 149
☆☆☆☆☆

**TR Freestyle Script Bold**
Uncategorized
Total Downloads : 32
☆☆☆☆☆

**Freestyle Script Regular**
Uncategorized
Total Downloads : 18813
★★★★☆

© Copyright 2012-2020 by FontsGeek.com. All Rights Reserved.

Terms | Privacy Policy | Copyright | Contact | Change Ad Consent

EXHIBIT 27

| | |
|---|---|
| Document title: | Eyeballs clipart pair eye, Picture #2669983 eyeballs clipart pair eye |
| Capture URL: | https://webstockreview.net/image/eyeballs-clipart-pair-eye/2669983.html |
| Captured site IP: | 104.27.143.31 |
| Page loaded at (UTC): | Wed, 08 Jul 2020 23:25:18 GMT |
| Capture timestamp (UTC): | Wed, 08 Jul 2020 23:25:38 GMT |
| Capture tool: | v7.0.6 |
| Collection server IP: | 54.174.78.137 |
| Browser engine: | Chrome/77.0.3865.120 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 3 |
| Capture ID: | 2205370d-57ad-46dd-bcf9-a3851e66bff6 |
| User: | milord-priya |

WebStockReview    Photos    Starting at $0.74    Sign Up!    Login

eyeballs clipart pair eye / eyeballs clipart pair eye 2669983

# eyeballs clipart pair eye 2669983



| eyeballs clipart pair eye | |
|---|---|
| Resolution | 300 x 300 |
| File Size | 0.01 Kb |
| Uploaded | 280 days ago |
| Format | image/jpeg |



**Download** ▾

👁 13          ⬇ 77

License: Attribution required

⚠ Copyright complaint

Tags:   Eyeballs pair eye

It is required to give **attribution**, if you use this image on your website:

`<a href='https://webstockreview.net'>https://webstockreview.net</a>`

Embed this image in your blog or website

`<a href='https://webstockreview.net/image/eyeballs-clipart-pair-eye/2669983.html'><img`



Related keywords:   Eyeballs pair eye    Leg pair leg    Maracas pair    Lungs pair    Legs pair leg    Kidney pair    Elephants pair    Hearing pair ear

## Similar images to "eyeballs clipart pair eye"



Document title: Eyeballs clipart pair eye, Picture #2669983 eyeballs clipart pair eye
Capture URL: https://webstockreview.net/image/eyeballs-clipart-pair-eye/2669983.html
Capture timestamp (UTC): Wed, 08 Jul 2020 23:25:38 GMT

pg. 135

Page 1 of 2



👁 13     ⬇ 77

License: Attribution required

⚠ Copyright complaint

Tags: Eyeballs pair eye

It is required to give **attribution**, if you use this image on your website:

<a href='https://webstockreview.net'>https://webstockreview.net</a>

Embed this image in your blog or website

<a href='https://webstockreview.net/image/eyeballs-clipart-pair-eye/2669983.html'><img

Related keywords: Eyeballs pair eye   Leg pair leg   Maracas pair   Lungs pair   Legs pair leg   Kidney pair   Elephants pair   Hearing pair ear

## Similar images to "eyeballs clipart pair eye"



Privacy Policy      Terms      Copyright Notification      Contact us

EXHIBIT 28

**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Sun Aug 29 04:07:22 EDT 2021*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# 8thManDVD.com

| | |
|---|---|
| **Word Mark** | 8THMANDVD.COM |
| **Goods and Services** | IC 038. US 100 101 104. G & S: Streaming of video material on the Internet. FIRST USE: 20080615. FIRST USE IN COMMERCE: 20080615 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 86929680 |
| **Filing Date** | March 4, 2016 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | July 26, 2016 |
| **Registration Number** | 5059117 |
| **Registration Date** | October 11, 2016 |
| **Owner** | (REGISTRANT) ComedyMX LLC LIMITED LIABILITY COMPANY DELAWARE PO Box 896 Pine Brook NEW JERSEY 07058 |
| **Attorney of Record** | Joseph A. Mandour |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

| .HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

EXHIBIT 29



EXHIBIT 30

