UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEYOND BLOND PRODUCTIONS, LLC, <br>     Plaintiff, <br><br> v. <br><br> EDWARD HELDMAN III, et al., <br>     Defendants. | CV 20-5581 DSF (GJSx) <br><br> Order GRANTING in Part Beyond Blond's Ex Parte Application for Temporary Restraining Order and Preliminary Injunction Against Defendant Edward Heldman III (Dkt. 265) |

    Beyond Blond Productions, LLC filed an ex parte application for a temporary restraining order and preliminary injunction (the Application) (1) prohibiting Defendant Edward Heldman III from posting or communicating threatening, racist, homophobic, and harassing conduct aimed at Beyond Blond, its officer Michelle Justice, her former or current business associates and relatives, Beyond Blond and Justice's counsel and its employees, including on various websites; (2) directing Heldman to remove prior false, racist, homophobic, threatening, or harassing content referencing Beyond Blond, Justice, or their counsel and counsel's employees; (3) enjoining Defendants from transferring any assets that would preclude the possibility of equitable relief; and (4) for an award of attorneys' fees and costs for bringing the Application. Dkt. 265 (App.). Heldman opposes. Dkt. 267 (Opp'n).[1]

---

[1] In his Opposition, Heldman states he "will agree, by stipulation, to refrain from any further direct communications with Plaintiffs' Counsel, Ms. Justice, Plaintiffs, and Mr. Branom," Opp'n at 3, but there is no assurance that he will actually enter into a stipulation, or abide by it – and his conduct thus far strongly suggests otherwise. Additionally, limiting the stipulation to "direct communications" does not explicitly foreclose other conduct Heldman has

The Court deems these matters appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  For the reasons stated below, Beyond Blond's Application is GRANTED.

## I. BACKGROUND

This Application is based on numerous emails sent by Heldman to Beyond Blond's counsel and Justice between February and June 2022.

On February 21-23, 2022, Heldman sent a series of emails to Beyond Blond's counsel Milord Keshishian accusing Keshishian of blackmailing Heldman and calling Keshishian a "criminal" who "need[s] to be disbarred," among other comments.  Dkt. 205-1, Ex. D.  On March 30, 2022, the Court found Defendants in contempt of the Court's preliminary injunction order.  Dkt. 219.  On April 9, 2022, Heldman emailed Keshishian again accusing Keshishian of blackmailing him.  Dkt. 225-1, Ex. F.

On April 18, 2022, the magistrate judge granted Beyond Blond's motion to compel.  Dkt. 232.  On April 29, 2022, in response to an email from Keshishian to Heldman's counsel requesting to meet and confer about an anticipated motion for contempt regarding Defendants' document productions and regarding the anti-SLAPP motion in this action, Heldman replied "[w]hy don't you go and fuck yourself."  Dkt. 248-1, Ex. A at 17.  Later that evening, Heldman emailed Keshishian again, stating "I am not delaying this BS case any longer, I will fire my Atty and file bankruptcy you fucking Armenian 'Roy Cohn.'"  Id. at 16.  On May 1, 2022, Heldman emailed Keshishian stating in part, "You are a racist because you think all Jews have money and I some how have millions of dollars you are going to get?  You are a fool and misjudged this case."  Id. at 10.  An hour later, Heldman wrote again, "BTW you are so socialist and obvious fan of Putin and clearly support the return

---

allegedly engaged in, such as sending messages to Keshishian through anonymous email accounts and leaving disparaging reviews about him on public websites, see App. at 9.

of the 'Armenian Soviet Socialist Republic' or maybe the laws in your country don't have 1st Amendment like America does. You sued me for free speech, that is anti-American and you keep trying to do it. You are 'obsessed' with losing Anti-SLAPP everything you've done since then has been to undo it and you failed." Id. at 9.

On May 1, 2022, Keshishian also emailed Defendants' counsel to confirm whether they had been fired by Heldman, as Heldman had indicated. Id. at 8. Heldman responded, "I know you are used to speaking Armenian, and have a problem with English with you dirty crook." Id. at 6. He also stated, "As I told you new counsel will substitute in, you rotten POS." Id.

Beyond Blond asserts that Heldman created anonymous email accounts to harass Keshishian. App. at 2. The first email, sent on May 7, 2022, states in the subject line, "Need Trademark Copyright Shyster Like You," and includes a link to a website that, according to Beyond Blond, copies Beyond Blond's counsel's website, except that "Heldman wrote defamatory, false, and harassing statements about counsel, including bribing judges – most of which parrots Heldman's emails." Dkt. 258-1, Exs. A-B. The second email, sent on June 4, 2022, states in part, "I love very much in the heart LGBTQ CA Liberals like you!" and "I write to you for a terrible Trademark case that is most difficult here in China. I read you and some judge are able to control the world!" Id. Another email was sent to Keshishian from the same email address later that day with a subject of "Kangaroo Court, CA Libtards" and two satirical images in the body of the email. Id., Ex. B. Beyond Blond also claims Heldman left a review on Yelp.com on May 8, 2022, under another name that stated, "Black Mails and Extorts Money to force settlement. The worst. He is a Roy Cohn on steroids. AVOID! Your company/self will look crooked too. Get a professional firm skip the cheap single atty w/ 1 revolving door associate." Keshishian Decl., Ex. D. After this Application was filed, on June 15, 2022, Keshishian received another email from an unknown account with the subject, "Trademark Case IP Help," which stated "there was NO ARMENIAN GENOCIDE, YOU ANT-SEMIOTIC [sic] RACIST." Dkt. 269-1, Ex. A. Keshishian has also discovered online postings created by anonymous

3

accounts, including a review on Keshishian's profile on lawyer.com that calls him "a crooked shyster" and "a Roy Cohn on steroids," as well as various anti-Armenian postings on other non-law related websites online. See dkt. 270, Ex. B.

Between May 14 and May 23, 2022, Heldman sent another 13 emails to counsel, including statements such as, "Are you afraid to depose me? I can't wait to meet you face to face in person, there will be no zoom depo for me you rotten crook," "creating a lifetime war between us," and "you rotten Armenian POS." Dkt. 249-1, Ex. H at 132, 134, 142. Between June 9 and 12, 2022, Heldman also sent 24 emails to Keshishian complaining about the Court, and also referred to Keshishian as a "dirty fucking Armenian POS." See dkt. 265-3 (Keshishian Decl.), Exs. A-C.

On June 8, 2022, the Court granted in part Beyond Blond's motion for attorneys' fees and ordered Defendant ComedyMX to pay $12,500 in attorneys' fees and costs to Beyond Blond by August 1, 2022. Dkt. 262.

Between 11:39 p.m. on June 8, 2022 and 2:35 a.m. on June 9, 2022, Heldman emailed Justice directly five times. Dkt. 265-2 (Justice Decl.), Ex. A. Heldman's first email stated in part, "I was charged w/ stalking my ex gf, which was nonsense and dropped. Even so you are NOT my type. Want details why? I will give you a list." Id. at 4. Twenty minutes later, Heldman wrote, "Additionally everything [Keshishian] has filed has told the public you are a "weak women" who needs a 'knight in shining armor' really? Is this case worth THAT much to you?" Id. at 5. A few hours later, Heldman wrote to Justice, "Out of curiosity why would hire an Armenian atty? This guy is the LAST person I'd retain. Maybe you are not gay and sleeping w/ him? Are you two a "couple"? This will ALL come out in your depo (if we do it since I am moving out of this crazy country and do not care what the judge says – lack of jurisdiction)." Id. at 11.

On June 9, 2022, Justice was contacted by a former business associate, Tim Branom, who had received emails from Heldman to

4

accept $10,000 in cash for favorable testimony against the threat of taking his deposition. Justice Decl. ¶ 6, Ex. B; Dkt. 265-1 (Branom Decl.) ¶ 7, Ex. A. Justice filed a police report on June 10, 2022 out of fear for her safety and that of her family. Justice Decl. ¶ 7, Ex. C.

Between 2:23 a.m. and 3:49 a.m. on June 12, 2022, Heldman sent another five emails to Justice, including the following statement: "I think you are gay since you live w/ your mother and a woman . . . . I am Jewish we do not approve of that life style and that's what we believe." Keshishian Decl. ¶ 7, Ex. C at 21. Heldman also wrote to Justice, "You are worth millions, have it hidden in a trust, your real name is Julie, you are a real estate agent, should I go on?" Id. at 24.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions, and courts apply the same standards to both. Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking injunctive relief must show that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in his favor; and (4) an injunction is in the public interest. Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc., 609 F.3d 975, 982 (9th Cir. 2010) (citing Winter v. Nat. Res. Def. Council, 555 U.S. 7 (2008)).

A plaintiff must "make a showing on all four prongs." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit employs the "serious questions" version of the "sliding scale" approach when applying the four-element Winter test. Id. at 1134. "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies, 632 F.3d at 1135.

## III. DISCUSSION

A.   Harassing Conduct

Beyond Blond seeks an order prohibiting Heldman from posting or communicating threatening, racist, homophobic, and harassing conduct aimed at Beyond Blond, its officer Michelle Justice, her former or current business associates and relatives, and Beyond Blond and Justice's counsel and its employees. Beyond Blond also seeks an order directing Heldman to remove prior false, racist, homophobic, threatening, and or harassing content referencing Beyond Blond, Justice, or their counsel and counsel's employees.

Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them. See Chambers v. NASCO, Inc., 501 U.S. 32, 33 (1991) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates"); see also De Long v. Hennessey, 912 F.2d 1144, 1147 (9th Cir. 1990) ("[T]here is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances.").

"[A] district court has the inherent power to issue an injunction against litigants who harass their opponents." Yates v. Belli Deli, No. C 07-01405 WHA, 2007 WL 2318923, at *3 (N.D. Cal. Aug. 13, 2007) (citing De Long, 912 F.2d at 1147); see also Lewis v. S. S. Baune, 534 F.2d 1115, 1121 (5th Cir. 1976) ("Injunctive relief, where warranted, can be a useful tool to aid a court in controlling the conduct of litigants."). However, "an order imposing an injunction 'is an extreme remedy, and should be used only in exigent circumstances.'" De Long, 912 F.2d at 1147 (quoting In re Oliver, 682 F.2d 443, 445 (3d Cir. 1982)).

Courts may issue an injunction over conduct that is directly related to the lawsuit. See United Artists Corp. v. United Artist Studios LLC, No. CV 19-828-MWF (MAAX), 2019 WL 6917918, at *6

(C.D. Cal. Oct. 17, 2019) (finding the defendant's conduct was directly related to the suit because it was "intended to intimidate those who are handling this litigation against him."); Myart v. Taylor, No. SA 5:16-CV-736-DAE, 2016 WL 5376227, at *4 (W.D. Tex. Sept. 26, 2016) (concluding that the court has jurisdiction to prohibit a party's threatening and harassing conduct towards the other parties because the conduct was "directly related to the instant suit."); Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 580 (5th Cir. 2005) (upholding a portion of the district court's injunction prohibiting Defendant "from threatening or harassing [plaintiff], its employees, its staff, [plaintiff's] counsel, counsel's employees, or counsel's staff."). Here, the conduct at issue is directly related to the lawsuit. Many of Heldman's emails to Keshishian, Justice, and Branom directly reference this action, including the Court's jurisdiction, the relief Beyond Blond seeks, and Heldman's deposition.

The Court next considers whether it may restrain Heldman from future harassing conduct and communications.

"The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed." R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 382 (1992) (internal citations omitted). These free speech protections are particularly strong with regard to prior restraints, or "administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." Alexander v. United States, 509 U.S. 544, 550 (1993) (quoting M. Nimmer, Nimmer on Freedom of Speech § 4.03, 4–14 (1984)).

However, "[c]ourts have made a distinction between communication and harassment." Test Masters, 428 F.3d at 580 (citing Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 503 (1949)). "The difference is one between free speech and conduct that may be proscribed." Id. (citing R.A.V., 505 U.S. at 389). Accordingly, even under the First Amendment, "courts do have the power to enjoin harassing communication." Test Masters, 428 F.3d at 580; see also Lewis, 534 F.2d at 1122 ("There is no reason the current harassing

7

conduct of a party in pursuit of a settlement may not be enjoined."). Moreover, the Ninth Circuit has rejected First Amendment challenges to statutes that proscribe harassing and intimidating conduct. See United States v. Osinger, 753 F.3d 939, 944 (9th Cir. 2014) ("We agree with the Eighth Circuit's rationale that, because 18 U.S.C. § 2261A proscribes harassing and intimidating conduct, the statute is not facially invalid under the First Amendment."); O'Brien v. Welty, 818 F.3d 920, 930 (9th Cir. 2016) (rejecting a First Amendment challenge to a regulation authorizing "branches of the California State University to impose discipline for '[c]onduct that threatens or endangers the health or safety of any person within or related to the University community, including physical abuse, threats, intimidation, harassment, or sexual misconduct.").

Relying on this distinction, courts have rejected arguments that the First Amendment allows a person to make harassing or threatening communications. See, e.g., Osinger, 753 F.3d at 945 (rejecting the defendant's argument that he engaged in protected speech because the defendant "engaged in a course of conduct 'with the intent . . . to harass, or intimidate, or cause substantial emotional distress to' [the victim]" by sending threatening text messages, designing a false Facebook page, and sending emails to the victim's co-workers containing nude photographs of the victim); Myart, 2016 WL 5376227, at *4-*6 (enjoining plaintiff from threatening or harassing the defendants in the case for the pendency of the lawsuit).

Having determined it may restrain Heldman from future harassing conduct and communications, the Court considers whether Beyond Blond has met its showing on all four prongs.

1. Likelihood of Success

Here, the first prong refers to the likelihood of success on the merits of showing harassment, rather than the merits of the underlying lawsuit. United Artists, 2019 WL 6917918 at *8.

Section 527.6 of the California Code of Civil Procedure defines harassment as "unlawful violence, a credible threat of violence, or a

8

knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." Cal. Code Civ. Proc. § 527.6(b)(3). "Course of conduct" is a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email. Id. § 527.6(b)(1). Additionally, the harassment "must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." Id. § 527.6(b)(3). The statute exempts "[c]onstitutionally protected activity." Id. § 527.6(b)(1).

Beyond Blond argues it has a strong likelihood of success of proving harassment against Keshishian because Heldman has sent 63 "harassing and threatening emails" to Keshishian, and there is substantial evidence Heldman has created a fake website emulating Keshishian's firm's website while adding false information to defame him, as well as a false Yelp review. App. at 9. The Court finds Heldman's statements about Keshishian's Armenian heritage and other personal insults would cause a reasonable person to suffer substantial emotional distress.

With respect to the website and emails from anonymous email addresses, as well as the Yelp review, Heldman claims it is too speculative that he created those communications. Opp'n at 5. Notably, Heldman does not actually deny that he created them. See Dkt. 267-1. The Court has examined the communications, and notes that many of the very specific and unusual terms and references in those anonymous communications are also used in Heldman's emails, such as references to "shyster," "Roy Cohn," and "Libtards." Moreover, the epizy.com website contains numerous references to "blackmail," of which Heldman accused Keshishian numerous times throughout his emails to Keshishian, and also references Roy Cohn. This strongly suggests that Heldman created the anonymous communications and

9

website. The Court finds the emails, website, and Yelp review do not appear to serve any legitimate purpose, and the Court finds these communications could cause a reasonable person to suffer emotional distress. See United Artists, 2019 WL 6917918 at *8-9 (finding defendant's conduct rose to level of harassment when defendant "created a website, which shows a digitally altered image with [plaintiff's counsel's] face on billboards and with claims that he has threatened and harassed [defendant]."). Keshishian also states these emails have caused him to suffer anxiety and distress over his personal safety, and over the impact of Heldman's online communications on Keshishian's professional reputation. Keshishian Decl. ¶ 8.

Beyond Blond has also made a showing of harassment against Justice. Heldman emailed Justice numerous times, and made statements suggesting that he had stalked her on the Internet, while referencing his former criminal charge for stalking an ex-girlfriend. See App. at 9. Heldman also made statements about his opinions about Justice's personal life, and referenced emails to a former colleague of Justice's offering $10,000, ostensibly to settle the case, but also threatened to depose Justice if she did not settle. See id. While Heldman argues he sent the emails to Branom and Justice offering $10,000 to Branom solely in an attempt to settle, Opp'n at 2, a reasonable person would find those emails to be threatening or harassing, particularly in light of Heldman's other emails to Justice, which the Court also finds to be threatening and harassing. Additionally, Justice filed a police report following receipt of Heldman's emails, Justice Decl., Ex. C, which demonstrates Heldman's emails caused her substantial emotional distress.

Beyond Blond also argues Heldman's threats to publish a book about his claims about the Court should be enjoined. App. at 9. While Heldman's emails are inappropriate and inaccurate, those communications do not constitute threats or harassment under California law, and the Court declines to enjoin those communications.

2. Irreparable Harm

A plaintiff seeking a preliminary injunction must establish that "he is likely to suffer irreparable harm in the absence of preliminary relief." Winter, 555 U.S. at 20. Indeed, suffering irreparable harm prior to a determination of the merits is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." 11A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2948.1 (3d ed. 2016). Further, the harm identified may not be speculative and a plaintiff must also show more than the possibility of some remote further injury. Winter, 555 U.S. at 21-22 (rejecting "possibility" standard and holding that plaintiffs must "demonstrate that irreparable injury is likely in the absence of an injunction").

Here, Beyond Blond has established that it is likely to suffer irreparable harm. Heldman's threatening and harassing emails have increased in frequency over the pendency of this lawsuit, and may prevent Justice and Keshishian from participating fully in this lawsuit or may interfere with their attorney-client relationship. See App at 10; United Artists, 2019 WL 6917918 at *11.

3. Balance of Hardships and Public Interest

A court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24.

A narrowly tailored injunction prohibiting Heldman from engaging in harassing or threatening conduct directed at Keshishian or others at his law firm, Justice, and Justice's former or current business associates, including Tim Branom, during the pendency of this litigation would not impose significant hardship to Heldman. It does not prevent the parties from effectively prosecuting the case or communicating with their counsel, nor does it prevent the parties' counsel from communicating with each other. It also does not prevent Heldman from expressing his views about Justice, Keshishian, or this action so long as he does so in a manner that does not constitute personal harassment. Therefore, the balance of equities tip in favor of

11

Beyond Blond. See Myart, 2016 WL 5376227, *5 (finding that the balance of hardships favors the issuance of a preliminary injunction for the same reasons).

Finally, an injunction would in the public interest because it would help ensure the fair administration of justice. It would ensure that Beyond Blond, Justice, and their counsel can fully participate in this lawsuit without the fear of receiving harassing communications from Heldman.

Because Beyond Blond has made a showing on all four prongs of the Winter test, Beyond Blond's request for an order enjoining Heldman from making threatening and harassing communications directed at Keshishian or others at his law firm, Justice, and Justice's former or current business associates, is GRANTED.

B.  Freezing Assets

Beyond Blond also seeks an order restraining Defendants from transferring or encumbering any assets to preserve the possibility of equitable relief under the Lanham Act. App. at 6.

When a plaintiff seeks equitable remedies under the Lanham Act, including recovery of a defendant's profits under 15 U.S.C. § 1117, a district court has "inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief." Reebok Int'l, Ltd. v. Marnatech Enters., Inc., 970 F.2d 552, 559 (9th Cir. 1992). This includes "the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies." Id. (quoting Republic of the Philippines v. Marcos, 862 F.2d 1355, 1364 (9th Cir. 1988) (en banc)). The Ninth Circuit explained that "it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement," and affirmed the district court's granting of TROs and preliminary injunctions to freeze the defendants' assets, in addition to preventing various counterfeiting-related activities. Id. at 560.

As Heldman points out, see Opp'n at 4, "[a] party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir. 2009).

On March 3, 2022, the Court denied Defendants' motion to dismiss Beyond Blond's Lanham Act claim for false advertising. Dkt. 197. Additionally, Beyond Blond has met its burden of showing that Defendants can and likely will dissipate their assets during the pendency of this case if given the opportunity to do so. Heldman sent several emails threatening to leave the country in an attempt to divest the Court of jurisdiction and presumably to avoid paying a judgment. See Keshishian Decl., Ex. A at 8 ("your almighty man hating Judge who controls the world CANNOT force me to depo etc. since I won't be in this POS country"); id. at 8 ("I am moving and we are relocating are companies outside of this fucking country . . . I am only under jurisdiction while living here").

Beyond Blond's request for an Order freezing Defendants' assets is GRANTED.

## IV. CONCLUSION

The Ex Parte Application is granted in part. Defendants Edward Helman III, ComedyMX, Inc., and Comedy MX,LLC are temporarily restrained from:

- sending threatening or harassing emails to Milord Keshishian or others at his law firm, Michelle Justice, and persons known by Heldman to be Justice's former or current business associates, including Tim Branom;

- posting threatening or harassing content about Beyond Blond's counsel or employees on http://milordshysterlaw.epizy.com/, Google reviews, Yelp.com, or on any other publication, website, online forum, social media, or review applications;

- coming within 100 feet of Justice or Beyond Blond's counsel, except when in court;

13

- coming within 100 feet of Justice's residence or Beyond Blond's counsel's office;
- directing others to do any of the foregoing acts on Defendants' behalf.

Defendants are also ORDERED to remove prior threatening and harassing content referencing Beyond Blond, Justice, or their counsel or counsel's employees, including posts at http://milordshysterlaw.epizy.com/ and https://www.yelp.com/not_recommended_reviews/milord-and-associates-los-angeles-2.

Defendants are also ORDERED to refrain from transferring or encumbering any assets, including the following YouTube video channels and Amazon listings:

- https://www.youtube.com/user/8thManDVDcom
- https://www.youtube.com/channel/UCisLEYSLcfuarGXULo5JpIw
- https://www.youtube.com/user/TheCartoonChannelAU
- https://www.youtube.com/channel/UCvndcMEV8BUwebUPJ3yifAw
- https://www.youtube.com/channel/UCwUlit_Tlx3HsgfDX_ladJg
- https://www.youtube.com/user/caferoxyfilms
- https://www.youtube.com/channel/UCNCAEXQK6M8wU0kOcFa6gng
- https://www.youtube.com/c/ActionAdventureTVShows
- https://www.youtube.com/channel/UC-Z1HJ46VKVZgmKBWixhlrg
- https://www.youtube.com/channel/UCGIajzt5PiO0vwIkve49VrA
- https://www.youtube.com/channel/UCcw25dozUY-4JRj68CjoQmg

14

- https://www.amazon.com/gp/product/B019QFBS3M
- https://www.amazon.com/gp/product/B013IYCKP2
- https://www.amazon.com/Clip-BIGGEST-1937-1943-Golden-Era-Collection/dp/B014LG5TQ8
- https://www.amazon.com/How-8th-Man-Came-Unavailable/dp/B00W02WJNM/
- https://www.amazon.com/Tobor-Original-Anime-Remastered-Restored/dp/B001DBB090/
- https://www.amazon.com/Tobor-Original-Anime-Remastered-Restored/dp/B01G18PW2K/
- https://www.amazon.com/Tobor-Original-Anime-Remastered-Restored/dp/B001PUYG8Q/
- https://www.amazon.com/Tobor-Original-Anime-Remastered-Restored/dp/B01FYXTK9E
- https://www.amazon.com/Tobor-Original-Anime-Remastered-Restored/dp/B00W62UY2Y/
- https://www.amazon.com/Tobor-Original-Anime-Remastered-Restored/dp/B00W62YDNU/
- https://www.amazon.com/Tobor-Original-Anime-Remastered-Restored/dp/B002ZYNPCY/
- https://www.amazon.com/Tobor-Original-Anime-Remastered-Restored/dp/B00W62XB0Q/
- https://www.amazon.com/Tobor-Original-Anime-Remastered-Restored/dp/B00W62TVSW/

The Court sets a hearing on the request for a preliminary injunction on July 18, 2022 at 1:30 p.m. A further opposition may be filed no later than June 28, 2022. A reply may be filed no later than July 7, 2022. This

Order will remain in effect until the Court issues an order on the request for a preliminary injunction.

Beyond Blond may submit, no later than July 11, 2022, a request for fees and costs associated with filing the instant Application. The request must be submitted pursuant to the Court's 2021 Order re Requirements for Fee Motion.

Beyond Blond must post a bond in the amount of $1,000 for the payment of such costs and damages as may be incurred or suffered if Defendants are found to have been wrongfully restrained. See Fed. R. Civ. P. 65(c).

IT IS SO ORDERED.

Date: June 17, 2022

*Dale S. Fischer*
Dale S. Fischer
United States District Judge